BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
SHEILA M. LIEBER
Deputy Director
PETER J. PHIPPS (DC Bar 502904)
Senior Trial Counsel
Civil Division, Federal Programs Branch
United States Department of Justice
P.O. Box 883 Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-8482
Fax: (202) 616-8470
Email: peter.phipps@usdoj.gov
*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA,<br><br>Plaintiff,<br><br>vs.<br><br>SYLVIA MATHEWS BURWELL, Secretary of Health and Human Services. *et al.*,<br><br>Defendants. | Civil No. 3:16-cv-3539-LB<br><br>**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:        November 15, 2016<br>Time:        9:30 a.m.<br>Courtroom:  Courtroom C, 15th Floor<br>Judge:       Hon. Laurel Beeler |

MOTION TO DISMISS PLAINTIFF'S COMPLAINT
CV 16-3539-LB

## <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................. 1

Statement of Issues to be Decided ..................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 3

Introduction ........................................................................................................................ 3

Statement of Facts .............................................................................................................. 4

Argument ............................................................................................................................ 7

I.     This action should be dismissed because ACLU-NC lacks Article III standing. .............. 8

     A.     ACLU-NC does not have Article III standing as an organization. ........................ 8

     B.     ACLU-NC cannot bring this lawsuit on behalf of its taxpayer members. ............. 9

          1.     ACLU-NC's members do not have traditional standing to bring this suit. .......... 10

          2.     ACLU-NC's members do not have taxpayer standing to bring this suit. ............ 10

II.     Plaintiff's claim for nominal damages is barred by the doctrine of sovereign immunity. .......................................................................................................................... 14

Conclusion ....................................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Abigail All. for Better Access to Developmental Drugs v. Eschenbach*,

469 F.3d 129 (D.C. Cir. 2006) ................................................................ 8

*ACLU v. Sebelius*,

697 F. Supp. 2d 200 (D. Mass. 2010) ................................................... 13

*Allen v. Wright*,

468 U.S. 737 (1984) ............................................................................... 9

*Ariz. Christian Sch. Tuition Org. v. Winn*,

563 U.S. 125 (2011) ............................................................................. 13

*Bowen v. Kendrick*,

487 U.S. 589 (1988) ............................................................... 10, 11, 14

*Burns Ranches, Inc. v. U.S. Dep't of the Interior*,

851 F. Supp. 2d 1267 (D. Or. 2011) ...................................................... 7

*Columbia Riverkeeper v. U.S. Coast Guard*,

761 F.3d 1084 (9th Cir. 2014) ............................................................... 7

*Creamer v. United States*,

261 F. App'x 814 (5th Cir. 2008) ........................................................ 15

*FAA v. Cooper*,

132 S. Ct. 1441 (2012) ........................................................................ 14

*Fed. Deposit Ins. Corp. v. Meyer*,

510 U.S. 471 (1994) ............................................................................. 15

*Fisher v. United States*,

402 F.3d 1167 (Fed. Cir. 2005) ........................................................... 16

*Flast v. Cohen*,

392 U.S. 83 (1968) ............................................................. 8, 10, 11, 14

*Fleck & Assocs., Inc. v. Phoenix*,

471 F.3d 1100 (9th Cir. 2006) ............................................................... 9

*Freedom From Religion Found., Inc. v. Ayers*,
   748 F. Supp. 2d 982 (W.D. Wisc. 2010)...................................................13

*Freedom From Religion Found., Inc. v. Nicholson*,
   536 F.3d 730 (7th Cir. 2008) ........................................................13

*Freedom From Religion Found., Inc. v. Olson*,
   566 F. Supp. 2d 980 (D.N.D. 2008)....................................................13

*Frothingham  v. Mellon*,
   262 U.S. 447 (1923)................................................................10

*Habeas Corpus Res. Ctr. v. U.S. Dep't of Justice*,
   816 F.3d 1241 (9th Cir. 2016) ....................................................8, 9

*Harris v. McRae*,
   448 U.S. 297 (1980)..................................................................6

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982)..................................................................8

*Hein v. Freedom From Religion Found., Inc.*,
   551 U.S. 587 (2007)............................................................passim

*Hunt v. Wash. State Apple Advert. Comm'n*,
   432 U.S. 333 (1977)..................................................................9

*In re Naval Chaplaincy*,
   534 F.3d 756 (D.C. Cir. 2008) ..............................................10, 13, 14

*Jachetta v. United States*,
   653 F.3d 898 (9th Cir. 2011) ..................................................15, 16

*Jan's Helicopter Serv., Inc. v. FAA*,
   525 F.3d 1299 (Fed Cir. 2008).......................................................16

*Kokkenen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994)..................................................................7

*Kong v. Scully*,
   341 F.3d 1132 (9th Cir. 2003) ......................................................11

MOTION TO DISMISS PLAINTIFF'S COMPLAINT
CV 16-3539-LB

*Lane v. Peña,*
   518 U.S. 187 (1996) ...........................................................................................14-15

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ..................................................................................................8, 9

*Massachusetts v. Mellon,*
   262 U.S. 447 (1923) ....................................................................................................10

*McCollum v. Calif. Dep't of Corr. & Rehab.,*
   647 F.3d 870 (9th Cir. 2011) .....................................................................................13

*Miller v. Ghirardelli Chocolate Co.,*
   912 F. Supp. 2d 861 (N.D. Cal. 2012) .........................................................................7

