ELIZABETH O. GILL (SBN 218311)
JENNIFER L. CHOU (SBN 304838)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437
Email: *egill@aclunc.org*
Email: *jchou@aclunc.org*

BRIGITTE AMIRI (*pro hac vice*)
BRIAN HAUSS (SBN 284759)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2633
Facsimile: (212) 549-2652
Email: *bamiri@aclu.org*
Email: *bhauss@aclu.org*

MELISSA GOODMAN (SBN 289464)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5299
Email: *mgoodman@aclusocal.org*

DANIEL MACH (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th Street NW
Washington, DC 20005
Telephone: (202) 675-2330
Email: *dmach@aclu.org*

*Attorneys for Plaintiff*

**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA,<br><br>Plaintiff,<br>vs.<br><br>SYLVIA MATHEWS BURWELL, Secretary of Health and Human Services. *et al.*,<br><br>Defendants. | Civil No. 3:16-cv-3539-LB<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date: November 15, 2016<br>Time: 9:30 a.m.<br>Courtroom: Courtroom C, 15th Floor<br>Judge: Hon. Laurel Beeler |

## TABLE OF CONTENTS

**STATEMENT OF ISSUES TO BE DECIDED** ................................................................ 1

**INTRODUCTION** ............................................................................................................ 1

**FACTUAL BACKGROUND** .......................................................................................... 2

**STANDARD OF REVIEW** ............................................................................................ 6

**ARGUMENT** ................................................................................................................... 6

**CONCLUSION** ............................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*ACLU of Massachusetts v. Sebelius*, 697 F. Supp. 2d 200 (D. Mass. 2010) ................ 9, 11, 12, 14

*ACLU of Minnesota v. Tarek Ibn Ziyad Academy*, No. 09-138 (DWF/JJG), 2009 WL 2215072 (D. Minn. July 21, 2009) ................................................................................................ 13

*American Jewish Congress v. Corporation for National and Community Service*, 399 F.3d 351 (D.C. Cir. 2005) ................................................................................................................ 9

*Americans United for Separation of Church & State v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406 (8th Cir. 2007) ................................................................................................ 13

*Arizona Christian School Tuition Organization v. Winn*, 563 U.S. 125 (2011) ........................... 11

*Barnum Timber Company v. Environmental Protection Agency*, 633 F.3d 894 (9th Cir. 2011) ... 6

*Bowen v. Kendrick*, 487 U.S. 589 (1988) ............................................................................ *passim*

*Chandler v. State Farm Mutual Automobile Insurance Company*, 598 F.3d 1115 (9th Cir. 2010) ................................................................................................ .6

*Cottonwood Environmental Law Center v. United States Forest Service*, 789 F.3d 1075 (9th Cir. 2015) ................................................................................................ 6

*Flast v. Cohen*, 392 U.S. 83 (1968) ................................................................................ 7, 8, 13

*Hein v. Freedom from Religion Foundation, Inc.*, 551 U.S. 587 (2007) ........................... 10, 11, 12

*Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977) ........................ 6

*In re Adobe Systems, Inc. Privacy Litigatopm*, 66 F. Supp. 3d 1197 (N.D. Cal. 2011) ................ 6

*Lamont v. Woods*, 948 F.2d 825 (2d Cir. 1991) ............................................................................ 9

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................................... 6

*Members of the Jamestown School Comitee v. Schmidt*, 699 F.2d 1 (1st Cir. 1983) .................. 9

*Pulido v. Bennett*, 860 F.2d 296 (8th Cir. 1988) ........................................................................... 9

*Valley Forge Christian College v. Americans United For Separation of Church and State, Inc.*, 454 U.S. 464 (1982) ............................................................................................................ 11

**Statutes**

22 U.S.C. § 7105 .................................................................................................................... 12

22 U.S.C. § 7105(b)(1)(B)(i) .................................................................................................. 12

6 U.S.C. § 279(b)(1) ................................................................................................................. 3

