Robert E. Dunn, SBN 275600
Daniel Nowicki, SBN 304716
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304
Telephone: 650.849.5300
Facsimile: 650.849.5333
Email: rdunn@gibsondunn.com
        dnowicki@gibsondunn.com

Eugene Scalia, SBN 151540
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 11101
Telephone: 202.955.8500
Facsimile: 202.467.0539
Email: escalia@gibsondunn.com

Attorneys for Intervenor
UNITED STATES CONFERENCE OF
CATHOLIC BISHOPS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA,<br><br>       Plaintiff,<br><br>     v.<br><br>SYLVIA MATHEWS BURWELL, Secretary of Health and Human Services; MARK GREENBERG, Acting Assistant Secretary for Administration for Children and Families; ROBERT CAREY, Director of Office of Refugee Resettlement, in their official capacities,<br><br>       Defendants. | CASE NO. 3:16-cv-3539-LB<br><br>**UNITED STATES CONFERENCE OF CATHOLIC BISHOPS' MOTION TO INTERVENE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 24**<br><br>**Hearing:**<br>Date:     January 19, 2017<br>Time:    9:00 a.m.<br>Place:   Courtroom C<br>Judge:  Hon. Laurel Beeler |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 18, 2017, or as soon thereafter as this matter may be heard, in the Courtroom of the Honorable Laurel Beeler, located at the United States Courthouse, 450 Golden Gate Avenue, Courtroom C, 15th Floor, San Francisco, California, the United States Conference of Catholic Bishops, Inc. ("USCCB") will, and hereby does, move for an Order pursuant to Federal Rule of Civil Procedure 24 granting USCCB permission to intervene in this case as a defendant. This motion is based upon this Notice of Motion, the following Memorandum of Points and Authorities, the argument of counsel, and any other oral and documentary evidence that may be presented to the Court.

Dated: December 15, 2016

GIBSON, DUNN & CRUTCHER LLP

By:  /s/ Robert E. Dunn
          Robert E. Dunn

Robert E. Dunn
Daniel Nowicki
1881 Page Mill Road
Palo Alto, CA 94304
Tel: (650) 849-5300
Fax: (650) 849-5333
rdunn@gibsondunn.com
dnowicki@gibsondunn.com

Eugene Scalia
1050 Connecticut Avenue, N.W.
Washington, DC  11101
Tel:  202.955.8500
Fax: 202.467.0539
escalia@gibsondunn.com

Attorneys for Intervenor United States Conference of Catholic Bishops

Gibson, Dunn & Crutcher LLP

**TABLE OF CONTENTS**

I. Statement of Issues .................................................................................................................. 1

II. Background and Relevant Facts ............................................................................................ 1

III. Argument ............................................................................................................................. 3

    A.     USCCB is entitled to intervene under Federal Rule of Civil Procedure 24(a) ............ 3

          1.     USCCB's motion to intervene is timely because this case has not yet proceeded past the pleading stage .................................................... 4

          2.     USCCB has a significant protectable interest because it is a party to the very cooperative agreements Plaintiff alleges are unconstitutional ................. 5

          3.     The disposition of this action will impair USCCB's ability to protect its interest because Defendants will not provide funding to USCCB if this Court enjoins them from doing so.................................................... 6

          4.     USCCB's interests will not be adequately represented because none of the parties shares USCCB's moral and religious objections to abortion and contraception, its interest in preserving the conscience provision, or its financial interest in the cooperative agreements themselves........................ 7

    B.     In the alternative, the Court should grant USCCB permissive intervention under Federal Rule of Civil Procedure 24(b) ............................................ 12

IV. Conclusion ........................................................................................................................ 15

Gibson, Dunn &
Crutcher LLP

**Cases**

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
   966 F.2d 470 (9th Cir. 1992)................................................................12

*California Hosp. Ass'n v. Maxwell-Jolly*,
   2009 WL 4120725 (C.D. Cal. Nov. 23, 2009) ................................................12

*Californians for Safe Dump Truck Transp. v. Mendonca*,
   152 F.3d 1184 (9th Cir. 1998)................................................................12

*Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*,
   483 U.S. 327 (1987) ...........................................................................14

*Cummings v. United States*,
   704 F.2d 437 (9th Cir. 1983)..................................................................5

*Forest Conservation Council v. U.S. Forest Serv.*,
   66 F.3d 1489 (9th Cir. 1995).................................................................12

*Freedom from Religion Found., Inc. v. Geithner*,
   644 F.3d 836 (9th Cir. 2011)...............................................................3, 12

*Hobbie v. Unemployment Appeals Comm'n of Fla.*,
   480 U.S. 136 (1987) ...........................................................................14

*Kootenai Tribe of Idaho v. Veneman*,
   313 F.3d 1094 (9th Cir. 2002)................................................................14

*California ex rel. Lockyer v. United States*,
   450 F.3d 436 (9th Cir. 2006)........................................................5, 6, 7, 11

*Nw. Forest Res. Council v. Glickman*,
   82 F.3d 825 (9th Cir. 1996)...................................................................4

*Sagebrush Rebellion, Inc. v. Watt*,
   713 F.2d 525 (9th Cir. 1983).........................................................7, 8, 9, 10

*Sierra Club v. U.S. E.P.A.*,
   995 F.2d 1478 (9th Cir. 1993).................................................................4

*Smith v. Los Angeles Unified Sch. Dist.*,
   830 F.3d 843 (9th Cir. 2016)........................................................3, 4, 7, 12

