UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>SYLVIA MATHEWS BURWELL, et al.,<br><br>Defendants. | Case No. 16-cv-03539-LB<br><br>**ORDER GRANTING USCCB'S MOTION TO INTERVENE**<br><br>Re: ECF No. 29 |

## INTRODUCTION

The ACLU of Northern California challenges federal grants to religious organizations for the care of unaccompanied immigrant minors.[1] The ACLU charges that the Office of Refugee Resettlement ("ORR") violates the Establishment Clause by its grants to religious groups that refuse to provide unaccompanied minors with "information about, access to, or referrals for contraception and abortion" services.[2] One of those religious groups, the United States Conference of Catholic Bishops ("USCCB"), now moves to intervene as of right or, alternatively,

---

[1] Compl. – ECF No. 1. Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* ¶¶ 4, 7.

ORDER — No. 16-cv-03539-LB

permissively, and to defend its receipt of federal funding.[3] The ACLU objects to intervention on both grounds; the government objects only to USCCB's intervention as of right.[4]

The court held a hearing on the matter on February 2, 2017. At the hearing USCCB agreed to proceed on the basis of permissive intervention. Because the court finds that permissive intervention is appropriate in this case, the court grants USCCB's motion to intervene.

## STATEMENT

The United States government is legally obligated to provide for the "care and custody of all unaccompanied minor children."[5] 8 U.S.C. § 1232(b)(1); *see* 6 U.S.C. § 279(b). This includes, among other things, routine medical care, family-planning services, and emergency health services.[6] In cases of sexually abused minors, ORR must provide "unimpeded access to emergency medical treatment, crisis intervention services, emergency contraception, and sexually transmitted infections prophylaxis."[7] 45 C.F.R. § 411.92(a). And if pregnancy results from sexual abuse, the victim must "receive[] timely and comprehensive information about all lawful pregnancy-related medical services."[8] *Id.* § 411.93(d).

ORR provides these services through a network of facilities and shelters.[9] It grants funds to private entities — including religious organizations — to care for the children.[10] But in doing so it "authorize[s] a few of these religiously affiliated organizations . . . to refuse on religious grounds to provide information about, access to, or referrals for contraception and abortion, even if the young person in their care has been raped."[11] ORR also "allow[s] these organizations to reject

---

[3] Motion to Intervene – ECF No. 29.

[4] ACLU's Opposition to Motion – ECF No. 49; Defendants' Opposition to Motion – ECF No. 50.

[5] Compl. ¶¶ 20–22.

[6] *Id.* ¶ 27.

[7] *Id.* ¶ 28.

[8] *Id.*

[9] *Id.* ¶ 24.

[10] *Id.* ¶ 3.

[11] *Id.* ¶ 4.

ORDER — No. 16-cv-03539-LB                   2

young women seeking abortion from their programs, and to expel young women who ask for an abortion."[12] And ORR has "facilitate[d] the ostracization of young women who have accessed or seek to access abortion" by placing (and transferring) women based on grantees' religious objections.[13]

USCCB is one such ORR-funded religious organization.[14] "USCCB does not provide services directly to unaccompanied immigrant minors, but instead issues subgrants to Catholic Charities and other organizations that do so."[15] USCCB prohibits its subgrantees from providing contraception- and abortion-related information or services.[16] Indeed, the USCCB–subgrantee cooperative agreement contains the following "conscience provision":

> [subgrantees] must ensure that services provided to those served under this Agreement are not contrary to the authentic teaching of the Catholic Church, its moral convictions, and religious beliefs. Accordingly, [USCCB] expects that the Sub-recipient will provide services under this Agreement within certain parameters including, among other things, that the Sub-recipient will not provide, refer, encourage, or in any way facilitate access to contraceptives or abortion services.[17]

Despite USCCB's contraception and abortion objections, ORR granted it nearly $10 million in 2014.[18] And because of its objections, ORR removed from its cooperative agreements language requiring grantees to refer minors to care providers for "approved family planning methods and services" and "information and counseling regarding prenatal care and delivery; infant care, foster care, or adoption; and pregnancy termination."[19]

Through its grants, the ALCU alleges, "ORR has authorized USCCB and other grantees to impose religiously based restrictions on young women's access to reproductive health care."[20] Thus, it charges, the defendants have "violated the Establishment Clause by failing to remain

---

[12] *Id.* ¶ 5.

[13] *See id.* ¶¶ 39–40.