*Murray v. U.S. Dep't of Treasury,*
   681 F.3d 744 (6th Cir. 2012) .................................................................................12-13

*Pedreira v. Ky. Baptist Homes for Children,*
   579 F.3d 722 (6th Cir. 2009) .....................................................................................12

*Presidio Golf Club v. Nat'l Park Serv.,*
   155 F.3d 1153 (9th Cir. 1998) .....................................................................................9

*Safe Air for Everyone v. Meyer,*
   373 F.3d 1035 (9th Cir. 2004) .....................................................................................7

*Schlesinger v. Reservists Comm. to Stop the War,*
   418 U.S. 208 (1974) ....................................................................................................12

*Sherman v. Illinois,*
   682 F.3d 643 (7th Cir. 2012) .....................................................................................12

*Spokeo v. Robins,*
   136 S. Ct. 1540 (2016) .............................................................................................8, 9

*Tilton v. Richardson,*
   403 U.S. 672 (1971) ....................................................................................................12

*Treece v. United States,*
   96 Fed. Cl. 226 (Fed. Cl. 2008) .................................................................................16

*United States v. Mitchell*,
   445 U.S. 535 (1980)................................................................15

*United States v. Mitchell*,
   463 U.S. 206 (1983)................................................................16

*United States v. Park Place Assocs., Ltd.*,
   563 F.3d 907 (9th Cir. 2009) ..................................................15

*United States v. Richardson*,
   418 U.S. 166 (1974)................................................................12

*United States v. Sherwood*,
   312 U.S. 584 (1941)................................................................15

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
   454 U.S. 464 (1982)..........................................................11, 12

*W. Radio Servs. Co. v. U.S. Forest Serv.*,
   578 F.3d 1116 (9th Cir. 2009) ................................................15

*Warren v. Fox Family Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003) ..................................................7

*Warth v. Seldin*,
   422 U.S. 490 (1975)..................................................................8

*Wash. Legal Found. v. Legal Found. of Wash.*,
   271 F.3d 835 (2001)..................................................................9

*White v. Lee*,
   227 F.3d 1213 (9th Cir. 2000) ..................................................7

**STATUTES**

5 U.S.C. § 702................................................................................15

6 U.S.C. § 279..................................................................................4

8 U.S.C. § 1232.............................................................................4, 5

Elementary and Secondary Education Act of 1965, Pub. L. No. 89-10, Tit. II, 203(a)

79 Stat. 27 (Apr. 11, 1965) (previously codified at 20 U.S.C. § 821) ...............................10-11

Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. No. 113-235,

128 Stat. 2130 (Dec. 16, 2014) ........................................................................5, 6, 14

Consolidated Appropriations Act, 2014, Pub. L. No. 113-76, 128 Stat. 5

(Jan. 17, 2014)................................................................................................5, 6, 14

Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, 129 Stat. 2242

(Dec. 18, 2015) ................................................................................................5, 6, 14


**RULES**

Fed. R. Civ. P. 8 .............................................................................................................15

Fed. R. Civ. P. 12 ..............................................................................................................7


**REGULATIONS**

8 C.F.R. § 1236.31 .............................................................................................................4

## NOTICE OF MOTION AND MOTION TO DISMISS

**PLEASE TAKE NOTICE THAT** on November 15, 2016, at 9:30 a.m., before the Honorable Laurel Beeler, Courtroom C, 15th Floor, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, California, 94102, Defendants Sylvia Mathews Burwell, in her official capacity as Secretary of Health and Human Services ("HHS"), Mark Greenberg, in his official capacity as Acting Assistant Secretary for the Administration of Children and Families, and Robert Carey, in his official capacity as Director of the Office of Refugee Resettlement, will and hereby do move for an order dismissing the claim in plaintiff's Complaint and the relief sought therefrom.

Defendants move to dismiss plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for a lack of subject matter jurisdiction because plaintiff lacks Article III standing. Neither plaintiff nor any of its members is alleged to have experienced an injury-in-fact, nor does the taxpayer standing exception apply. In addition, the United States has not waived sovereign immunity for the nominal damages sought by plaintiff as part of its prayer for relief.

The bases for defendants' Motion to Dismiss are this Notice of Motion; the accompanying Memorandum of Points and Authorities; the pleadings and court filings in this action, including plaintiff's Complaint; any matter that may be judicially noticed; and any other matter presented before the Court through oral argument, supplemental briefing, or otherwise.

## STATEMENT OF ISSUES TO BE DECIDED

Pursuant to N.D. Cal. Civ. R. 7-4(a)(3), defendants identify the following issues to be decided based on the allegations in the Complaint:

1.      Whether plaintiff, the American Civil Liberties Union of Northern California ("ACLU-NC") has, as an organization, experienced an injury-in-fact necessary for Article III standing based on discretionary grants awarded by the Office of Refugee Resettlement ("ORR"), a component agency of HHS, to provide care and shelter to unaccompanied alien children.

MOTION TO DISMISS PLAINTIFF'S COMPLAINT
CV 16-3539-LB

2.     Whether ACLU-NC may claim associational standing on behalf of its members to raise an Establishment Clause challenge to discretionary grants awarded by ORR to provide care and shelter to unaccompanied alien children.  To evaluate whether there is associational standing requires consideration of two sub-issues:

      (a)     Whether members of ACLU-NC, as individuals, have experienced any injury-in-fact necessary for Article III standing as a result of ORR-awarded discretionary grants to provide care and shelter to unaccompanied alien children, and

      (b)     Whether members of ACLU-NC can avail themselves of the narrow taxpayer standing exception such that they would have standing as individuals to raise an Establishment Clause challenge to ORR-awarded grants to provide care and shelter to unaccompanied alien children.