8 U.S.C. § 1232 ........................................................................................................................ 3

8 U.S.C. § 1232(i) ............................................................................................................... 3, 10

Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. No. 113-235,
  128 Stat. 2130 (Dec. 16, 2014) ............................................................................................ 10

Consolidated Appropriations Act, 2014, Pub. L. No. 113-76, 128 Stat. 5 (Jan. 17, 2014) .......... 10

Consolidated Appropriations Act, 2016, Pub. L. No. 114–113, 129 Stat. 2242 (Dec. 18, 2015)
  ...................................................................................................................................... …3, 10

**Regulations**

45 C.F.R. § 411.92(a) ............................................................................................................... 2

**Other Authorities**

Administration for Children and Families, *Fact Sheet*: *U.S. Department of Human Services,
  Administration for Children and Families, Office of Refugee Resettlement, Unaccompanied
  Children's Program* (last updated Jan. 2016) ........................................................................ 2

Administration for Children and Families, Office of Refugee Resettlement, *Residential Services
  for Unaccompanied Alien Children* (2013) .......................................................................... 3

Stipulated Settlement Agreement, *Flores v. Reno*, No. CV 85-4544-RJK(Px) (C.D. Cal. Jan. 17,
  1997) ..................................................................................................................................... 2

Verbatim Transcript, *Rep. Darrell Issa Holds a Hearing on HHS Grant Denial for U.S.
  Conference of Catholic Bishops*, Roll Call, Inc., Dec. 14, 2011, 2011 WL 6254061. ............... 5

*HHS and the Catholic Church: Examining the Politicization of Grants Hearing Before the
  Committee on Oversight and Government Reform, House of Representatives*, 112th Cong.
  112-124 (2011). ..................................................................................................................... 5

Plaintiff American Civil Liberties Union of Northern California ("ACLU-NC") respectfully submits this memorandum of points and authorities in opposition to Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether Plaintiff's members have taxpayer standing to raise an Establishment Clause challenge against Defendants' disbursement of taxpayer funds—appropriated by Congress for the express purpose of carrying out the government's statutory obligations to provide for the care and custody of unaccompanied immigrant minors—to religiously affiliated entities that impose religious restrictions on unaccompanied immigrant minors' access to reproductive health care.

**INTRODUCTION**

Thousands of unaccompanied immigrant minors come across the border into the United States each year, often fleeing horrific conditions in their home countries. Many of these young people have been sexually abused in their home country or raped on their journey to the United States. It is readily apparent that they will need access to the full range of reproductive health care when they arrive in the United States.

Congress charged Defendants with the obligation to provide for the "care and custody" of unaccompanied immigrants minors, including young women with time-sensitive reproductive health needs, and expressly authorized Defendant Secretary of the Department of Health and Human Services to award grants and enter into contracts with private agencies to fulfill this mandate. Congress also regularly appropriates funds for the explicit purpose of carrying out these statutory obligations. With the full knowledge of Congress, Defendants have carried out their statutory mandate by giving millions of taxpayer dollars to religiously affiliated entities that

restrict unaccompanied minors' access to critical reproductive health care based on the entity's religious beliefs.

Plaintiff's members, federal taxpayers, have standing to challenge this violation of the Establishment Clause. Indeed, under well-established and undisturbed U.S. Supreme Court precedent, a federal taxpayer has standing to bring an Establishment Clause challenge that calls into question how funds authorized by Congress are being disbursed pursuant to an underlying statutory mandate. Accordingly, Defendants' motion to dismiss should be denied.