*Southwest Center for Biological Diversity v. Berg*,
   268 F.3d 810, 822 (9th Cir. 2001)..................................................7, 8, 11, 12

*Trbovich v. United Mine Workers of Am.*,
   404 U.S. 528 (1972) ............................................................................7

Gibson, Dunn &
Crutcher LLP

*United States v. Alisal Water Corp.*,
370 F.3d 915 (9th Cir. 2004).......................................................................................4

*United States v. City of Los Angeles*,
288 F.3d 391 (9th Cir. 2002).................................................................................6, 11

*United States v. State of Oregon*,
745 F.2d 550 (9th Cir. 1984).......................................................................................4

*Wilderness Soc. v. U.S. Forest Serv.*,
630 F.3d 1173 (9th Cir. 2011) (en banc)....................................................................3

*Yniguez v. State of Ariz.*,
939 F.2d 727 (9th Cir. 1991).....................................................................................11

**Statutes**

6 U.S.C. § 279 ...................................................................................................................1

8 U.S.C. § 1232 .................................................................................................................1

42 U.S.C. § 2000bb-3........................................................................................................9

42 U.S.C. § 2000bb-4(a) .................................................................................................13

Affordable Care Act........................................................................................................10

Homeland Security Act ................................................................................................1, 3

Religious Freedom Restoration Act ...........................................................7, 9, 10, 11, 13

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 .......1, 3

**Other Authorities**

Douglas Laycock, *Regulatory Exemptions of Religious Behavior and the Original
Understanding of the Establishment Clause*, 81 Notre Dame L. Rev. 1793, 1837
(2006)........................................................................................................................14

**Rules**

Federal Rule of Civil Procdedure Rule 24 ............................................................. *passim*

USCCB'S MOTION TO INTERVENE – CASE NO. 3:16-CV-3539-LB

Gibson, Dunn &
Crutcher LLP

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  Statement of Issues

Federal Rule of Civil Procedure 24(a) authorizes a timely intervenor to participate in a pending case as of right when the intervenor has a significant interest that may be impaired by disposition of the action, and no other party will adequately represent that interest.  Rule 24(b) authorizes permissive intervention when an intervenor seeking to become a defendant in a federal-question case has a defense that shares questions of fact or law with the main action.  Here, Plaintiff seeks an injunction cutting off funding, by way of cooperative agreements, that the United States Conference of Catholic Bishops, Inc. ("USCCB") receives from the government for the provision of residential placements and related services to unaccompanied children, because USCCB includes a conscience provision in its memoranda of understanding ("MOUs") with subrecipients prohibiting them from using the funds to provide access to abortion and contraception.  None of the parties shares USCCB's moral and religious objections to abortion and contraception services, or shares USCCB's interest in preserving the conscience provision.  Nor does any party stand to lose millions in government funding if this court issues the requested injunction.  The issue presented in this motion, filed before the parties' case management conference, is whether USCCB should be granted intervention as-of-right under FRCP 24(a), or, alternatively, FRCP 24(b).

Plaintiff opposes the motion.  Defendants have declined to take any position on the motion.[1]

## II.  Background and Relevant Facts

Pursuant to the Homeland Security Act ("HSA") and the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), the Department of Health and Human Services ("HHS"), through the Office of Refugee Resettlement ("ORR"), provides residential placement and related services to unaccompanied children.[2]  *See* 6 U.S.C. § 279; 8 U.S.C. § 1232.

---

[1]  Undersigned counsel for USCCB spoke with Defendants' counsel of record several times inquiring as to Defendants' position.  On December 13, 2016, Defendants' counsel indicated via email that Defendants neither consented to nor opposed USCCB's motion at this time.

[2]  The Homeland Security Act defines an "unaccompanied alien child" as a person under the age of 18 with no lawful immigration status and no parent or legal guardian in the United States available to provide care and physical custody.  6 U.S.C. § 279(g)(2).  This motion refers to these individuals as "unaccompanied children."

Instead of providing these services directly, ORR enters into cooperative agreements that provide funding to private entities, such as USCCB, that either provide these services themselves or enter into subrecipient agreements with other non-governmental organizations.

USCCB is an assembly of the Catholic hierarchy of the United States and the U.S. Virgin Islands. Its purposes include performing charitable and social welfare work and providing assistance to immigrants. Because of USCCB's unique ability to coordinate with local organizations that have decades of experience providing child welfare services to refugee and immigrant children and their families, ORR provides substantial funding to USCCB. USCCB enters into memoranda of understanding with subrecipients—local social service organizations, such as Catholic Charities of Santa Clara—that operate small scale, community-based residential placements for unaccompanied children to include shelter, transitional foster care and long-term foster care, and offer other social services. Through its subrecipients, USCCB has provided tens of millions of dollars' worth of support and services to tens of thousands of unaccompanied children and their families in the last 30 years. In 2016, USCCB's offices of Migration and Refugee Services provided family reunification and community-based residential services to 2,610 unaccompanied children.

USCCB—as an assembly of Catholic bishops—adheres to Catholic teaching on issues such as contraception and abortion, and its memoranda of understanding thus provide that subrecipients "must ensure that services provided to those served under this Agreement are not contrary to the authentic teaching of the Catholic Church, its moral convictions, and religious beliefs. Accordingly, [USCCB] expects that the Sub-recipient will provide services under this Agreement within certain parameters including, among other things, that the Sub-recipient will not provide, refer, encourage, or in any way facilitate access to contraceptives or abortion services." ECF No. 1 ¶ 35.