[14] *Id.* ¶ 4.

[15] *Id.* ¶ 25.

[16] *Id.* ¶ 35.

[17] *Id.*

[18] *Id.* ¶ 5.

[19] *Id.* ¶¶ 32–34.

[20] *Id.* ¶ 7.

1 neutral with respect to religion, by subsidizing grantees' religious beliefs to the detriment of
2 unaccompanied immigrant minors, and by underwriting religious restrictions on vital government-
3 funded services."[21]
4 And so the ACLU sued the government, including the Secretary of Health and Human
5 Services, the Acting Secretary of the Administration for Children and Families, and the Director
6 of ORR.[22] The ACLU seeks an injunction ordering the defendants to issue grants "without the
7 imposition of religiously based restrictions."[23] The court previously denied the government's
8 motion to dismiss and held that the ACLU has standing to bring its Establishment Clause claim.[24]
9 USCCB now moves to intervene as a defendant.[25]

## GOVERNING LAW

"On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). An applicant requesting permissive intervention "must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998) (citing *Nw. Forest Resource Council v. Glickman*, 82 F.3d 825, 839 (9th Cir. 1996)). "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Id.*

The court in its discretion may consider factors such as "the nature and extent of the intervenors' interest," "whether the intervenors' interests are adequately represented by other parties," and "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication

---

[21] *Id.*
[22] *Id.* ¶¶ 16–18.
[23] *Id.*, Prayer ¶ 2.
[24] *See* Order – ECF No. 25.
[25] *See generally* Motion to Intervene.

of the legal questions presented." *See Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977). Judicial economy is also relevant. *Venegas v. Skaggs*, 867 F.2d 527, 531 (9th Cir. 1989), *aff'd sub nom. Venegas v. Mitchell*, 495 U.S. 82 (1990). The court must, however, "consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Donnelly*, 159 F.3d at 412.

**ANALYSIS**

USCCB requests permissive intervention.[26] It agreed at the hearing that the court could limit its analysis to permissive intervention. The government does not oppose the request for permissive intervention but suggests that filing an *amicus curiae* brief is a superior model.[27] The ACLU, on the other hand, objects on two grounds, arguing: (1) the defendants will adequately represent USCCB's interests, and (2) USCCB's "vexatious litigation tactics" to date suggest that they will unduly delay or prejudice the proceedings.[28]

The threshold requirements for permissive intervention are satisfied. USCCB shares common questions of both law and fact with the main action — namely, whether the government's grants to USCCB violated the establishment clause. The motion is timely because it was filed less than a month after the court's order on the government's motion to dismiss and before the government answered the complaint. Intervention came six months after the ACLU filed its complaint but any delay was to permit the resolution of the motion to dismiss. And, finally, "[w]here the proposed intervenor in a federal-question case brings no new claims, the jurisdictional concern drops away." *Freedom from Religion Found. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011) (citing 7C Wright, Miller & Kane, Fed. Prac. & Proc. § 1917 (3d ed. 2010)). The court thus turns to the discretionary factors.

---

[26] Motion to Intervene at 17–19.

[27] Defendants' Opposition to Motion at 6–7.

[28] ACLU's Opposition to Motion at 13–14.

1   First, the ACLU argues that the government will adequately represent USCCB's interests in
2   the litigation. Identity of interests and adequacy of representation may counsel against permissive
3   intervention. *See Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009).
4   But the government and USCCB have at least potentially divergent interests — for example,
5   USCCB has monetary and religious interests that the government does not share. This factor alone
6   does not support denying intervention.

7   Second, the ACLU points to USCCB's obstreperous disagreements about scheduling issues.
8   On this record, the court does not conclude that USCCB engaged in dilatory or prejudicial
9   conduct.

10   USCCB's financial, moral, and religious interests in the litigation are significant. Its
11   participation will contribute to the development of the factual and legal landscape. And the court
12   cannot see how intervention will prejudice the existing parties. In sum, permissive intervention is
13   appropriate, and the court grants USCCB's motion. The court will not now impose restrictions on
14   USCCB's role in the case, for example, to "prevent needless duplication and delay," as the ACLU
15   requests.[29] The court will address case-management issues when they arise.

## CONCLUSION

The court grants USCCB's motion for permissive intervention.

**IT IS SO ORDERED.**

Dated: February 7, 2017

_____
LAUREL BEELER
United States Magistrate Judge

---

[29] *Id.* at 15.