3.     Although the Complaint did not identify a waiver of sovereign immunity in its statement of jurisdiction, *see* Compl. ¶¶ 10-12, whether any federal statute expressly and unequivocally waives sovereign immunity to permit recovery of nominal damages for an alleged Establishment Clause violation.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff, the American Civil Liberties Union of Northern California ("ACLU-NC"), seeks to enjoin certain grants awarded by the Department of Health and Human Services ("HHS") to provide care and shelter to unaccompanied alien children.  Specifically, ACLU-NC contends that awarding those grants to certain religiously affiliated organizations violates the Establishment Clause of the First Amendment because in providing care and shelter to unaccompanied alien children, those grantees do not provide abortion and contraceptive services for religious reasons.  This dispute, however, is beyond the Court's power to resolve, and should be dismissed on jurisdictional grounds: ACLU-NC lacks Article III standing, and the United States has not waived sovereign immunity for ACLU-NC's request for nominal damages.

There is no Article III standing here because ACLU-NC is not an appropriate party to challenge HHS' discretionary expenditures.  ACLU-NC does not attempt to sue on behalf of any of the unaccompanied alien children served by the grantee organizations, nor is it authorized to do so, and neither ACLU-NC nor any of its members is alleged to be an applicant for or recipient of the relevant grant funding.  Without experiencing any concrete and particularized injury-in-fact, ACLU-NC lacks Article III standing and may not pursue an Establishment Clause claim regarding the use of the grant funds.

Nor does ACLU-NC have associational standing to sue on behalf of its members.  ACLU-NC, which is not alleged to be a federal taxpayer, cannot avail itself of the taxpayer standing exception on behalf of its members in this instance.  As a narrow exception, taxpayer standing extends only to challenges to specific congressional action, and not to discretionary Executive Branch expenditures.  Yet plaintiff's claim challenges HHS' discretionary spending: plaintiff's grievance would not exist had HHS refused to award grants to religiously affiliated organizations that do not provide abortion of contraceptive services to unaccompanied alien children, or if HHS had awarded no grants at all.

Plaintiff's request for nominal damages should also be dismissed on sovereign immunity grounds.  As a jurisdictional condition, the United States, its agencies, and its officers may be

sued only to the extent provided by an express and unambiguous statutory waiver of sovereign immunity.  Plaintiff's Complaint does not identify any waiver of sovereign immunity permitting nominal monetary damages for Establishment Clause claims – and no such waiver exists.

For these reasons, the Complaint should be dismissed with prejudice.  The allegations do not establish subject matter jurisdiction, and that failure cannot be cured by amendment.

## STATEMENT OF FACTS

HHS, through its component agency, the Office of Refugee Resettlement ("ORR"), provides care and services to unaccompanied alien children who have been apprehended and taken into federal custody.  Unaccompanied alien children are persons under age 18, who lack lawful immigration status in the United States and who do not have a parent or legal guardian in the United States available to provide care and physical custody.  *See* 6 U.S.C. § 279(g)(2). Apprehended unaccompanied alien children who do not voluntarily withdraw their applications for admission and return home are subject to removal proceedings, and those unaccompanied alien children are typically transferred to HHS' custody within 72 hours of entering federal custody.  *See* 8 U.S.C. § 1232(b)(3); *see also* 8 C.F.R. § 1236.3(g) (permitting certain unaccompanied alien children from Canada and Mexico to return home voluntarily); Compl. ¶¶ 19-20, ECF No. 1 (June 24, 2106).

HHS, through ORR, coordinates and implements the care and placement of unaccompanied alien children in federal custody.  *See* 6 U.S.C. § 279(b); *see also* 8 U.S.C. § 1232(b)(1) (vesting HHS with responsibility for "the care and custody of all unaccompanied alien children").  Subject to considerations of danger to the community, danger to self, and risk of flight, ORR is responsible for promptly placing unaccompanied alien children in "the least restrictive setting that is in the best interests of the child."  8 U.S.C. § 1232(c)(2)(A); *see also* 6 U.S.C. § 279(b)(1)(F) (making ORR responsible for "identifying a sufficient number of qualified individuals, entities, and facilities to house unaccompanied alien children").  To achieve that objective, ORR has awarded grants to organizations to provide temporary shelter care for unaccompanied alien children until they either are released from federal custody (often to a family member), turn 18 years of age, or gain lawful immigration status.  *See* 8 U.S.C.

§ 1232(i) (authorizing grants), Compl. ¶¶ 3, 23-24; *see generally Residential Services for Unaccompanied Alien Children* at 1 (announcing a funding opportunity to provide basic shelters, group homes, staff secure, secure, and other specialized types of care for unaccompanied alien children).[1]  Those state-licensed, ORR-funded organizations provide temporary shelter and care to the majority of unaccompanied alien children within ORR's legal custody.  *See* Compl. ¶¶ 3, 24; *see also Fact Sheet*, U.S. Department of Human Services, Administration for Children and Families, Office of Refugee Resettlement, Unaccompanied Children's Program, at 2 (updated Jan. 2016) (hereinafter "*Fact Sheet*").[2]  On average, unaccompanied alien children remain in the temporary shelters operated by ORR grantees for 34 days.  *See Fact Sheet* at 2.