## FACTUAL BACKGROUND

Unaccompanied immigrant minors (also known as unaccompanied children) are young people who have fled their home countries without their parents, often to escape violence and abuse. Compl. ¶¶ 26, 42–53; *see Fact Sheet*, U.S. Department of Human Services, Administration for Children and Families, Office of Refugee Resettlement, Unaccompanied Children's Program, at 2 (last updated Jan. 2016) (cited by Def.'s Mot. to Dismiss (Dkt. 20) at 5) ("Fact Sheet"). After they are apprehended, they are placed in federal custody. Most are reunited with family in the United States, others seek asylum or are deported. But while these young people are in federal custody, Defendants have a legal obligation to meet their day-to-day needs. This includes providing access to all routine and emergency medical care, including family planning, post-sexual assault care, and abortion. *See* Compl. ¶ 26; Stipulated Settlement Agreement, *Flores v. Reno*, No. CV 85-4544-RJK(Px) (C.D. Cal. Jan. 17, 1997) ("*Flores* agreement"); 45 C.F.R. § 411.92(a). Access to such care is critical given the high rights of sexual assault that unaccompanied minors experience in the home countries, in their journey to the United States, or while in federal custody. Compl. ¶¶ 1, 26.

Congress has expressly charged the U.S. Department of Health and Human Services ("HHS") to care for these young people. In Section 235 of the William Wilberforce Trafficking

Victims Protections Reauthorization Act ("TVPRA"), Congress charged Defendants with providing for the "care and custody of all unaccompanied [] children" in the United States, and directed them to ensure that these young people are "promptly placed in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232; Compl. ¶¶ 20, 22. Additionally, Section 462 of the Homeland Security Act ("HSA") requires Defendants to "ensur[e] that the interests of the child are considered in decisions and actions relating to the care and custody of an unaccompanied [] child," and instructs Defendants to conduct "investigations and inspections of facilities and other entities in which unaccompanied [] children reside, including regular follow-up visits . . . to assess the continued suitability of such placements." 6 U.S.C. § 279(b)(1); Compl. ¶ 21. To implement these statutory mandates, Congress has expressly authorized the Secretary of HHS to "award grants to, and enter into contracts with, voluntary agencies to carry out" the government's obligations under the TVPRA and the HSA. 8 U.S.C. § 1232(i). And Congress regularly appropriates funds to fulfill the government's obligations under these statutes. For example, in the Consolidated Appropriations Act, 2016, Pub. L. No. 114–113, 129 Stat. 2242, Congress appropriated nearly $1.6 billion for ORR's Refugee and Entrant Assistance Programs in Fiscal Year 2016, including for "carrying out" the government's obligations under Section 235 of the TVPRA and Section 462 the HSA. Compl. ¶56.

Pursuant to this statutory mandate and attendant appropriations, Defendants award grants to dozens of private entities—both secular and sectarian—across the country to provide care to unaccompanied immigrant minors. *Id.* ¶ 24. As detailed in Defendants' grant announcement, government grantees are required to comply with all legal requirements for care of unaccompanied immigrant minors, including providing access to the full range of reproductive health care. *See Residential Services for Unaccompanied Alien Children*, U.S. Department of Human Services, Administration for Children and Families, Office of Refugee Resettlement, at

6–7 (cited by Def.'s Mot. to Dismiss (Dkt. 20) at 5). Nevertheless, Defendants authorize some religiously affiliated grantees to impose religiously motivated restrictions on access to abortion and contraception for the young people in their care, including by allowing these entities to block access to care; to expel young people from their programs for seeking an abortion; and to refuse to accept a minor into their program if the minor is seeking or has sought an abortion. Indeed, Defendants have permitted the U.S. Conference of Catholic Bishops ("USCCB") to prohibit its subgrantees—Catholic Charities across the country—from "provid[ing], refer[ing], encourage[ing], or in any way facilitate[ing] access to contraceptives or abortion services." Compl. ¶ 35.[1] Moreover, in response to USCCB's objection, Defendants removed a provision in the cooperative agreement between the government and USCCB that required USCCB to provide access to reproductive health pursuant to the *Flores* agreement. *Id.* ¶ 33. As a result of these government-sanctioned religious restrictions, young people face unnecessary delays in obtaining abortion, they are subject to stigma based on their decision to have an abortion, they are often unnecessarily uprooted from their support network, and some might not be able to access care at all. *See id.* ¶ 39.