Plaintiff alleges that Defendants—the Secretary of HHS, the Acting Assistant Secretary for Administration for Children and Families, and the Director of ORR, in their official capacities—have violated the Establishment Clause of the First Amendment by permitting USCCB and its subrecipients to impose religiously-based restrictions on the use of taxpayer funds. ECF No. 1 ¶ 58. Plaintiff further alleges that, because USCCB and its subrecipients refuse on religious grounds to facilitate access to contraceptives or abortion services, (1) Defendants' actions have both the

"predominant purpose" and "predominant effect" of "advancing a particular set of religious beliefs," (2) Defendants have "endorse[d] a particular set of religious beliefs," and (3) Defendants' actions "coerce Plaintiff and its members into supporting and subsidizing a particular set of religious beliefs." *Id.* ¶¶ 59-62. Plaintiff seeks, *inter alia*, an injunction ordering "Defendants to ensure that HSA and TVPRA grants are implemented without the imposition of religiously based restrictions." *Id.* at 15 (relief requested).

Plaintiff's requested injunction would direct Defendants to require USCCB to allocate funds for the provision of abortion and contraceptive services in violation of USCCB's sincerely held moral and religious beliefs. Because USCCB cannot comply with such a requirement, Plaintiff's requested relief would effectively prevent USCCB from receiving government funding to provide services to unaccompanied immigrant minors. Indeed, at oral argument on Defendants' motion to dismiss, Plaintiff admitted that its requested injunctive relief would effectively exclude the Catholic Church from participating in ORR's mission of providing relief services to victims of human trafficking. Nov. 21, 2016 Hr'g Tr. at 10:00-10:10.

## III. Argument

### A. USCCB is entitled to intervene under Federal Rule of Civil Procedure 24(a)

Federal Rule of Civil Procedure 24(a) provides that the court must grant intervention when the intervenor establishes four elements: (1) that the motion to intervene "is 'timely'; (2) that the would-be intervenor has 'a significantly protectable interest relating to the subject of the action'; (3) that the intervenor is 'so situated that the disposition of the action may as a practical matter impair or impede the intervenor's ability to protect that interest'; and (4) that such interest is 'inadequately represented by the parties to the action.'" *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 853 (9th Cir. 2016) (quoting *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011)). "'The requirements for intervention are to be broadly interpreted in favor of intervention.'" *Id.* (citation omitted); *see also Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc) ("[A] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." (internal quotation marks omitted)). USCCB easily satisfies all four elements of that test.

Gibson, Dunn & Crutcher LLP

**1. USCCB's motion to intervene is timely because this case has not yet proceeded past the pleading stage**

"Timeliness is determined by the totality of the circumstances facing would-be intervenors, with a focus on three primary factors: '(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Los Angeles Unified*, 830 F.3d at 854 (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004)).[3]  All three factors cut in favor of granting intervention.

USCCB filed this motion to intervene promptly after the Court denied Defendants' motion to dismiss for lack of standing.  Defendants have not yet filed their answer, and the parties have not engaged in any discovery or even held their Rule 26(f) conference.  Accordingly, USCCB's motion is timely.  *C.f. Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996), *as amended on denial of reh'g* (May 30, 1996) (intervention timely when requested before Defendants answered and when no substantive proceedings had taken place); *Sierra Club v. U.S. E.P.A.*, 995 F.2d 1478, 1481 (9th Cir. 1993) (timeliness not at issue when motion to intervene filed "before [the defendant] had even filed its answer").

With respect to the second factor, "the only 'prejudice' that is relevant . . . is that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, that his interests were not being adequately represented."  *Los Angeles Unified*, 830 F.3d at 857 (quoting *United States v. State of Oregon*, 745 F.2d 550, 552-53 (9th Cir. 1984)).  USCCB filed its motion to intervene as soon as it had reason to know that its interest might not be adequately represented.  *See infra* II.D.  Because USCCB did not "fail to intervene" once it knew its interests were not adequately represented, there is no prejudice.  Furthermore, because USCCB moved to intervene at such an early stage of the litigation, granting intervention will not extend discovery deadlines, require duplicative discovery, or otherwise delay the proceedings.  There is thus no

---

[3]  Because of the risk of serious harm to a putative intervenor, the timeliness test is applied more leniently when intervention is sought under Rule 24(a) rather than Rule 24(b).  *See State of Oregon*, 745 F.2d at 552.  While that lenience is certainly warranted here—as USCCB will suffer significant harm if Plaintiff succeeds in effectively barring it from participating in ORR's program, *see infra* II.A.2, II.A.3—USCCB's motion is timely even under the less "lenient" timeliness test.

Gibson, Dunn & Crutcher LLP

prejudice.  *See Cummings v. United States*, 704 F.2d 437, 441 (9th Cir. 1983) (no showing of prejudice when no indication "that discovery would have to be extended" or proceedings otherwise unduly delayed by intervention).  Indeed, far from prejudicing any party, USCCB's involvement in the case will streamline the discovery process to the extent Plaintiff seeks discovery from USCCB.