The current funding for ORR's temporary care and shelter grants comes from three separate lump-sum congressional appropriations – those from 2014, 2015, and 2016.  In each of those three years, Congress appropriated an approximate average of $1.57 billion to the Administration for Children and Families ("ACF") – the component of HHS in which ORR is located – to provide refugee and entrant assistance activities.  *See* Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, Div. H, Tit. II, 129 Stat. 2242, 2612-13 (Dec. 18, 2015); Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. No. 113-235, Div. G. Tit. II, 128 Stat. 2130, 2479 (Dec. 16, 2014); Consolidated Appropriations Act, 2014, Pub. L. No. 113-76, Div. H, Tit. II, 128 Stat. 5, 376 (Jan. 17, 2014).  Those lump-sum appropriations are not earmarked for any particular program, expense, or component of ACF, but rather through nearly identical language, they provide ACF with funding to carry out the broad purposes announced by several statutes:

> For necessary expenses for refugee and entrant assistance activities authorized by section 414 of the Immigration and Nationality Act and section 501 of the Refugee Education Assistance Act of 1980, and for carrying out section 462 of the Homeland Security Act of 2002, section 235 of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, the Trafficking Victims Protection Act of 2000 ("TVPA"), section 203 of the Trafficking Victims

---

[1] Available at https://ami.grantsolutions.gov/files/HHS-2014-ACF-ORR-ZU-0608_0.pdf.

[2] Available at www.acf.hhs.gov/sites/default/files/orr/orr_uc_updated_fact_sheet_1416.pdf.

1

Protection Reauthorization Act of 2005, and the Torture Victims Relief Act of
1998 [an approximate average of $1.57 billion] . . . .

2

3    Consolidated Appropriations Act, 2016, 129 Stat. at 2612 (appropriating approximately $1.67

4    billion); Consolidated and Further Continuing Appropriations Act, 2015, 128 Stat. at 2479

5    (appropriating approximately $1.56 billion); Consolidated Appropriations Act, 2014, 128 Stat.

6    at 376 (appropriating approximately $1.49 billion).  The consolidated appropriations acts also

7    include certain general restrictions on the use and duration of funds.[3]  For instance, the 2014,

8    2015, and 2016 appropriations to ACF each lasts for three fiscal years and expires on

9    September 30 of 2016, 2017, and 2018, respectively.  *See* Consolidated Appropriations Act,

10   2016, 129 Stat. at 2612; Consolidated and Further Continuing Appropriations Act, 2015, 128

11   Stat. at 2479; Consolidated Appropriations Act, 2014, 128 Stat. at 376.

12          Plaintiff has filed suit because ORR has used some of its discretionary funding to award

13   competitive grants to certain religiously affiliated organizations to provide temporary care and

14   shelter to unaccompanied alien children, and those organizations do not provide abortion or

15   contraceptive services to unaccompanied alien children for religious reasons.  Plaintiff alleges

16   that ORR's award of competitive grants to those religiously affiliated organizations violates the

17   Establishment Clause by subsidizing religious beliefs, by underwriting religious restrictions on

18   government-funded services, and by imposing religiously based restrictions on taxpayer funds.

19   *See* Compl. ¶¶ 7, 58.  The Complaint does not allege that any unaccompanied alien child who

20   requests abortion services while in federal legal custody has been or is ultimately denied those

21   services.  *Cf.* Compl. ¶¶ 42-46, 50-53 (alleging that abortion requests by unaccompanied alien

22   children within a temporary shelter operated by religiously affiliated organizations receiving

23   ORR grant funds were granted after the requesting unaccompanied alien child was transferred to

24

25   [3] The appropriations acts have several general restrictions on ACF's use of appropriated funds.
     *See, e.g.,* Consolidated Appropriations Act, 2016, §§ 201-10, 129 Stat. at 2619-20, §§ 501-20,
26   129 Stat. at 2648-53.  One of the restrictions is the Hyde Amendment, a rider which prohibits
     the use of appropriated funds for abortions except in cases of rape, incest, or danger to the life of
27   the mother.  *See* Consolidated Appropriations Act, 2016, §§ 506-07, 129 Stat. at 2649-50;
     Consolidated and Further Continuing Appropriations Act, 2015, §§ 506-07, 128 Stat. at 2515;
28   Consolidated Appropriations Act, 2014, §§ 506-07, 128 Stat. at 409.  The Hyde Amendment is
     not at issue in this litigation and has been previously upheld by the Supreme Court against
     Establishment Clause challenge, *see Harris v. McRae*, 448 U.S. 297, 319-20 (1980).

another temporary shelter that provided the services).[4]  Rather, the gravamen of plaintiff's Complaint is ORR's award of grant funding to religiously affiliated organizations that provide temporary shelter and care to unaccompanied alien children but that do not provide services related to legally permitted abortion and contraception.  *See* Compl. ¶ 6 (complaining about ORR's "decision to authorize this religiously motivated denial of services"); *see also id.* ¶¶ 5, 7, 30-40.