Congress is aware that Defendants provide TVPRA and HSA funds to religiously affiliated entities. *Id.* ¶¶ 54, 55. For example, on June 25, 2014, Bishop Mark Setiz testified before the House Judiciary Committee regarding USCCB's participation in the unaccompanied immigrant minor program. In his testimony, Bishop Seitz recommended on behalf of USCCB that "Congress appropriate $2.28 billion in Fiscal Year 2015 for care of unaccompanied children,

---

[1] Similarly, Defendants awarded a grant to Catholic Charities of Galveston-Houston, despite the fact that its grant application said that "[d]ue to our religiously-affiliated institution's philosophy and policies, family planning practices are not discussed with clients. Clients are encouraged to practice abstinence." *Id.* ¶ 37.

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 3:16-CV-3539-LB

4

consistent with the Administration's request"; he also stated that "[a]ny funding should be administered in a manner that respects the religious liberty and conscience rights of organizations providing this care." *Id.* ¶ 54. Similarly, on February 4, 2016, USCCB's Associate Director of Children's Services submitted testimony to the House Judiciary Subcommittee on Immigration and Border Security explaining that USCCB provides "short-term and long-term foster care to unaccompanied children in HHS/ORR custody," including "medical and mental health screening and care," through "cooperative agreements with HHS/ORR." *Id.* ¶54. Moreover, a recent report from the Senate Permanent Subcommittee on Investigations notes that "HHS awarded 56 grants to over 30 care providers for the [unaccompanied immigrant minor] program in FY 2016, including . . . the U.S. Conference of Catholic Bishops." *Id.* ¶ 55. Not only did Congress know that HSA and TVPRA funds flowed to religious organizations like USCCB, but Congress also knew that USCCB restricts access to reproductive health care to vulnerable populations. *See, e.g.*, Verbatim Transcript, *Rep. Darrell Issa Holds a Hearing on HHS Grant Denial for U.S. Conference of Catholic Bishops*, Roll Call, Inc., Dec. 14, 2011, 2011 WL 6254061 (congressional hearing about whether USCCB should have been awarded a contract to provide care to trafficking victims even though they refuse to allow subcontractors to refer for abortion and contraceptives); *HHS and the Catholic Church: Examining the Politicization of Grants Hearing Before the Comm. on Oversight and Gov't Reform, H.R.*, 112th Cong. 112-124 (2011), available at https://www.gpo.gov/fdsys/pkg/CHRG-112hhrg73939/pdf/CHRG-112hhrg73939.pdf (same). Nonetheless, Congress continues to appropriate funds for the unaccompanied immigrant minor program that are disbursed by Defendants to USCCB and similar religiously affiliated entities.

## STANDARD OF REVIEW

When, as here, a defendant raises a facial challenge to subject matter jurisdiction, a court must accept all material allegations in the complaint as true and construe them in favor of the plaintiff. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010). The plaintiff does bear the burden of establishing the Court's jurisdiction. *See In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1208 (N.D. Cal. 2011) (citing *Lujan v. Defen. of Wildlife*, 504 U.S. 555, 561 (1992)). But at the motion to dismiss stage, Article III standing is adequately demonstrated through allegations of "specific facts plausibly explaining" why the standing requirements are met. *Barnum Timber Co. v. Envtl. Prot. Agency*, 633 F.3d 894, 899 (9th Cir. 2011).