As to the third factor, USCCB appropriately waited to intervene during the pendency of Defendants' motion to dismiss on standing grounds.  USCCB declined to intervene immediately after the Complaint was filed because Defendants informed USCCB that they would move to dismiss for lack of standing.  USCCB believed that Defendants' motion would present the same standing arguments that USCCB would make if it were a party, and therefore decided not to burden the Court (or the parties) with a duplicative motion.  USCCB thus did not unreasonably delay by waiting to intervene until after the Court ruled on Defendants' motion to dismiss.

### 2. USCCB has a significant protectable interest because it is a party to the very cooperative agreements Plaintiff alleges are unconstitutional

"An applicant has a 'significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims."  *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) (internal quotation marks and citation omitted).  In *Lockyer*, the Ninth Circuit concluded that the proposed intervenors satisfied this test because they would be "more likely to be forced to choose between adhering to their beliefs and losing their professional licenses" if the challenged statute was "declared unconstitutional . . . as a consequence of litigation."  *Id.*  The court held that the intervenors' interest in defending the challenged statute was sufficient because, *inter alia*, the purpose of the statute was "precisely to keep doctors who have moral qualms about performing abortions from being put to the hard choice of acting in conformity with their beliefs, or risking imprisonment or loss of professional livelihood."  *Id.*  In short, the intervenors had a significant protectable interest because the challenged statute "effectively shield[ed] the[m] and their members from the difficult moral choice to which" they would otherwise be put.  *Id.* at 441-42.  The same is true here.

ORR permitted USCCB to include a conscience provision in its memoranda of understanding with subrecipients so that USCCB would not be "forced to choose" between adhering to its religious

Gibson, Dunn &
Crutcher LLP

beliefs and furthering the mission—which it shares with the government—of providing relief services to unaccompanied minors. *Id.* at 441. Plaintiff's requested injunction, by prohibiting Defendants from providing grants to USCCB unless USCCB eliminates the conscience provision from its contracts, would squarely confront USCCB with that "difficult moral choice." *Id.* at 441-42.

Moreover, USCCB's interest in defending the constitutionality of Defendants' actions is "neither 'undifferentiated' nor 'generalized.'" *Id.* at 441 (citation omitted). On the contrary, because Plaintiff directly challenges the constitutionality of cooperative agreements awarded to USCCB, USCCB's interest "is sufficiently 'direct, non-contingent, [and] substantial.'" *Id.* (citation omitted). USCCB thus has a significant protectable interest in this action.

**3.  The disposition of this action will impair USCCB's ability to protect its interest because Defendants will not provide funding to USCCB if this Court enjoins them from doing so**

The Ninth Circuit "follow[s] the guidance of Rule 24 advisory committee notes," which "state that '[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'" *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001) (quoting Fed. R. Civ. P. 24 advisory committees notes). There can be no dispute that disposition of this action would substantially affect USCCB in a "practical sense," because Plaintiff's requested injunction would effectively prohibit Defendants from providing grants to USCCB.

Moreover, USCCB has no "'other means'" to protect its interests. *Lockyer*, 450 F.3d at 442. (citation omitted). "If, as a result of this litigation," Defendants' conduct is held unconstitutional, USCCB "will have no alternative forum in which they might contest that interpretation" of the Establishment Clause. *Id.*; *cf. United States v. City of Los Angeles*, 288 F.3d 391, 402 (9th Cir. 2002) (denying community members intervention because the lawsuit did not "prevent any individual from initiating suit against LAPD officers who engage in unconstitutional practices or against the City defendants for engaging in unconstitutional patterns or practices").

In short, "this case will determine conclusively" whether the Constitution prohibits Defendants from providing cooperative agreements to USCCB, and, if Plaintiff prevails, the disposition of this action will impair USCCB's ability to protect its interest in providing services to

Gibson, Dunn & Crutcher LLP

victims of human trafficking in partnership with ORR without compromising its sincerely held moral and religious beliefs. *Lockyer*, 450 F.3d at 442.

**4.      USCCB's interests will not be adequately represented because none of the parties shares USCCB's moral and religious objections to abortion and contraception, its interest in preserving the conscience provision, or its financial interest in the cooperative agreements themselves**

"[T]he fourth element of Rule 24(a) intervention requires only a 'minimal' showing that existing parties' representation 'may be' inadequate." *Los Angeles Unified*, 830 F.3d at 864 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). "In assessing the adequacy of the [Defendants] representation, [the Ninth Circuit] consider[s] several factors, including whether the [Defendants] will undoubtedly make all of the intervenor's arguments, whether the [Defendants are] capable of and willing to make such arguments, and whether the intervenor offers a necessary element to the proceedings that would be neglected." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983). "[T]he focus" of the adequacy inquiry "should be on the 'subject of the action,' not just the particular issues before the court at the time of the motion." *Berg*, 268 F.3d at 823.

Here, although Defendants have indicated a willingness to defend the constitutionality of ORR's cooperative agreements with USCCB, Defendants (1) do not share USCCB's financial interests in the funding at issue, (2) reject USCCB's views on the policies implicated by abortion services, and (3) would not present USCCB's legal argument that, under the Religious Freedom Restoration Act ("RFRA"), Defendants cannot use USCCB's request for a religious accommodation as grounds to deny funding to USCCB. Each such divergence between USCCB and Defendants demonstrates that Defendants "may be" inadequate representatives of USCCB's interests. *Los Angeles Unified*, 830 F.3d at 864.