## ARGUMENT

Plaintiff's Complaint should be dismissed for lack of subject matter jurisdiction pursuant to Civil Rule 12(b)(1).  *See* Fed. R. Civ. P. 12(b)(1).  Federal courts are courts of limited jurisdiction, and a plaintiff seeking to invoke the court's jurisdiction bears the burden of establishing jurisdiction.  *See Kokkenen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Columbia Riverkeeper v. U.S. Coast Guard*, 761 F.3d 1084, 1092 (9th Cir. 2014).  Through a motion to dismiss under Rule 12(b)(1), a defendant may challenge a court's subject matter jurisdiction – either facially or factually.  *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  This Rule 12(b)(1) motion to dismiss presents facial jurisdictional challenges on Article III standing and sovereign immunity grounds.  *See generally Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861,867 (N.D. Cal. 2012) ("Standing is jurisdictional, cannot be waived, and is properly addressed under Rule 12(b)(1)."); *Burns Ranches, Inc. v. U.S. Dep't of the Interior*, 851 F. Supp. 2d 1267, 1270 (D. Or. 2011) ("Sovereign immunity is a defense properly raised under Fed. R. Civ. P. 12(b)(1).").  In evaluating a facial challenge to its subject matter jurisdiction, a court construes the allegations in the complaint a light most favorable to the plaintiff.  *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  But if "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction," the complaint should be dismissed pursuant to Rule 12(b)(1).  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

---

[4] The Complaint does not allege that any unaccompanied alien children requested or were denied contraception to which they were otherwise legally entitled.  *Cf.* Compl. ¶¶ 42-53.

**I.      This action should be dismissed because ACLU-NC lacks Article III standing.**

Organizations and associations can have Article III standing in their own right or on behalf of their members.  *See generally Abigail All. for Better Access to Developmental Drugs v. Eschenbach*, 469 F.3d 129, 133 (D.C. Cir. 2006) (collecting Supreme Court cases).  ACLU-NC does not have Article III standing in either capacity, and this action should be dismissed for lack of subject matter jurisdiction.

**A.      ACLU-NC does not have Article III standing as an organization.**

The allegations in the Complaint, even if taken as true, cannot be construed so that ACLU-NC – as an organization – would have Article III standing.  As one of the justiciability doctrines emanating from the case-or-controversy requirement in Article III of the Constitution, standing focuses primarily upon the *party* seeking to invoke federal jurisdiction, as opposed to the *issue* at stake in the litigation.  *See Flast v. Cohen*, 392 U.S. 83, 99-100 (1968) (explaining that "when standing is placed in issue in a case, the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable"); *see also Habeas Corpus Res. Ctr. v. U.S. Dep't of Justice*, 816 F.3d 1241, 1247 (9th Cir. 2016) (explaining that standing "concerns *who* may bring suit").  To have standing on its own, an association must meet the standing requirements applicable to individuals.  *See Warth v. Seldin*, 422 U.S. 490, 511 (1975) ("There is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy."); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378 (1982).  The "irreducible constitutional minimum" for Article III standing consists of three elements: (i) an injury-in-fact; (ii) a fairly traceable causal connection; and (iii) redressability.  *See Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 560-61 (1992) (plurality opinion); *Habeas Corpus Res. Ctr.*, 816 F.3d at 1248.  The injury-in-fact element requires an injury that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548; *Lujan*, 504 U.S. at 560.  Article III standing is "'substantially more difficult' to establish" where a party is not "the object of the [challenged] government action or

1    inaction."  *Lujan*, 504 U.S. at 562 (quoting *Allen v. Wright*, 468 U.S. 737, 758 (1984)); *see also*

2    *Habeas Corpus Res. Ctr.*, 816 F.3d at 1248.

3          As an organization, ACLU-NC cannot satisfy the injury-in-fact element, which is "the

4    'first and foremost' of standing's three elements."  *Spokeo*, 136 S. Ct. at 1547.  ACLU-NC is

5    not alleged to be the specific object of the challenged governmental action:  it is not an

6    unaccompanied alien child; it is not a family member of an unaccompanied alien child; nor is it

7    an ORR grant applicant or a grant recipient for the provision of care to unaccompanied alien

8    children.  Consequently, ORR's award of a grant to certain religiously affiliated charitable

9    organizations to provide care and shelter to unaccompanied alien children did not actually or

10   imminently injure ACLU-NC in a concrete and particularized manner.  Moreover, there is no

11   allegation that ACLU-NC pays federal taxes, and therefore ACLU-NC cannot assert taxpayer

12   standing as an association.  *Cf.* Compl. ¶ 15 (alleging that ACLU-NC is a non-profit

13   organization).  In short, without alleging any plausible injury-in-fact, ACLU-NC, as an

14   organization, lacks Article III standing.

15         **B.      ACLU-NC cannot bring this lawsuit on behalf of its taxpayer members.**

16         Although an organization may have standing to bring claims on behalf of its members,

17   ACLU-NC lacks such "associational" standing or "representational" standing here.  *Fleck &*

18   *Assocs., Inc. v. Phoenix*, 471 F.3d 1100, 1105 (9th Cir. 2006).  To sue on behalf of its members,

19   an organization must make three showings: (i) that at least one of its members has standing to

20   sue in his own right; (ii) that the interests that the association seeks to protect are germane to its

21   purpose; and (iii) that the adjudication of the association's claims and relief sought does not

22   require the participation of any individual member of the association.  *See Hunt v. Wash. State*

23   *Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *see also Fleck & Assocs.*, 471 F.3d at 1106;

24   *Wash. Legal Found. v. Legal Found. of Wash.*, 271 F.3d 835, 849 (2001); *Presidio Golf Club v.*

25   *Nat'l Park Serv.*, 155 F.3d 1153, 1159 (9th Cir. 1998).  From the allegations in the Complaint,

26   ACLU-NC fails to satisfy the first element for associational standing because its members do

27   not have standing in their own right.