## ARGUMENT

Plaintiff brings this lawsuit on behalf of its members, who pay federal taxes, to challenge Defendants' use of federal funds to further religion in violation of the Establishment Clause. Compl. ¶¶ 9, 15. To bring a lawsuit on behalf of its members, an organization must demonstrate that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1079 (9th Cir. 2015). Defendants do not contest that Plaintiff ACLU-NC can represent the interests of its members in this case, nor do Defendants argue that adjudication of this lawsuit requires the participation of Plaintiff's members. Rather, Defendants
PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 3:16-CV-3539-LB

argue primarily that Plaintiff's members do not have taxpayer standing to bring this lawsuit.[2] Defendants' argument must be rejected based on well-established Supreme Court precedent holding that federal taxpayers have standing to bring an Establishment Clause challenge calling into question how funds authorized by Congress are being disbursed pursuant to an underlying statutory mandate. *See Bowen v. Kendrick*, 487 U.S. 589 (1988); *Flast v. Cohen*, 392 U.S. 83 (1968).

Indeed, just as in *Flast* and *Bowen*, Plaintiff challenges an agency's use of funds to fulfill a statutory mandate after those funds were appropriated pursuant to Congress's taxing and spending power. In *Flast*, the Court considered whether the taxpayer plaintiffs had standing to bring an as-applied Establishment Clause challenge to the Elementary and Secondary Education Act of 1965 ("ESEA"). Under the ESEA, Congress appropriated $1 million to be distributed by a federal agency to state educational agencies. The text of the ESEA was silent with respect to religion. The state educational agencies, however, granted funds to local agencies that used the money to provide services and materials to religious schools. 392 U.S. at 90–91, 103 n.23. The Court held that the plaintiffs satisfied the two requirements for taxpayer standing. First, their status as taxpayers was logically related to their challenge to an exercise of Congress's taxing and spending power, and did not pertain simply to the government's incidental expenditures of taxpayer funds. *Id.* at 102. Second, they alleged that the money was spent in violation of the Establishment Clause, which "operates as a specific constitutional limitation upon the exercise by Congress of the taxing and spending power conferred by Art. I, § 8." *Id.* at 104. Setting out a

---

[2] To be clear, Plaintiff asserts only taxpayer standing on behalf of its members. *See* Compl. ¶¶ 9, 15. It does not allege Article III standing in its own right, nor does it allege another basis for its members' individual standing. *See* Mot. to Dismiss at 8–9.

guide for future cases, the Court stated: "[W]e hold that a taxpayer will have standing consistent with Article III to invoke federal judicial power when he alleges that congressional action under the taxing and spending clause is in derogation of those constitutional provisions which [like the Establishment Clause] operate to restrict the exercise of the taxing and spending power." *Id.* at 105–06.

Twenty years later, the Supreme Court in *Bowen* reaffirmed that federal taxpayers have standing to challenge the Executive Branch's disbursement of congressionally appropriated funds. *Bowen* concerned both a facial challenge and an as-applied challenge to the Adolescent Family Life Act ("AFLA"), a federal program to prevent teen pregnancy. 487 U.S. at 593, 597. The Court denied the plaintiffs' facial Establishment Clause challenge, holding that the statutory language was neutral with respect to religion. *Id.* at 610. But the Court went on to consider the plaintiffs' as-applied challenge, which alleged that HHS was disbursing AFLA funds to pervasively sectarian organizations, and that some organization were using the money for religious purposes. *See id* at 599. The Court rejected the government's contention that plaintiff's as-applied challenge was "really a challenge to executive action, not to an exercise of congressional authority under the Taxing and Spending Clause," holding that the plaintiffs' "claim that AFLA funds are being used improperly by individual grantees" was not "any less a challenge to congressional taxing and spending power simply because the funding authorized by Congress has flowed through and been administered by the Secretary [of HHS]." *Id.* at 619. The Court concluded that there was "a sufficient nexus between the taxpayer's standing as a taxpayer and the congressional exercise of taxing and spending power," because the plaintiffs' "claims call into question how the funds authorized by Congress are being disbursed pursuant to the AFLA's statutory mandate." *Id.* at 619–620.