As an initial matter, Defendants and USCCB share a differing interest in the "subject of the action"—the cooperative agreements challenged by Plaintiff. Although Defendants have indicated that they will defend the constitutionality of the cooperative agreements, their specific interest is in providing relief services to unaccompanied children—they have no interest in ensuring that USCCB in particular will continue to receive the cooperative agreements, or in preserving the conscience

Gibson, Dunn & Crutcher LLP

provision itself. USCCB, by contrast, has an obvious and direct interest in receipt of the actual funding at issue. *See supra* II.A.2. In fact, USCCB has employed staff whose compensation is funded, in whole or in part, by the funding received from ORR. USCCB thus has a critical financial interest in this case that Defendants do not share, and such an obvious "difference in interests" in the subject of the action is sufficient, on its own, to render Defendants' representation of USCCB inadequate. *See Berg*, 268 F.3d at 823-24 (private entities had right to intervene in suit defending government development program because their private economic interests were not shared by the government defendants). At minimum, it is undeniable that "[t]he interests of government and [USCCB] *may* diverge." *Berg*, 268 F.3d at 823 (italics added).

Further, USCCB, as a faith-based provider of relief and charitable services, provides a "necessary element" to these proceedings—an important "perspective which differs materially from that of the present parties to this litigation." *Watt*, 713 F.2d at 528. For example, Defendants do not share USCCB's religious and moral obligation to avoid complicity in the provision of abortion and contraception services. Indeed, although Defendants have accommodated USCCB's religious convictions, Defendants' *preference* is that awardees provide abortion and contraceptive services, as demonstrated by the original language of ORR's cooperative agreements: "The grantees will refer female [unaccompanied immigrant minors] to medical providers who offer pregnant [unaccompanied immigrant minors] the opportunity to be provided information and counseling regarding prenatal care and delivery; infant care, foster care, or adoption; and pregnancy termination." ECF. No. 1 ¶ 32. Defendants removed this language only *after USCCB objected* to the contraception and abortion requirements. *Id.* ¶ 33. Accordingly, if this Court issues Plaintiff's requested injunction, Defendants are likely to simply reinstate the original language of ORR's cooperative agreement, an outcome that Defendants have indicated they prefer.[4] Given that Defendants agree with Plaintiff—not USCCB—

---

[4] As the government stated in its brief to the First Circuit in a similar case, it "granted USCCB the contract *despite*, rather than because of, USCCB's disclosure that it would only enter into a contract that did not require it to allow its subcontractors to use contract funds for the provision of or referral for abortion or contraceptive services." Appellants' Brief for Defendants Kathleen Sebelius, Eskinder Negash, and George Sheldon at 47, *ACLU of Mass. v. Sebelius*, No. 12-1658 (1st Cir. Aug. 24, 2012) (emphasis added) [hereinafter Gov.'s *ACLU of Mass.* Brief]; *see also id.* at 59 ("HHS awarded the contract to USCCB *despite* that limitation on the scope of the

Gibson, Dunn & Crutcher LLP

about the value of providing abortion and contraceptives to unaccompanied minors, USCCB clearly provides a "necessary element to the proceedings that would be neglected" absent intervention. *Watt*, 713 F.2d at 528.

Finally, Defendants will *not* "undoubtedly make all of [USCCB's] arguments." *Id*. Critically, Defendants are likely to concede that ORR is free to deny funding to USCCB because of its religious objections to providing abortion and contraceptive services. USCCB, by contrast, contends that denying cooperative agreements on account of USCCB's religious beliefs would violate RFRA, which "applies to all Federal law, and the implementation of that law, whether statutory or otherwise[.]" 42 U.S.C. § 2000bb-3. RFRA forbids the government from substantially burdening the exercise of religion—"even if the burden results from a rule of general applicability"—unless the "application of the burden" "is in furtherance of a compelling government interest and is the least restrictive means of furthering that compelling government interest." *Id.* § 2000bb-1(a)-(b). RFRA clearly contemplates that the "denial of government funding" can constitute a violation. *Id.* § 2000bb-4 ("Granting government funding . . . to the extent permissible under the Establishment Clause, shall not constitute a violation of this chapter. . . . [T]he term 'granting,' used with respect to government funding, . . . does not include the denial of government funding[.]").

USCCB contends that it would be "substantially burdened" by a requirement that it provide unaccompanied children with access to abortion and contraceptives (or even facilitate such services) in order to receive funding. USCCB further contends that the government has no compelling interest that could justify requiring it to provide access to these morally and religiously objectionable procedures and products as a condition for receiving funding. Nor does USCCB agree that such a requirement would be the least restrictive means of furthering any compelling interest the government may have.

---

contract…"); *id*. at 61 ("HHS considered USCCB's religiously-based contract limitations as a *shortcoming* in the proposal…"). The government also stated that "HHS has now determined, on non-religious grounds, that the ability to offer trafficking victims referrals to medical providers who can provide or refer for family planning services for the full range of legally permissible gynecological and obstetric care is an important feature of an organization that is selected to receive a TVPA grant." *Id.* at 45.