28

### 1.   ACLU-NC's members do not have traditional standing to bring this suit.

Based on the allegations in the Complaint, ACLU-NC's members do not have traditional Article III standing.  The members do not claim to have experienced any injury-in-fact from ORR's award of grants to religiously affiliated charitable organizations.  Much like ACLU-NC itself, the members are not alleged to be unaccompanied alien children, family members of unaccompanied alien children, ORR grant recipients, or ORR grant applicants.  And therefore, none of the members were actually or imminently injured in a concrete and particularized manner by ORR's grant awards to certain religiously affiliated organizations to provide care and shelter for unaccompanied alien children.

### 2.   ACLU-NC's members do not have taxpayer standing to bring this suit.

At most, ACLU-NC alleges that its members are federal taxpayers.  *See* Compl. ¶¶ 9, 15. But the long-established general rule is that status as federal taxpayer does not confer Article III standing to challenge actions by the federal government.  *See Frothingham v. Mellon, decided with Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923).  Supreme Court holdings have, on two occasions – *Flast v. Cohen*, 392 U.S. 83 (1968), and *Bowen v. Kendrick*, 487 U.S. 589 (1988) – recognized a "narrow exception . . . to the general rule against taxpayer standing."  *Kendrick*, 487 U.S. at 618; *see also Flast*, 392 U.S. at 105-06 ; *but see Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 608 (2007) (declining to find taxpayer standing due to the limited nature of the exception); *In re Naval Chaplaincy*, 534 F.3d 756, 761 (D.C. Cir. 2008) (recognizing only a "very narrow exception to the general bar against taxpayer standing").   As explained below, that narrow exception does not apply here.

In *Flast*, the Supreme Court determined that taxpayers had Article III standing to challenge a piece of federal spending legislation on Establishment Clause grounds.  The specific statute at issue provided grants for "school library resources, textbooks, and other printed and published instructional materials 'for the use of children and teachers in public and private elementary and secondary schools.'" 392 U.S. at 86-87 (quoting the Elementary and Secondary

MOTION TO DISMISS PLAINTIFF'S COMPLAINT
CV 16-3539-LB

Education Act of 1965, Pub. L. No. 89-10, Tit. II, § 203(a), 79 Stat. 27, 36 (previously codified at 20 U.S.C. § 821)).  The statutory reference to "private elementary and secondary schools," was plainly understood as authorizing federal funding of religiously affiliated schools.  *See Hein*, 551 U.S. at 604 n.3 (recognizing that at the time of the *Flast* decision, "the great majority of nonpublic elementary and secondary schools in the United States were associated with a church"); *Flast*, 392 U.S. at 107, 113 (Douglas, J., concurring) (observing initially that "[m]ost laws passed by Congress do not contain even a ghost of a constitutional question," but commenting later that "[t]he mounting federal aid to sectarian schools is notorious and the subterfuges numerous").  And for that reason, *Flast* held that taxpayers had Article III standing to challenge such "*congressional action* under the taxing and spending clause" that was alleged to be "in derogation" of the Establishment Clause.  *Flast*, 392 U.S. at 105-06 (emphasis added); *see also Hein*, 551 U.S. at 604 ("The expenditures challenged in *Flast* . . . were funded by a specific congressional appropriation and were disbursed to private schools (including religiously affiliated schools) pursuant to a direct and unambiguous congressional mandate."); *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 479 (1982) (confirming that *Flast* "limited taxpayer standing to challenges directed 'only [at] exercises of congressional power.'"  (alteration in original) (quoting *Flast*, 392 U.S. at 102)); *Kong v. Scully*, 341 F.3d 1132, 1138 (9th Cir. 2003) (permitting taxpayer standing to challenge section 4454 of the Balanced Budget Act of 1997 as a sect-specific establishment of religion).

In only one other instance, *Bowen v. Kendrick*, 487 U.S. 589 (1988), did the Supreme Court hold in favor of federal taxpayer standing.  In that case, taxpayers were afforded standing to bring an Establishment Clause challenge to a statute that expressly contemplated the involvement of "religious and charitable organizations" in a federal grant program designed to address adolescent premarital sexual relations, pregnancy, and parenthood.  *See id.* at 595-96; *see also Hein*, 551 U.S. at 607 (explaining that taxpayers had standing in *Kendrick* because Congress, in appropriating funds, had "expressly contemplated that some of those moneys might go to projects involving religious groups").

Other than those two limited instances, the Supreme Court has not held in favor of taxpayer standing, even for other Establishment Clause challenges.  For instance, in *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464 (1982), the Supreme Court rejected taxpayer standing because the taxpayers' Establishment Clause claim was a challenge to a federal agency's actions – not "congressional action."  *Id.* at 479; *see also Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 228 (1974) (denying taxpayer standing where the constitutional claim did not involve Spending Clause legislation, but rather "action of the Executive Branch"); *cf. Tilton v. Richardson*, 403 U.S. 672, 676-77 (1971) (permitting federal taxpayers to bring an Establishment Clause challenge to an act of Congress providing grants to religiously affiliated colleges and universities without addressing the taxpayer standing exception).