Thus, *Bowen* stands for the proposition that taxpayers have standing to bring Establishment Clause challenges to the Executive Branch's disbursement of congressionally appropriated funds to satisfy an underlying statutory mandate. *See Am. Jewish Cong. v. Corp. for Nat'l and Cmty. Serv.*, 399 F.3d 351, 355 (D.C. Cir. 2005) ("[I]t is now clear that the [taxpayer standing] exception includes more than just taxpayer suits, based on the Establishment Clause, attacking taxing-and-spending statutes on their face. Also within the exception are taxpayer actions claiming a violation of that constitutional provision because of the manner in which the Executive Branch is administering the statute." (citing *Bowen*, 487 U.S. at 618–20)); *Lamont v. Woods*, 948 F.2d 825, 829–31 (2d Cir. 1991) (relying on *Bowen* to hold that federal taxpayers have standing to challenge Executive Branch expenditures to religious schools abroad, which were authorized, but not mandated, by Congress); *Pulido v. Bennett*, 860 F.2d 296, 298 (8th Cir. 1988) (holding that taxpayers have standing under *Bowen* to challenge discretionary agency spending pursuant to an underlying congressional mandate); *ACLU of Mass. v. Sebelius*, 697 F. Supp. 2d 200 (D. Mass. 2010) (holding that taxpayers had standing under *Bowen* to bring an Establishment Clause challenge HHS's expenditure of funds pursuant to an underlying statutory mandate), *vac'd as moot*, 705 F.3d 44 (1st Cir. 2013); *see also Members of the Jamestown Sch. Comm. v. Schmidt*, 699 F.2d 1, 3 n.1 (1st Cir. 1983) (holding taxpayers had standing to challenge state law that provided busing to nonpublic school students because it involved a "legislative enactment authorizing the expenditure of funds" in potential violation of the Establishment Clause).[3]

---

[3] These cases provide far more persuasive authority than the array of inapposite, and wrongly decided, circuit court decision cited by Defendants. *See* Mot. to Dismiss at 12–13. The plaintiffs in those cases did not challenge grants awarded pursuant to a specific statutory mandate requiring the government to provide services for a designated group of intended beneficiaries.

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 3:16-CV-3539-LB

9

This case falls squarely within the Supreme Court's holdings in *Flast* and *Bowen*. Like the AFLA in *Bowen*, the TVPRA and the HSA designate a group of intended beneficiaries—unaccompanied immigrants minors—and require that services be provided to the group. Congress expressly authorized Defendants to "award grants to, and enter into contracts with, voluntary agencies to carry out" its obligations under the TVPRA and the HSA. 8 U.S.C. § 1232(i). And Congress regularly appropriates funding for the purpose of fulfilling these statutory obligations. *See* Consolidated Appropriations Act, 2016, Pub. L. No. 114-113, 129 Stat. 2242, 2612–13 (Dec. 18, 2015).[4] Plaintiff's claims "call into question how the funds authorized by Congress are being disbursed pursuant to the . . . statutory mandate." *Bowen*, 487 U.S. at 620. That is sufficient to establish a link "between the taxpayer's standing as a taxpayer and the congressional exercise of taxing and spending power, notwithstanding the role [the agency] plays in administering the statute." *Id*.

In the face of this well-established precedent, Defendants make two arguments, neither of which has merit. First, Defendants contend that Plaintiff is only challenging an Executive Branch action, and therefore under *Hein v. Freedom from Religion Foundation, Inc.*, 551 U.S. 587 (2007), Plaintiff lacks standing. But *Hein* does not apply here. *Hein* held that taxpayers lack standing to challenge the Executive Branch's use of general appropriations to fund its day-to-day activities. In that case, federal taxpayers claimed that conferences held as part of the President's Faith-Based and Community Initiatives Program—and paid for through general Executive Branch appropriations—violated the Establishment Clause. *Id.* at 595. "No congressional legislation specifically authorized the creation of [the Program]," which was established pursuant

---

[4] *See also* Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. No. 113-235, 128 Stat. 2130, 2479 (Dec. 16, 2014); Consolidated Appropriations Act, 2014, Pub. L. No. 113-76, 128 Stat. 5, 376 (Jan. 17, 2014).