USCCB'S MOTION TO INTERVENE – CASE NO. 3:16-CV-3539-LB

Defendants, however, have already taken a directly contrary position in similar litigation. In *ACLU of Mass. v. Sebelius*, Defendants argued that they viewed USCCB's religious and moral objections to abortion and contraception as "shortcomings" that were only overcome because USCCB's bid was otherwise superior to all other bidders. *See* Gov.'s *ACLU of Mass.* Brief, at 61 (describing previous USCCB contract with ORR). It is thus clear that Defendants do not believe they are obligated under RFRA to accommodate USCCB's religious beliefs when making funding decisions.[5]

This disagreement over Defendants' obligation to accommodate USCCB's beliefs is not merely academic—it would loom large in any potential settlement. Because Defendants' ultimate objective is to protect their ability to fund non-governmental entities of their choice—and to do so without any accommodation obligations, *see supra* Note 2—Defendants might be inclined to settle with Plaintiff by agreeing to modify their cooperative agreements to reinsert Defendants' previous language requiring that awardees, such as USCCB, refer unaccompanied minors to abortion providers. If allowed to intervene, USCCB would oppose such a settlement on the grounds that this

---

[5] Defendants' hostility to this interpretation of RFRA was made evident in the recent litigation between several Catholic organizations and Defendant Burwell over whether RFRA requires an exemption for religious employers from the so-called contraception mandate promulgated under the Affordable Care Act. *See Zubik v. Burwell*, No. 14-1418 (S.Ct.). In *Zubik*, Secretary Burwell contended that HHS had sufficiently accommodated religious employers by allowing them to submit a self-certification form to the Secretary informing the agency of their religious objections to providing contraceptive coverage. Religious employers (many of them Catholic) contended that the self-certification form violated RFRA because HHS responded to those forms by hijacking their insurance plans to provide coverage for religiously objectionable contraceptive services. *Compare* Supplemental Brief for Petitioners at 1, *Zubik* ("There are many ways in which the employees of a petitioner with an insured plan could receive cost-free contraceptive coverage through the same insurance company that would not require further involvement by the petitioner . . . . And each one of those ways is a less restrictive alternative that dooms the government's ongoing effort to use the threat of massive penalties to compel petitioners to forsake their sincerely held religious beliefs."), *with* Supplemental Brief for the Respondents at 3, *Zubik* (arguing that the Court "should not require any change to the self-certification process" because the existing regulation required only a "minimally intrusive process"). The disagreement in *Zubik* demonstrates that Defendant Burwell, and presumably the other Defendants, take a very different view of RFRA than does USCCB. As the Ninth Circuit has explained, the litigation history and positions taken by an agency head, like Defendant Burwell, are relevant in determining whether the agency will adequately represent a private party in litigation challenging the agency's actions. *See Watt*, 713 F.2d at 528 (when Interior Secretary had previously represented party challenging land conservation order, Secretary did not adequately represent private individuals seeking to defend the order). The fact that Defendant Burwell has already adopted a view of RFRA that conflicts with USCCB's interpretation is enough to meet the "minimal" showing of inadequacy required for intervention.

Gibson, Dunn &
Crutcher LLP

requirement would impose a substantial burden on USCCB's religious exercise and would not be the least restrictive means of furthering any compelling government interest, in violation of RFRA. Thus, USCCB should be allowed to participate to ensure that the parties do not reach a settlement that impairs USCCB's interests in violation of federal law. *See City of Los Angeles*, 288 F.3d at 402 (intervention warranted to allow would-be defendants to participate in settlement negotiations between government and plaintiffs, when intervenor stood on the opposite side of a contracting relationship with the government and had adopted "marked[ly] divergen[t]" positions from the government on the issues in the case).

Furthermore, to the extent that this case implicates Defendants' accommodation obligations under RFRA, Defendants may take a cramped view of RFRA in order to prevent it from being held unconstitutional as applied. After all, if this Court holds that RFRA requires ORR to make a religious accommodation (as USCCB contends), but that giving such an accommodation nevertheless violates the Establishment Clause (as Plaintiff contends), the Court would effectively be declaring RFRA unconstitutional as applied. The government's "willingness to suggest a limiting construction in defense of a statute is an important consideration in determining whether the government will adequately represent its constituents' interests." *California ex rel. Lockyer*, 450 F.3d at 444; *see also Yniguez v. State of Ariz.*, 939 F.2d 727, 738 (9th Cir. 1991) (state Attorney General's narrow construction of state law rendered inadequate its representation of intervenors seeking to defend a broader interpretation of that law). And, as noted, this "is not just a theoretical possibility"—Defendants "ha[ve] already" taken the position, in similar litigation, that they are under no obligation to grant USCCB a religious accommodation. *California ex rel. Lockyer*, 450 F.3d at 444; *see* Gov.'s *ACLU of Mass. Brief*, at 45. And although Defendants have not yet addressed their accommodation obligations (under RFRA or otherwise) in *this* litigation, USCCB is not obligated to wait-and-see whether Defendants will advocate for an interpretation of RFRA that USCCB's opposes. *See Berg*, 268 F.3d at 824 ("[I]t is not Applicants' burden at this stage in the litigation to anticipate specific differences in trial strategy.").

The plainly divergent interests between USCCB—a private recipient of government funds seeking to defend a religious accommodation—and Defendants—federal administrators managing a

Gibson, Dunn & Crutcher LLP

government program, who prefer as few restrictions, including religious accommodations, as possible—clearly satisfies the "minimal" showing that Defendants may not adequately represent USCCB's interests. *Los Angeles Unified*, 830 F.3d at 864.[6]

\* \* \*

USCCB has a significant protectable interest at stake in this case that could be impaired by the outcome. It has no other means to protect this interest, and no current party adequately represents it. Accordingly, because USCCB has timely moved to intervene, this court should grant USCCB's motion to intervene under Rule 24(a).