In *Hein v. Freedom From Religion Foundation, Inc.*, 551 U.S. 587 (2007), the Supreme Court emphasized the narrowness of the taxpayer standing exception in *Flast*.  *See id.* at 609-10 (recognizing that "the *Flast* exception has largely been confined to its facts" and limiting federal taxpayer standing "to an outer boundary drawn by the *results* in *Flast*" (quoting *United States v. Richardson*, 418 U.S. 166, 196 (1974) (Powell, J. concurring))).  In *Hein*, taxpayers sought to challenge grants to faith based organizations funded by lump-sum appropriations.  *Hein*, 551 U.S. at 595.  The Supreme Court denied taxpayer standing because the relevant appropriations did not "*specifically authorize* the use of federal funds to pay for the conferences or speeches that the plaintiffs challenged."  *Hein*, 551 U.S. at 593 (emphasis added); *see also Sherman v. Illinois*, 682 F.3d 643, 646 (7th Cir. 2012) (explaining that following *Hein*, federal taxpayer standing extends only to "suits against 'specific congressional enactments,' [and] expressly exclude[es] 'discretionary Executive Branch expenditures.'" (quoting *Hein*, 551 U.S. at 608-10)); *Pedreira v. Ky. Baptist Homes for Children*, 579 F.3d 722, 731 (6th Cir. 2009) (denying taxpayer standing to a challenge to "general funding provisions for childcare [that] do not contemplate religious indoctrination").

Since *Hein*, courts have repeatedly denied Article III standing to taxpayers who challenge "executive discretion, not congressional action."  *Hein*, 551 U.S. at 605; *see Murray*

*v. U.S. Dep't of Treasury*, 681 F.3d 744, 751 (6th Cir. 2012) (rejecting taxpayer standing where the relevant statute "d[id] not contemplate the disbursement of congressional appropriations to support religious activities"); *In re Naval Chaplaincy*, 534 F.3d at 762 (denying taxpayer standing when there was "[n]o legislative enactment [that] expressly authorizes or appropriates funds for the Navy to favor Catholic chaplains in its retirement system"); *Freedom From Religion Found., Inc. v. Nicholson*, 536 F.3d 730, 744-45 (7th Cir. 2008) (denying taxpayer standing where there was "an absence of any direction, guidance or indication on the part of Congress as to how the [Veterans Health Administration] should expend the funds appropriated for medical care"); *Freedom From Religion Found., Inc. v. Ayers*, 748 F. Supp. 2d 982, 989 (W.D. Wisc. 2010) (denying taxpayer standing to an Establishment Clause challenge in the absence of Congress expressly authorizing, directing, or mentioning the expenditures).[5]

There is no taxpayer standing here because plaintiff's Establishment Clause challenge is to "executive discretion, not congressional action." *Hein*, 551 U.S. at 605. The Complaint does not identify any act of Congress appropriating funds for religious organizations (that object to abortion and contraception) to provide care and shelter to unaccompanied alien children. Nor does the Complaint identify an act of Congress that expressly contemplates the involvement of religious organizations in providing care and shelter to unaccompanied alien children. Instead, ACLU-NC contests discretionary executive decisions, alleging, for instance, that defendants – and not acts of Congress – "knowingly permit religiously affiliated grantees with religious objections to abortion and contraception to impose restrictions on unaccompanied immigrant minors' access to these forms of reproductive healthcare." Compl. ¶ 30; *see also id.* ¶¶ 5-7, 31-40. Similarly, as far as relief, ACLU-NC seeks to enjoin grant awards made by ORR. *See*

---

[5] *See also Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 142 (2011) (denying state taxpayer standing in the absence of an alleged expenditure in alleged violation of the Establishment Clause); *McCollum v. Calif. Dep't of Corr. & Rehab.*, 647 F.3d 870, 880 (9th Cir. 2011) (denying state taxpayer standing to an Establishment Clause challenge to "the current allocation of chaplaincies among religious denominations and the procedure for determining such allocations"); *Freedom From Religion Found., Inc. v. Olson*, 566 F. Supp. 2d 980, 989 (D.N.D. 2008) (denying state taxpayer standing to an Establishment Clause challenge to discretionary, executive expenditures of funds); *but see ACLU v. Sebelius*, 697 F. Supp. 2d 200 (D. Mass. 2010) *vac'd* 705 F.3d 44 (1st Cir. 2013).

MOTION TO DISMISS PLAINTIFF'S COMPLAINT
CV 16-3539-LB

1   Compl. at 15.  Those grants are funded using lump-sum appropriations for a number of different

2   programs that do not specify amounts for any particular programs, much less any intended

3   federal grantees.  Yet as *Hein* made clear, the taxpayer standing exception does not extend to

4   challenges to discretionary Executive Branch spending.  *See Hein*, 551 U.S. at 608-10; *see also*

5   *In re Naval Chaplaincy*, 534 F.3d at 762.  Because the Complaint challenges the exercise of

6   executive discretion – and not congressional action – the narrow exception for taxpayer standing

7   is inapplicable here.

8          There is also no taxpayer standing here because the relevant congressional

9   appropriations do not "authorize, direct, or even mention," the expenditure of funds in alleged

10  violation of the Establishment Clause.  *Hein*, 551 U.S. at 605.  Nothing in any of the three

11  relevant appropriations acts indicates that Congress specifically intended that ORR would or

12  should provide grants to provide temporary shelter and care to unaccompanied alien children,

13  much less that some of the ORR grant recipients would or should be religious organizations

14  with objections to abortion and contraception.  *See* Consolidated Appropriations Act, 2016, 129

15  Stat. at 2612; Consolidated and Further Continuing Appropriations Act, 2015, 128 Stat. at 2479;

16  Consolidated Appropriations Act, 2014, 128 Stat. at 376.  Thus, unlike *Flast*, the relevant

17  appropriations here make no mention of providing federal funding to faith based organizations.