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 3:16-CV-3539-LB

10

to executive order. *Id.* In fact, in *Hein*, the defendants "were not 'charged with the administration of a congressional program'" at all, but rather "acted 'at the President's request and on the President's behalf.'" *Id.* at 596 (quoting district court). "Nor ha[d] Congress enacted any law specifically appropriating money for [the challenged] activities." *Id.* at 595. Instead, the activities were financed by "general appropriations to the Executive Branch to fund its day-to-day activities." *Id.* at 605 & n.4 (citing a $53,830,000 appropriation "to be available for allocation within the Executive Office of the President"). In a plurality opinion, the Court rejected a "broad reading of *Flast*," *id.* at 593, and held that the plaintiffs lacked taxpayer standing because the "discretionary Executive Branch expenditures" at issue "were not expressly authorized or mandated by any specific congressional enactment." *Id.* at 608.[5] Here, by contrast, the challenged expenditures were explicitly authorized by Congress to "carry out" the government's statutory obligations under the TVPRA and the HSA.[6]

Applying these Supreme Court precedents under circumstances remarkably similar to those at issue here, the court in *ACLU of Massachusetts v. Sebelius*, 697 F. Supp. 2d 200 (D. Mass. 2010), held that federal taxpayers have standing to challenge the Executive Branch's disbursement of congressional funds. That case concerned grants made by HHS under the

---

[5] Notably, *Hein* did not disturb the holdings in *Bowen* or *Flast*. The plurality explicitly noted that "[w]e do not extend *Flast*, but we also do not overrule it. We leave *Flast* as we found it." *Id.* at 615.

[6] The Supreme Court's decisions in *Valley Forge Christian College v. Americans United For Separation of Church and State, Inc.*, 454 U.S. 464 (1982), and *Arizona Christian School Tuition Organization v. Winn*, 563 U.S. 125 (2011), are also inapposite. In *Valley Forge*, the Court held that the plaintiff lacked taxpayer standing to challenge the Secretary of Health, Education and Welfare's decision to transfer a tract of land to a Bible college, because the statute authorizing the transfer was passed pursuant to Congress's authority under the Property Clause, not its taxing and spending power. 454 U.S. at 479–80. Defendants do not dispute that the action challenged in this case fall within Congress's taxing and spending power. And in *Winn*, the Court held only that taxpayer standing cannot be based on the grant of tax credits, because such grants do not implicate individual taxpayers in sectarian activities. 563 U.S. at 141–42.

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 3:16-CV-3539-LB

11

Trafficking Victims Protection Act ("TVPA"), 22 U.S.C. § 7105 *et seq.*, which directs HHS to "expand benefits and services to victims of severe forms of trafficking in persons in the United States." *Id.* § 7105(b)(1)(B)(i). Much like the facts here, Congress appropriated several million dollars each year to fund the Act's mandate, and HHS implemented the mandate by contracting with USCCB, which prohibited its subcontractors from using TVPA funds for "referral for abortion services or contraceptive materials." *ACLU of Mass.*, 697 F. Supp. 2d at 201–02. Evaluating the taxpayer standing issue, the district court concluded that *Bowen* controlled rather than *Hein* because the TVPA, like the statute at issue in *Bowen*, "designated a group of intended beneficiaries" and "required the funding of services for the group." *Id.* at 209. The court accordingly held that "the ACLU ha[d] met its burden under *Flast* of showing a link between the congressional power to tax and spend and a possible violation of the Establishment Clause in the grant of public funds to the USCCB." *Id.* at 210. As discussed above, the same is equally true here.