**B.**    **In the alternative, the Court should grant USCCB permissive intervention under Federal Rule of Civil Procedure 24(b)**

In the alternative, this Court should grant permissive intervention under Rule 24(b) because USCCB has a "defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). The Ninth Circuit has explained that permissive intervention generally "'requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action.'" *Freedom From Religion Foundation*, 644 F.3d at 843 (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992)). However, "the independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims." *Id.* at 844. Here, USCCB does not seek (at this time) to raise any new claims against either party and thus is not required to establish an independent ground of jurisdiction. And, as explained

---

[6] Numerous other courts have also found that private parties with interests in challenged government programs have a right to intervene alongside government defendants that do not fully share the private party's own interests. *See, e.g., Berg*, 268 F.3d at 823 ("the City's range of considerations in development is broader than the profit-motives animating [intervening] developers"); *Californians for Safe Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1190 (9th Cir. 1998) (private union-members' interests were not represented by state agencies defending state wage law); *California Hosp. Ass'n v. Maxwell-Jolly*, No. CV 09-3694 CAS MANX, 2009 WL 4120725, at *3 (C.D. Cal. Nov. 23, 2009) (private health care organizations were not adequately represented by California's Department of Health Care Services in suit defending legality of health care service reimbursement program); *cf. Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995) *abrogated on other grounds by Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) ("The Forest Service is required to represent a broader view than the more narrow, parochial interests of the [state and local government intervenors].").

above, USCCB's motion is timely. *See supra* II.A. Accordingly, USCCB should be granted permission to intervene if it has a defense that shares a common question of law or fact with the main action. It plainly does.

USCCB anticipates that Defendants will argue (1) that they have discretion to provide funding (or not) to entities that do not provide abortion and contraception services; (2) that USCCB's religious objections were factors weighing against its selection; (3) that Defendants nevertheless decided to award cooperative agreements to USCCB because other positive factors, such as USCCB's ability to provide top-notch relief services to a large number of unaccompanied children, outweighed the "negative" of USCCB's religious objections; and (4) that Defendants' conduct neither endorses religion nor has the purpose or effect of advancing religious beliefs because Defendants considered USCCB's religious beliefs a factor militating against the award. *See* Gov't's *ACLU of Mass.* Brief at 45-62. Although USCCB agrees that Defendants did not violate the Establishment Clause, USCCB will offer an additional defense to Plaintiff's claim.

Defendants' anticipated arguments—that they did not violate the Establishment Clause because they treated USCCB's religious objections as a negative factor, among others—assumes that it would have been constitutionally suspect to accommodate USCCB's religious beliefs. USCCB rejects this assumption and will argue, *inter alia*, that ORR was statutorily required and constitutionally permitted to accommodate USCCB's religious beliefs—here, by amending its cooperative agreement to remove the requirement that grantees provide unaccompanied children with information and counseling about "pregnancy termination." As discussed above, USCCB will attempt to demonstrate that requiring USCCB to abandon the conscience provision as a condition for the funding would violate RFRA. *See supra* II.D; 42 U.S.C. § 2000bb-4(a). USCCB will further argue that because RFRA *required* ORR to grant USCCB a religious accommodation, Defendants' actions neither endorse nor have the effect of advancing a particular set of religious beliefs.[7]

---

[7] USCCB is confident that discovery will reveal that Defendants did not act with the "purpose" of advancing any particular religious belief. ECF No. 1 ¶ 62. And if Defendants' actions do not endorse or advance any particular religious beliefs, Plaintiff's claim that Defendants have "coerce[d] Plaintiff and its members into supporting and subsidizing a particular set of religious beliefs" must fail. *Id.* ¶ 61.

Gibson, Dunn &
Crutcher LLP

USCCB's defense thus rests on a "long" line of Supreme Court precedent "recogniz[ing] that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause." *Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 144-45 (1987); *see also Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 334 (1987) (there is "ample room under the Establishment Clause for benevolent neutrality which will permit religious exercise to exist without sponsorship and without interference"); Douglas Laycock, *Regulatory Exemptions of Religious Behavior and the Original Understanding of the Establishment Clause*, 81 Notre Dame L. Rev. 1793, 1837 (2006) (noting the "unbroken tradition" of regulatory exemptions for religious believers extending "[f]rom the late seventeenth century to the present"). As this defense "squarely respond[s]" to Plaintiff's challenge to the contested ORR awards, it clearly shares a "common question" of law with the main action. *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002) *abrogated on other grounds by Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011).

Moreover, although this defense is not identical to the defense Defendants will presumably raise—that Defendants' conduct does not have the purpose or effect of advancing or endorsing religion because Defendants considered USCCB's religious beliefs a "negative" factor—it plainly shares several common questions of fact with the main action. For example, a central factual question for USCCB's defense is whether USCCB demonstrated in its application for a cooperative agreement that it would be an adequate provider of all services to which it does not have a religious or moral objection. That question is also implicated in the main action, because Defendants will likely argue that they selected USCCB because of its superior ability to provide services, and despite its religious character. Similarly, USCCB's defense and the main action share the factual question of whether USCCB or any of its subgrantees used the funding to fund explicitly religious activities, such as proselytization or worship.

For all of the above reasons, USCCB should be granted intervention under Fed. R. Civ. P. 24(b).

Gibson, Dunn & Crutcher LLP

## IV.  Conclusion

Because this case is about whether the government is constitutionally forbidden from accommodating USCCB's particular religious beliefs, it is only appropriate that USCCB be allowed to participate.  Accordingly, the court should grant USCCB's motion to intervene as of right under Fed. R. Civ. P. 24(a), or, alternatively, under Rule 24(b).