18  *Cf. Flast*, 392 U.S. at 86-87.  Nor did Congress expressly identify the need to involve faith

19  based organizations in any statutory mission here, as was the case in *Kendrick*.  *Cf. Kendrick*,

20  487 U.S. at 595-96.  In short, because Congress did not "*specifically authorize* the use of federal

21  funds" for expenses in alleged violation of the Establishment Clause, plaintiff's challenge does

22  not fit within the narrow taxpayer standing exception.  *Hein*, 551 U.S. at 593 (emphasis added).

**II.     Plaintiff's claim for nominal damages is barred by the doctrine of sovereign immunity.**

25         Even if (unlike here) a party has standing, it cannot obtain relief against the United

26  States, its agencies, or its officers, unless Congress has expressly and unequivocally waived

27  sovereign immunity through statute.  *See FAA v. Cooper*, 132 S. Ct. 1441, 1448 (2012); *Lane v.*

28

1    *Peña*, 518 U.S. 187, 192 (1996).  Without a waiver of sovereign immunity, a court lacks

2    jurisdiction over claims against a federal agency or federal officials:

> [I]t is elementary that "the United States, as a sovereign, is immune from suit save
> as it consents to be sued, and the terms of its consent to be sued in any court
> define that court's jurisdiction to entertain the suit."

5    *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (ellipses omitted) (quoting *United States v.*

6    *Sherwood*, 312 U.S. 584, 586 (1941)); *see also FDIC v. Meyer*, 510 U.S. 471, 475 (1994);

7    *Jachetta v. United States*, 653 F.3d 898, 903 (9th Cir. 2011).  Nothing in the Complaint's "short

8    and plain statement of the grounds for the court's jurisdiction," identifies any waiver of

9    sovereign immunity, much less one that would permit plaintiff to sue for nominal damages.

10   Fed. R. Civ. P. 8(a); *see also* Compl. ¶¶ 10-12.  Because the Complaint fails to identify any

11   applicable waiver of sovereign immunity for the nominal damages plaintiff seeks, plaintiff has

12   failed to satisfy its burden of establishing this Court's jurisdiction.  *See, e.g., Creamer v. United*

13   *States*, 261 F. App'x 814, 814 (5th Cir. 2008) (upholding the dismissal of a complaint against

14   the United States that did not identify a waiver of sovereign immunity).

15          That pleading defect is not curable through amendment because no waiver of sovereign

16   immunity permits nominal damages here, and accordingly, plaintiff's Complaint should be

17   dismissed with prejudice.  For instance, the waiver of sovereign immunity in the Administrative

18   Procedure Act permits suits against federal agencies for "relief other than money damages," in

19   specific circumstances, but that waiver plainly does not allow recovery of monetary damages

20   from federal agencies.  5 U.S.C. § 702; *see also W. Radio Servs. Co. v. U.S. Forest Serv.*,

21   578 F.3d 1116, 1123 (9th Cir. 2009) (explaining that although it allows for specific relief, "[t]he

22   APA does not provide for monetary damages").

23          Beyond the Administrative Procedure Act, no other waiver of sovereign immunity

24   enables plaintiffs to recover nominal damages for an Establishment Clause claim.  For instance,

25   the "two most important waivers of sovereign immunity for damages," those in the Federal Tort

26   Claims Act (the "FTCA") and the Tucker Act, do not permit such relief.  *United States v. Park*

27   *Place Assocs., Ltd.*, 563 F.3d 907, 924 (9th Cir. 2009).  The FTCA does not permit claims for

28   violations of constitutional rights.  *See FDIC v. Meyer*, 510 U.S. at 478 ("[T]he United States

MOTION TO DISMISS PLAINTIFF'S COMPLAINT
CV 16-3539-LB

simply has not rendered itself liable under [the FTCA] for constitutional tort claims."); *Jachetta*, 653 F.3d at 904 (explaining that the waiver of sovereign immunity in the FTCA is limited to claim arising under state law and does not apply to claims for constitutional violations).  The Tucker Act permits damages for constitutional violations, but only where payment is mandated upon a finding of a constitutional violation.  *See United States v. Mitchell*, 463 U.S. 206, 216-17 (1983) (explaining that not every monetary claim invoking the Constitution is cognizable under the Tucker Act – only those as to which a provision of the Constitution mandates compensation for the damages sustained); *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) ("[I]n order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages").  Consequently, the Tucker Act permits damages claims against the United States under the Takings Clause, which is money mandating, but not under the Establishment Clause, which is not.  *See Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1309 (Fed Cir. 2008) ("It is undisputed that the Takings Clause of the Fifth Amendment is a money-mandating source for purposes of Tucker Act jurisdiction."); *Treece v. United States*, 96 Fed. Cl. 226, 231 (Fed. Cl. 2008) (collecting cases demonstrating that the Takings Clause is the only recognized money-mandating provision of the Constitution).  In sum, the Court lacks jurisdiction to award nominal damages here because plaintiff does not – and indeed cannot – identify a waiver of sovereign immunity that would permit such relief.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

September 27, 2016                    Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

SHEILA M. LIEBER
Deputy Director

/s/  Peter J. Phipps
PETER J. PHIPPS
Senior Trial Counsel
Civil Division, Federal Programs Branch
United States Department of Justice

MOTION TO DISMISS PLAINTIFF'S COMPLAINT
CV 16-3539-LB

16