Second, Defendants argue that for taxpayer standing to attach under *Hein*, the challenged appropriation must explicitly authorize the use of funds in violation of the Establishment Clause. *See* Mot. to Dismiss at 14 (citing *Hein*, 551 U.S. at 593). This argument is squarely foreclosed by the Court's holding in *Bowen*. In *Bowen*, the Court rejected a facial challenge to the AFLA, holding that Congress's statute did not mandate any activities in violation of the Establishment Clause. *See, e.g.,* 487 U.S. at 610. As is the case here, although Congress "was aware that religious organizations had been grantees" under AFLA's predecessor statute, *id*. at 604 n.9, Congress did not *require* HHS to provide any grants to religious organizations at all, *id*. at 596, 604. The Court nevertheless held that the plaintiffs had standing to challenge how the program worked in operation—specifically, how the agency disbursed those funds and how the religious groups used those funds. As the Court held, "we have not questioned the standing of taxpayer

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS - 3:16-CV-3539-LB

12

plaintiffs to raise Establishment Clause challenges, even when their claims raised questions about the administratively made grants." *Id.* at 619.[7]

Similarly, and contrary to Defendants' contention, the ESEA challenged in *Flast* did not mention sectarian schools. *Flast*, 392 U.S. at 86–87. Indeed, although Congress may have known that money was flowing to religious schools, the statute was facially neutral with respect to religion. Nevertheless, the Court allowed taxpayer standing to bring an as-applied Establishment Clause challenge to the use the ESEA funds. *Id.* at 88; *see also Ams. United for Separation of Church & State v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406, 420 (8th Cir. 2007) (holding that although the legislature did not expressly mandate a violation of the Establishment Clause, the plaintiffs had standing to bring an as-applied Establishment Clause claim to challenge a government grantee's use of government funds); *ACLU of Minn. v. Tarek Ibn Ziyad Acad.*, No. 09-138 (DWF/JJG), 2009 WL 2215072, at *6 (D. Minn. July 21, 2009) ("To the extent that Defendants suggest that a statute must mention religion on its face, the Court disagrees. . . . *Hein* did not overrule *Flast* or [*Bowen*]."). As the court in *ACLU of Massachusetts* cautioned, "a requirement of religious contemplation in the challenged statute would eviscerate as-applied challenges under the Establishment Clause, which have expressly been permitted since

---

[7] Defendants may instead be arguing that *Hein* altered *Flast* and *Bowen* to require a showing that Congress had knowledge that the funds authorized by the challenged statute would flow to religious organizations. The plain language of *Hein* does not support that argument. But even if it did, Plaintiff would meet that test. Indeed, Congress was aware that the appropriations at issue here would be disbursed to religious groups—it received testimony from USCCB officials regarding appropriations for the unaccompanied immigrant minor program, including requests that the government accommodate grantees' religious objections, and its own report mentions HHS's award of unaccompanied immigrant minor program grants to USCCB. Compl. ¶¶ 54, 55. Moreover, Congress knew that USCCB historically prohibits its subgrantees from referring for abortion or contraception in the context of other federal grants to care for vulnerable populations. *See supra* at 4–5.

[*Bowen*]." 697 F. Supp. 2d at 209 (citation and internal quotation marks omitted). Accordingly, this Court must reject Defendants' argument that taxpayers only have standing to challenge facially unconstitutional statutes.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss should be denied.

October 18, 2016                      Respectfully submitted,

/s/ Brian Hauss
BRIAN HAUSS (SBN 284759)
BRIGITTE AMIRI (*pro hac vice*)
AMERIAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Phone: 212-549-2633
Fax: 212-549-2650
bhauss@aclu.org
bamiri@aclu.org

ELIZABETH O. GILL (SBN 218311)
JENNIFER L. CHOU (SBN 304838)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Phone: 415-621-2493
Fax: 415-255-8437
egill@aclunc.org
jchou@aclunc.org

MELISSA GOODMAN (SBN 289464)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017
Phone: 213-977-9500
Fax: 213-977-5297
mgoodman@aclu-sc.org

DANIEL MACH (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street NW
Washington, DC 20005
Phone: 202-675-2330
Fax: 202-546-0738
dmach@aclu.org

*Attorneys for Plaintiff*