Dated: December 15, 2016

GIBSON, DUNN & CRUTCHER LLP

By:  /s/ Robert E. Dunn
       Robert E. Dunn

Robert E. Dunn
Daniel Nowicki
1881 Page Mill Road
Palo Alto, CA 94304
Tel: (650) 849-5300
Fax: (650) 849-5333
rdunn@gibsondunn.com
dnowicki@gibsondunn.com

Eugene Scalia
1050 Connecticut Avenue, N.W.
Washington, DC  11101
Tel:  202.955.8500
Fax: 202.467.0539
escalia@gibsondunn.com

Attorneys for Intervenor United States Conference of Catholic Bishops

Gibson, Dunn & Crutcher LLP

# CERTIFICATE OF SERVICE

I, Robert E. Dunn, declare as follows:

I am employed in the County of Santa Clara, State of California, I am over the age of eighteen years and am not a party to this action; my business address is 1881 Page Mill Road, Palo Alto, CA 94304-1211, in said County and State. On December 15, 2016, I served the following document(s):

**UNITED STATES CONFERENCE OF CATHOLIC BISHOPS' MOTION TO INTERVENE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 24**

on the parties stated below, by the following means of service:

Elizabeth O. Gill
American Civil Liberties Union Foundation of Northern California, Inc.
39 Drumm Street
San Francisco, CA 94111
Tel (415) 621-2493
Fax (415) 255-8437
egill@aclunc.org

Jennifer L. Chou
American Civil Liberties Union Foundation of Northern California, Inc.
39 Drumm Street
San Francisco, CA 94111
Tel (415) 621-2493
Fax (415) 255-8437
jchou@aclunc.org

Brigitte Amiri
American Civil Liberties Union Foundation
125 Broad Street
New York, New York 10004
Tel (212) 549-2633
Fax (212) 549-2652
bamiri@aclu.org

Brian Hauss
American Civil Liberties Union Foundation
125 Broad Street
New York, New York 10004
Tel (212) 549-2633
Fax (212) 549-2652
bhauss@aclu.org

Melissa Goodman
American Civil Liberties Union Foundation of Southern California
1313 West 8th Street
Los Angeles, CA 90017
Tel (213) 977-9500
Fax (213) 977-5299
mgoodman@aclusocal.org

Daniel Mach
American Civil Liberties Union Foundation
915 15th Street NW
Washington, DC 20005
Tel (202) 675-2330
dmach@aclu.org

Peter J. Phipps
Senior Trial Counsel
Civil Division, Federal Programs Branch
United States Department of Justice
P.O. Box 883 Ben Franklin Station
Washington, DC 20044
Tel (202) 616-8482
Fax (202) 616-8470
peter.phipps@usdoj.gov

Benjamin C. Mizer
Principal Deputy Assistant Attorney General
United States Department of Justice
P.O. Box 883 Ben Franklin Station
Washington, DC 20044
Tel (202) 616-8482
Fax (202) 616-8470

Sheila M. Lieber
Deputy Director
United States Department of Justice
P.O. Box 883 Ben Franklin Station
Washington, DC 20044
Tel (202) 616-8482
Fax (202) 616-8470

Gibson, Dunn & Crutcher LLP

☐ **BY UNITED STATES MAIL**: I placed a true copy in a sealed envelope or package addressed to the persons as indicated above, on the above-mentioned date, and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited with the U.S. Postal Service in the ordinary course of business in a sealed envelope with postage fully prepaid. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing set forth in this declaration.

I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at Palo Alto, California.

☐ **BY MESSENGER SERVICE**: I placed a true copy in a sealed envelope or package addressed to the persons at the addresses listed above and providing them to a professional messenger service for service for delivery before 5:00 p.m. on the above-mentioned date. *(A declaration by the messenger must accompany this Certificate of Service.)*

☐ **BY FAX TRANSMISSION**: Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed above at _____ [a.m./p.m.] , on November 2, 2016. The telephone number of the sending fax machine is [number] No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached. This transmission report was properly issued by the sending fax machine.

☐ **BY OVERNIGHT DELIVERY**: On the above-mentioned date, I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses shown above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier with delivery fees paid or provided for.

☐ **BY LEXISNEXIS**: I provided the document(s) listed above electronically to LexisNexis through the LexisNexis File & Serve website pursuant to the order authorizing electronic service and the instructions on that website.

☑ **BY ELECTRONIC TRANSFER TO THE CM/ECF SYSTEM**: On this date, I electronically uploaded a true and correct copy in Adobe "pdf" format the above-listed document(s) to the United States District Court's Case Management and Electronic Case Filing (CM/ECF) system. After the electronic filing of a document, service is deemed complete upon receipt of the Notice of Electronic Filing ("NEF") by the registered CM/ECF users.

☐ **BY ELECTRONIC SERVICE**: On the above-mentioned date at _____ [a.m./p.m] , based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses as shown above.

☑ I am employed in the office of Gibson, Dunn & Crutcher, a member of the bar of this court, and the foregoing document(s) was(were) printed on recycled paper.

☐ **(STATE)**      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☑ **(FEDERAL)**      I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 15, 2016.

/s/ Robert E. Dunn
Robert E. Dunn

Gibson, Dunn & Crutcher LLP