Robert E. Dunn, SBN 275600
Daniel Nowicki, SBN 304716
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304
Telephone: 650.849.5300
Facsimile: 650.849.5333
Email: rdunn@gibsondunn.com
        dnowicki@gibsondunn.com

Eugene Scalia, SBN 151540
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 11101
Telephone: 202.955.8500
Facsimile: 202.467.0539
Email: escalia@gibsondunn.com

Attorneys for Defendant-Intervenor
UNITED STATES CONFERENCE OF
CATHOLIC BISHOPS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA,<br><br>        Plaintiff,<br><br>    v.<br><br>SYLVIA MATHEWS BURWELL, Secretary of Health and Human Services; MARK GREENBERG, Acting Assistant Secretary for Administration for Children and Families; ROBERT CAREY, Director of Office of Refugee Resettlement, in their official capacities,<br><br>        Defendants,<br><br>UNITED STATES CONFERENCE OF CATHOLIC BISHOPS,<br><br>        Defendant-Intervenor. | CASE NO. 3:16-cv-3539-LB<br><br>**ANSWER OF DEFENDANT-INTERVENOR UNITED STATES CONFERENCE OF CATHOLIC BISHOPS TO PLAINTIFF'S AMENDED COMPLAINT** |

## DEFENDANT-INTERVENOR UNITED STATES CONFERENCE OF CATHOLIC BISHOPS' ANSWER TO AMENDED COMPLAINT

Defendant The United States Conference of Catholic Bishops ("USCCB") hereby answers Plaintiff's Amended Complaint (ECF No. 57) in the following numbered paragraphs, which correspond to the Amended Complaint's numbered paragraphs.

1. **Allegation:** There are currently thousands of unaccompanied immigrant minors (also known as unaccompanied children, or "UC") in the legal custody of the federal government. These young people are extremely vulnerable: Many have come to the United States fleeing abuse and torture in their home countries; many have been sexually abused or assaulted either in their home countries, during their long journey to the United States, or after their arrival; some have also been trafficked for labor or prostitution in the United States or some other country; and many have been separated from their families.

   **Answer:** USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 1, and on that basis denies the allegations in the paragraph.

2. **Allegation:** The federal government is legally required to provide these young people with basic necessities, such as housing, food, and access to emergency and routine medical care, including family planning services, post-sexual assault care, and abortion.

   **Answer:** This paragraph consists of legal conclusions to which no response is required. To the extent a response is required, denied.

3. **Allegation:** To provide young people with these necessities, the government, through the Office of Refugee Resettlement ("ORR"), issues grants to private entities, including a number of religiously affiliated organizations.

   **Answer:** USCCB denies that family planning services and abortion are "necessities." USCCB admits the remaining allegations in paragraph 3.

4. **Allegation:** Yet, according to documents obtained through the Freedom of Information Act, Defendants authorize a few of these religiously affiliated organizations—such as the United States Conference of Catholic Bishops ("USCCB") and its subgrantees across the country, including Catholic Charities of Santa Clara County in California—to refuse on religious grounds to provide

information about, access to, or referrals for contraception and abortion, even if the young person in their care has been raped.

> **Answer:** USCCB denies that this characterization of Defendants' conduct and the conduct of religiously affiliated organizations is accurate.

**5. Allegation:** For example, Defendants approved grants to USCCB—nearly $10 million in 2014 alone—even though ORR was well aware that USCCB's agreement with its subgrantees explicitly prohibits them from providing, referring, encouraging, or in any way facilitating access to contraceptives and abortion services. Defendants also allow these organizations to reject young women seeking abortion from their programs, and to expel young women who ask for an abortion.

> **Answer:** USCCB admits that it received nearly $10 million in funding from ORR in 2014 and that USCCB's memoranda of understanding with its subrecipients prohibit them from providing contraceptives or abortion services. USCCB denies the remaining allegations in paragraph 5.

**6. Allegation:** Defendants' decision to authorize this religiously motivated denial of services has extraordinary consequences for the vulnerable unaccompanied immigrant minor population. For example, one young woman—who was hospitalized for suicidal ideation after she became pregnant as the result of rape by one of her "guides" to the United States—was kicked out of her Catholic-affiliated shelter because she asked for an abortion. As a result, she was transferred to another shelter, away from the social workers and other shelter support staff who constituted her only support system in this country. Another young woman, who had also become pregnant as a result of rape on her journey to the United States, was denied placement at a shelter near her family in Florida because the two available shelters both had religious objections to caring for teens who seek abortions.

> **Answer:** USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 6, and on that basis denies the allegations in the paragraph.

**7. Allegation:** ORR has authorized USCCB and other grantees to impose religiously based restrictions on young women's access to reproductive health care—care that these young women are entitled to receive by law. Defendants have therefore violated the Establishment Clause by failing to remain neutral with respect to religion, by subsidizing grantees' religious beliefs to the detriment of

Gibson, Dunn & Crutcher LLP

unaccompanied immigrant minors, and by underwriting religious restrictions on vital government-funded services.

**Answer:** Denied.

8. **Allegation:** This is not the first time that Defendants have violated the Establishment Clause in this manner. In 2012, a federal district court held that Defendants violated the Establishment Clause when they authorized USCCB to prohibit its subcontractors from referring or providing access to abortion or contraception for trafficking victims in a federal program, despite clear law requiring such services. *ACLU of Massachusetts v. Sebelius*, 821 F. Supp. 2d 474 (D. Mass. 2012), *vac'd*, 705 F.3d 44 (1st Cir. 2013) (holding that the case was moot because Defendants' contract with USCCB had expired).

> **Answer:** USCCB admits that the Massachusetts district court opinion, which was vacated as moot by the First Circuit, held that the defendants in that case violated the Establishment Clause. USCCB denies the remainder of the allegations in paragraph 8.

9. **Allegation:** In 2013, the government successfully asserted in *ACLU of Massachusetts* that the case was moot because it was "completely speculative whether USCCB" would receive any future contract award to care for trafficking victims. Yet, in September 2015, Defendants awarded USCCB a multi-million dollar contract to care for trafficking survivors. According to documents obtained through a Freedom of Information Act lawsuit, USCCB's application indicated that "[a]ll activities conducted by USCCB . . . will be consistent with Catholic teaching." Once again, USCCB objected to providing access to certain reproductive health care. It also objected to assisting with visas for spouses of trafficking victims unless "they are in a legal union of one man and one woman."

> **Answer:** USCCB admits that the Massachusetts district court opinion was vacated as moot by the First Circuit. USCCB denies that it was awarded a "multi-million dollar contract." USSCB admits that its application contained the language quoted in the third sentence of paragraph 9. USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in the fourth sentence of paragraph 9, and on that basis denies the allegations. USCCB admits the allegations in the last sentence of paragraph 9. Any allegation not specifically admitted herein is denied.

10. **Allegation:** Defendants have not only provided a grant to USCCB despite its objection to provide legally required care and services to beneficiaries of this particular federal program but have

Gibson, Dunn &
Crutcher LLP

also allowed USCCB to enter into subcontracts exclusively with agencies that share its religious objection to providing trafficking survivors with access to reproductive health care and to assisting same-sex couples with visas. In doing so, like their actions in the UC program, Defendants have violated the Establishment Clause by failing to remain neutral with respect to religion in a government aid program, by allowing a government grantee to select subgrantees based on religious criteria, by subsidizing grantees' religious beliefs to the detriment of trafficking survivors, and by underwriting religious restrictions on vital government-funded services.

> **Answer:** USCCB admits that it has received funding from ORR. USCCB denies the remaining allegations in paragraph 10.

**11. Allegation:** Plaintiff's members include federal taxpayers, whose tax dollars finance the grants provided by Defendants to these religious organizations. Plaintiff seeks, among other relief, an injunction ordering Defendants to ensure that federal grants are implemented without the above-mentioned religious restrictions.

> **Answer:** USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 11, and on that basis denies the allegations in the paragraph.

**12. Allegation:** This action arises under the First Amendment of the United States Constitution and presents a federal question within this Court's jurisdiction under Article III of the Constitution and 28 U.S.C. § 1331.

> **Answer:** This paragraph consists of legal conclusions to which no response is required. To the extent a response is required, denied.

**13. Allegation:** Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Federal Rules of Civil Procedure 57 and 65, and by the inherent equitable powers of this Court.

> **Answer:** This paragraph consists of legal conclusions to which no response is required. To the extent a response is required, denied.

**14. Allegation:** The Court has authority to award costs and attorneys' fees under 28 U.S.C. § 2412.

**Answer:** This paragraph consists of legal conclusions to which no response is required. To the extent a response is required, denied.

**15. Allegation:** Venue is proper in this district under 28 U.S.C. § 1391(e).

**Answer:** This paragraph consists of legal conclusions to which no response is required. To the extent a response is required, denied.

**16. Allegation:** This action arises in the San Francisco Division because Plaintiff's headquarters are in San Francisco.

**Answer:** USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 16, and on that basis denies the allegations in the paragraph.

**17. Allegation:** Plaintiff ACLU of Northern California is a nonprofit membership organization devoted to protecting the basic civil liberties embodied in the United States Constitution, including those religious liberties of belief and conscience safeguarded by the Establishment Clause of the First Amendment. The ACLU of Northern California is a state affiliate of the national American Civil Liberties Union and is domiciled in the State of California, with its principal place of business in San Francisco, California. Members of the ACLU of Northern California pay federal taxes into the general revenues from which Congress appropriates funds to satisfy the government's obligations to provide care to unaccompanied immigrant minors under the Homeland Security Act ("HSA"), and provide care to both unaccompanied immigrant minors and trafficking victims under the William Wilberforce Trafficking Victims Protection Reauthorization Act ("TVPRA"). Plaintiff and its members object to, and are injured by, the use of federal tax dollars pursuant to the HSA and the TVPRA in a manner that is nonneutral with respect to religion, subsidizes religious beliefs to which they do not subscribe, and underwrites religious restrictions on critical government-funded services.

**Answer:** USCCB denies the allegations in the last sentence of paragraph 17. USCCB is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 17, and on that basis denies the remaining allegations.

**18. Allegation:** Defendant Sylvia Mathews Burwell is the Secretary of the United States Department of Health and Human Services ("HHS") and is responsible for the administration and oversight of the Department. Defendant Burwell has authority over the Administration for Children

and Families ("ACF"), a subdivision of HHS. By permitting USCCB and other organizations to impose their religiously based restrictions on the services unaccompanied immigrant minors and trafficking survivors can receive with taxpayer funds, and allowing USCCB to subgrant exclusively to entities that share its religious beliefs, Defendant Burwell has violated the Establishment Clause. Defendant Burwell and her successors are sued in their official capacities.

**Answer:** USCCB denies the allegations in paragraph 18.

**19. Allegation:** Defendant Mark Greenberg is the Acting Assistant Secretary for ACF. Defendant Greenberg has authority over ORR, a subdivision of ACF. By permitting USCCB and other organizations to impose their religiously based restrictions on the services unaccompanied immigrant minors and trafficking survivors can receive with taxpayer funds, and allowing USCCB to subgrant exclusively to entities that share its religious beliefs, Defendant Greenberg has violated the Establishment Clause. Defendant Greenberg and his successors are sued in their official capacities.

**Answer:** USCCB admits the allegations in the last sentence of paragraph 19. USCCB denies the remaining allegations in paragraph 19.

**20. Allegation:** Defendant Robert Carey is the Director of ORR. By permitting USCCB and other organizations to impose their religiously based restrictions on the services unaccompanied immigrant minors and trafficking survivors can receive with taxpayer funds, and allowing USCCB to subgrant exclusively to entities that share its religious beliefs, Defendant Carey has violated the Establishment Clause. Defendant Carey and his successors are sued in their official capacities.

**Answer:** USCCB admits the allegations in the last sentence of paragraph 20. USCCB denies the remaining allegations in paragraph 20.

**21. Allegation:** Unaccompanied immigrant minors come into federal custody in a variety of ways. Many of these young people are apprehended at or near the border by the United States Department of Homeland Security's Customs and Border Protection Unit ("CBP"). After their initial apprehension, these young people are held in "holding tanks" or cells maintained by CBP. After several days, they are transferred to ORR. Other unaccompanied immigrant minors are apprehended

Gibson, Dunn & Crutcher LLP

within the interior of the United States, including after contact with the juvenile justice system, or during immigration enforcement activities inside the country.

> **Answer:** USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 21, and on that basis denies the allegations in the paragraph.

**22. Allegation:** ORR has responsibility for the "care and custody of all unaccompanied [] children, including responsibility for their detention, where appropriate." 8 U.S.C. § 1232(b)(1). By statute, any federal department or agency that determines that it has an unaccompanied immigrant minor in its custody must transfer the minor to ORR within 72 hours of making that determination. *Id.* § 1232(b)(3). The federal government reports that in Fiscal Year 2015, 33,726 unaccompanied immigrant minors were referred to ORR.

> **Answer:** The first two sentences of this paragraph consist of assertions of law to which no response is required. To the extent a response is required, denied. USCCB is without knowledge or information sufficient to form a belief about the truth of the allegation in the last sentence of paragraph 22, and on that basis denies the allegations in that sentence.

**23. Allegation:** The federal government and all of its programs are required to ensure that the best interests of the unaccompanied immigrant minor are protected. Section 462 of the Homeland Security Act ("HSA") requires ORR to "ensur[e] that the interests of the child are considered in decisions and actions relating to the care and custody of an unaccompanied child." 6 U.S.C. § 279(b)(1)(B). It also requires ORR to conduct "investigations and inspections of facilities and other entities in which unaccompanied children reside, including regular follow-up visits . . . to assess the continued suitability of such placements." *Id.* § 279(b)(1)(L).

> **Answer:** This paragraph consists of assertions of law to which no response is required. To the extent a response is required, denied.

**24. Allegation:** In addition, Section 235 of the TVPRA directs HHS to ensure that unaccompanied immigrant minors are "promptly placed in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A).

> **Answer:** This paragraph consists of assertions of law to which no response is required. To the extent a response is required, denied.

**25. Allegation:** Most unaccompanied immigrant minors who are referred to ORR are eventually released from custody to parents or sponsors who live in the United States. Such minors are often held in short-term facilities or shelters while they await release to their parents or sponsors. A significant number of unaccompanied immigrant minors are not released to parents or sponsors, and spend longer periods of time in custody. For some minors, ORR cannot identify an individual who can serve as a viable sponsor. Young people who are expected to be in the government's custody for an extended period or those who have special needs are sometimes transferred to group homes or a foster family. For others, ORR may determine that the minor should be placed in a more restrictive custodial setting. Young people who are flight risks, for example, are held in jail-like facilities with limited, if any, freedom.

   **Answer:** USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 25, and on that basis denies the allegations in the paragraph.

**26. Allegation:** Unaccompanied immigrant minors in ORR's legal custody are cared for through a network of ORR-funded facilities and shelters—including a number of religiously affiliated entities, such as USCCB subgrantees; Catholic Charities Boystown; His House; and Youth for Tomorrow.

   **Answer:** Admitted.

**27. Allegation:** USCCB does not provide services directly to unaccompanied immigrant minors, but instead issues subgrants to Catholic Charities and other organizations around the country that do so, including, according to documents obtained by the ACLU under the Freedom of Information Act: Bethany Christian Services (Grand Rapids, Michigan), Catholic Charities Forth Worth (Fort Worth, Texas), Catholic Charities Houston (Houston, Texas), Catholic Charities Santa Clara County (San Jose, California), Catholic Community Services Tacoma (Tacoma, Washington), Catholic Family Center (Rochester, New York), and Commonwealth Catholic Charities (Richmond, Virginia).

   **Answer:** USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 27, and on that basis denies the allegations in the paragraph.

**28. Allegation:** Unaccompanied immigrant minors have an acute need for reproductive health care, which is both time-sensitive and is needed over the course of their time in federal custody. For example, a high number of these young women are victims of sexual assault. Some of these women will need access to emergency contraception, and some will need access to abortion. Any female aged 10 or older must undergo a pregnancy test within 48 hours of admission to an ORR funded facility. This is the point at which many young women first learn they are pregnant. Many unaccompanied minors need pregnancy prevention services and/or access to abortion during their short or long periods in ORR custody.

      **Answer**: Denied.

**29. Allegation:** The federal government is legally obligated to ensure that all programs that provide care to these young people comply with the minimum requirements detailed in the *Flores v. Reno* Settlement Agreement, CV-85-4544-RJK (Jan. 17, 1997) ("*Flores* agreement"). The *Flores* agreement requires the government to provide or arrange for, among other things, "appropriate routine medical . . . care," including specifically "family planning services[] and emergency health care services."

      **Answer:** This paragraph consists of legal conclusions to which no response is required. To the extent a response is required, denied.

**30. Allegation:** Additionally, in response to its obligations under the Prison Rape Elimination Act ("PREA") and the Violence Against Women Reauthorization Act of 2013 ("VAWA 2013"), ORR issued a regulation requiring all ORR-funded care provider facilities to, among other things, provide unaccompanied immigrant minors who are victims of sexual assault with access to reproductive healthcare. The regulation states, in relevant part, that grantees providing care to unaccompanied immigrant minors who have experienced sexual abuse while in federal custody must ensure "unimpeded access to emergency medical treatment, crisis intervention services, emergency contraception, and sexually transmitted infections prophylaxis." 45 C.F.R. § 411.92(a). The regulation further provides that grantees must ensure that a young person subject to sexual abuse is offered a pregnancy test, and "[i]f pregnancy results from an instance of sexual abuse, [the] care

Gibson, Dunn & Crutcher LLP

USCCB'S ANSWER TO AMENDED COMPLAINT – CASE NO. 3:16-CV-3539-LB

provider facility must ensure that the victim receives timely and comprehensive information about all lawful pregnancy-related medical services." *Id*. § 411.93(d). Grantees were required to comply with this regulation by June 24, 2015.

> **Answer:** This paragraph consists of legal conclusions to which no response is required. To the extent a response is required, denied.

**31. Allegation:** Upon information and belief, unaccompanied immigrant minors face significant barriers to obtaining services not provided by the government and/or its grantees. For example, even if a teen can leave the shelter, she still may not be able to obtain access to abortion or contraceptives without assistance because she likely speaks little or no English; she may have no support system, other than that provided by the federal program; she may have no means of transportation to the doctor's office; and she may have little or no financial resources. If she is not informed that contraceptives and abortions are available in the United States, she may not even know that these options exist, given that many of these young people come from countries where abortion is illegal.

> **Answer:** USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 31, and on that basis denies the allegations in the paragraph.

**32. Allegation:** Defendants knowingly permit religiously affiliated grantees with religious objections to abortion and contraception to impose restrictions on unaccompanied immigrant minors' access to these forms of reproductive healthcare. In so doing, Defendants allow these grantees to flout *Flores*, the PREA/VAWA regulation, and their obligations under the HSA, including by: allowing objecting programs to refuse to provide young women in their care with information about, referrals for, or access to contraception, abortion, and, upon information belief, possibly the human papillomavirus (HPV) vaccine; transferring young women who seek access to contraception or abortion out of objecting programs; and refusing to place young women who are seeking access to emergency contraception or abortion in objecting programs, even if that placement would otherwise be in the young woman's best interest.

> **Answer:** Denied.

Gibson, Dunn & Crutcher LLP

**33. Allegation:** For example, Defendants altered the language used in its cooperative agreements with UC program grantees in response to USCCB's objection to providing access to reproductive health care.

**Answer:** Admitted.

**34. Allegation:** In early 2011, ORR included specific family-planning language in its cooperative agreements. Among other things, these agreements stated: "Family planning services are already required by the Flores settlement agreement, and therefore this cooperative agreement . . . . The grantees will refer female [unaccompanied immigrant minors] to medical care providers who can provide a broad range of acceptable and effective medically approved family planning methods and services. The grantees will refer female [unaccompanied immigrant minors] to medical care providers who offer pregnant [unaccompanied immigrant minors] the opportunity to be provided information and counseling regarding prenatal care and delivery; infant care, foster care, or adoption; and pregnancy termination."

**Answer:** Admitted.

**35. Allegation:** ORR removed this language based on USCCB's objection to the contraception and abortion requirements.

**Answer:** USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 35, and on that basis denies the allegations in the paragraph.

**36. Allegation:** In fact, USCCB has made quite clear that they refuse to provide access to these reproductive healthcare services for the young people in their care. In response to ORR's PREA/VAWA regulation requiring access to reproductive health care for unaccompanied immigrant minors who are subject to sexual assault, USCCB issued a public letter stating that it cannot "help ensure access" to any medical care that is contrary to its religious beliefs. In other words, USCCB said that it should be free "from any requirement to provide, facilitate the provision of, provide information about, or refer or arrange for items or procedures to which they have a religious or moral objection." This includes freedom from notifying the federal government that a minor in their care is

Gibson, Dunn & Crutcher LLP

seeking an abortion, even in cases of rape in federal custody, so that the federal government could step in and provide the minor with access to abortion.

> **Answer:** USCCB admits the allegations in the second and third sentences of paragraph 36. USCCB denies the remaining allegations in paragraph 36.

**37. Allegation:** Defendants also allow USCCB to prohibit its subgrantees from providing information about or access to contraception and abortion. USCCB's cooperative agreements with individual Catholic Charities and other subgrantees, which are provided to ORR, explicitly state that subgrantees "must ensure that services provided to those served under this Agreement are not contrary to the authentic teaching of the Catholic Church, its moral convictions, and religious beliefs. Accordingly, [USCCB] expects that the Sub-recipient will provide services under this Agreement within certain parameters including, among other things, that the Subrecipient will not provide, refer, encourage, or in any way facilitate access to contraceptives or abortion services."

> **Answer:** USCCB denies the allegation in the first sentence of paragraph 37. USCCB denies that it has any "cooperative agreements" with individual Catholic Charities or "subgrantees," but admits that the Memorandum of Understanding between USCCB and its subrecipients contains the language quoted in paragraph 37.

**38. Allegation:** Defendants have likewise approved grant applications for religiously affiliated grantees, including individual Catholic Charities, even though the grant applications explicitly state that the grantees will not provide family planning information or services to the young people in their care.

> **Answer:** USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 38, and on that basis denies the allegations in the paragraph.

**39. Allegation:** For example, in a 2014–2015 direct grant application, the Catholic Charities of the Archdiocese of Galveston-Houston stated: "Due to our religiously-affiliated institution's philosophy and policies, family planning practices are not discussed with clients. Clients are encouraged to practice abstinence." The grant application further provided that, "[i]n cases where the pregnancy has been the result of a rape, the Clinician and Pregnancy Support Specialist work to

Gibson, Dunn & Crutcher LLP

preserve confidentiality, helping clients process the trauma of the rape while also exploring the decision of whether to keep the baby or plan an adoption."

> **Answer:** USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 39, and on that basis denies the allegations in the paragraph.

**40. Allegation:** Upon information and belief, Defendants approved the Archdiocese of Galveston-Houston's grant application, without comment or modification. The Archdiocese of Galveston-Houston received more than $8 million in federal taxpayer funds for the care of unaccompanied immigrant minors between November 1, 2013, and September 30, 2016, despite its explicit refusal to provide the young people in its charge with legally required access to reproductive healthcare.

> **Answer:** USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 40, and on that basis denies the allegations in the paragraph.

**41. Allegation:** Finally, Defendants facilitate the ostracization of young women who have accessed or seek to access abortion. At grantees' request, Defendants have transferred several young women who requested access to abortion to other providers. Such transfers delay the young person's access to the requested healthcare, unfairly stigmatize her for choosing to terminate the pregnancy, and uproot her from the support network developed at her initial placement, including friends, social workers, mental and physical health professionals, teachers, and lawyers assisting with asylum or deportation proceedings.

> **Answer:** USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 41, and on that basis denies the allegations in the paragraph.

**42. Allegation:** In other cases, Defendants have made decisions about where to initially place a young person based on whether she had an abortion or is seeking an abortion. In those situations, Defendants are allowing religiously affiliated programs to prevent them from making a placement in the young person's best interest. Thus, a young woman who has requested an abortion may be forced

Gibson, Dunn & Crutcher LLP

into a program that is already operating at capacity, far from any family members she has in the United States, and/or far from the reproductive health care clinic performing her procedure.

     **Answer:** Denied.

**43. Allegation:** The individual stories of these young women confirm the detrimental effects of religiously based restrictions on access to reproductive health care.

     **Answer:** Denied.

**44. Allegation:** Rosa, a 17-year-old, left her home country for the United States in 2014. She was raped during her journey by one of her "guides" in Mexico.

     **Answer:** USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 44, and on that basis denies the allegations in the paragraph.

**45. Allegation:** Rosa learned that she was pregnant while in ORR custody at Catholic Charities in Miami, Florida. She was distraught by the possibility of being denied an abortion, and said that if she could not get an abortion, she would kill herself. As a result, she was hospitalized for suicidal ideation.

     **Answer:** USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 45, and on that basis denies the allegations in the paragraph.

**46. Allegation:** When Rosa was going to be released from the hospital, the Catholic Charities facility refused to allow her back into the program because she was seeking an abortion. Another religiously affiliated ORR grantee, His House, also refused to accept her for the same reason.

     **Answer:** USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 46, and on that basis denies the allegations in the paragraph.

**47. Allegation:** Rosa was ultimately transferred to another facility, but even after she was transferred, one of her clinicians at her new facility reported that Rosa was "anxious and preoccupied with this abortion and when it will happen," and that the issue had become urgent because she "might start to inflict trauma to the fetus or herself."

**Answer:** USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 47, and on that basis denies the allegations in the paragraph.

**48. Allegation:** ORR ultimately approved the request for federal funding of Rosa's abortion, and she was able to obtain the abortion.

**Answer:** USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 48, and on that basis denies the allegations in the paragraph.

**49. Allegation:** Maria was 14 years old when she fled from her home country in 2014. She had been living there with her aunt, while her parents were in the United States. She was physically abused by her maternal grandmother, and had been threatened with physical discipline by her parents when they lived with her.

**Answer:** USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 49, and on that basis denies the allegations in the paragraph.

**50. Allegation:** After entering the United States, Maria was placed with an ORR shelter in Texas. At a doctor's visit, Maria discovered she was pregnant—likely because of the rape she experienced on her journey to the United States.

**Answer:** USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 50, and on that basis denies the allegations in the paragraph.

**51. Allegation:** An email from an ORR official indicates that the agency had looked into the possibility of transferring Maria to Florida, to be near her family, but was unable to do so because "both of the shelters in Florida are faith-based and will not take the child to have this procedure." Another ORR email cautions that Maria's post-release social worker should not work for a "religion-based agency" because of the abortion.

**Answer:** USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 51, and on that basis denies the allegations in the paragraph.

**52. Allegation:** Laura, a 17-year-old placed at a short term shelter in Texas, was 17–18 weeks pregnant and seeking an abortion. Because Laura was swiftly approaching her 20th week of

Gibson, Dunn &
Crutcher LLP

pregnancy, after which abortion is illegal in Texas, ORR was looking to transfer her to another program. ORR sought to place her somewhere on the East Coast, so she could be near her brothers and sisters. One ORR official raised the possibility of transferring her to Youth for Tomorrow ("YFT"), a faith-based program in Virginia. Another official rejected this possibility, stating: "YFT would be unable to take this youth. YFT is a religious organization and is pro-life.  I just had a UAC who requested that she wanted to terminate her pregnancy and I had to transfer her due to YFT position on abortion."

> **Answer:** USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 52, and on that basis denies the allegations in the paragraph.

**53. Allegation:** Zoe left her home country in January 2015, when she was roughly 16-years-old. She was apprehended near the U.S. border, and she was placed in the YFT program in Virginia in early 2015.

> **Answer:** USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 53, and on that basis denies the allegations in the paragraph.

**54. Allegation:** Zoe's initial physical examination revealed that she was pregnant. Zoe told her doctor that she wanted to have an abortion. After expressing her desire to terminate the pregnancy multiple times for nearly two weeks, she finally received counseling. After the counseling session, she reiterated her desire for an abortion.

> **Answer:** USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 54, and on that basis denies the allegations in the paragraph.

**55.  Allegation:** Although Zoe was thriving at YFT, YFT asked ORR to transfer Zoe to another program where she would be permitted to terminate her pregnancy.

> **Answer:** USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 55, and on that basis denies the allegations in the paragraph.

**56.  Allegation:** It is estimated that more than 14,000 individuals are trafficked into the United States each year. Human trafficking is a form of modern-day slavery, in which individuals are

recruited or obtained through force or coercion and then made to labor against their will. Many women who are trafficked are raped by traffickers or acquaintances of traffickers. As a result, some women who have been trafficked experience unintended pregnancy and are at risk for sexually transmitted infection. Victims of severe forms of human trafficking frequently need reproductive health care services and referrals to lead safe lives, become self-sufficient, and protect themselves and others. These services include emergency contraception, condoms, and in some cases abortion.

> **Answer:** USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 56, and on that basis denies the allegations in the paragraph.

**57. Allegation:** Congress passed the Trafficking Victims Protection Act (TVPA), and subsequently the TVPRA, to combat human trafficking and expand benefits and services for those who are trafficked into the United States from other countries. Under the TVPA, Defendants are charged with providing an array of services to these individuals once they escape their traffickers, including medical services, to help them become self-sufficient. The TVPA further specifies that trafficking victims must receive the same level of benefits and services as refugees, which includes contraception, and in limited circumstances abortion.

> **Answer:** This paragraph contains a characterization of an act of Congress; USCCB refers the Court to the act itself for a complete and accurate understanding of its contents. To the extent that a further response is required, denied.

**58. Allegation:** Rather than provide services directly to trafficking survivors, Defendants give grants to non-profit organizations to do so. Trafficking victims often do not know where to access medical care, and often do not speak English. As a result, trafficking victims rely on case managers at the non-profit that is assisting them to help them navigate an array of services, including by providing information, referrals, and transportation to these services. If case managers do not provide information about services, trafficking survivors may not understand the scope of medical care they are entitled to; and if case managers do not provide referrals and access to medical care, many trafficking survivors will not be able to access that care.

> **Answer:** USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 58, and on that basis denies the allegations in the paragraph.

Gibson, Dunn & Crutcher LLP

59. **Allegation:** Nevertheless, in 2006, Defendants provided a multi-year, multi-million dollar contract to USCCB to distribute as subcontracts to organizations that directly serve trafficked individuals. In that contract, Defendants permitted USCCB to prohibit all subcontractors from using federal funds to pay for abortion and contraception services and referrals, even though trafficking survivors are legally entitled to receive those services.

> **Answer:** USCCB admits the allegations in the first sentence of paragraph 59. USCCB denies the remaining allegations in paragraph 59.

60. **Allegation:** The ACLU of Massachusetts brought a court challenge, and in 2012, a federal district court held that Defendants' contract with USCCB violated the Establishment Clause.

> **Answer:** USCCB admits that the Massachusetts district court opinion, which was vacated as moot by the First Circuit, held that the defendants in that case violated the Establishment Clause. USCCB denies the remainder of the allegations in paragraph 60.

61. **Allegation:** During the course of litigation, ORR issued a new Funding Opportunity Announcement ("FOA"), which made clear that trafficking victims need reproductive health services and referrals. ORR selected three organizations to receive grants under the new FOA that would provide those reproductive health services and referrals. USCCB was not among the recipients.

> **Answer:** USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in the first two sentences of paragraph 61, and on that basis denies the allegations in those sentences. USCCB admits the allegations in the third sentence of paragraph 61.

62. **Allegation:** On appeal, ORR maintained that the expiration of its contract with USCCB rendered the case moot, in part because "it is completely speculative whether USCCB will receive any future contract award similar to the one plaintiff challenges here." The U.S. Court of Appeals for the First Circuit accepted this argument, concluding that "we can safely assume that for the foreseeable future the challenged contract terms will not recur." The court gave particular weight "to the fact that the defendants are high-ranking federal officials, including a cabinet member, who have, as a matter of policy, abandoned the prior practice and adopted a concededly constitutional replacement."

Gibson, Dunn & Crutcher LLP

**Answer:** This paragraph contains a characterization of briefing before, and a decision of, the First Circuit; USCCB admits that the First Circuit vacated the Massachusetts district court opinion as moot, and otherwise refers the Court to the briefing and decision itself for a complete and accurate understanding of its contents. To the extent that a further response is required, denied.

63. **Allegation:** In 2015, ORR issued a Funding Opportunity Announcement, HHS-2015-ACFORR-ZV-0976, stating that "it will accept competing applications for cooperative agreements to administer the Trafficking Victim Assistance Program (TVAP)."

**Answer:** This paragraph contains a characterization of an ORR document; USCCB refers the Court to the document itself for a complete and accurate understanding of its contents. To the extent that a further response is required, denied.

64. **Allegation:** The FOA sought to fund organizations to provide "comprehensive case management" to trafficking survivors, including providing access to "medical care, including treatment for sexually transmitted infections, family planning services and the full range of legally permissible gynecological and obstetric care, including but not limited to exams, tests, pre-natal services and non-directive health-related counselling."

**Answer:** This paragraph contains a characterization of an ORR document; USCCB refers the Court to the document itself for a complete and accurate understanding of its contents. To the extent that a further response is required, denied.

65. **Allegation:** The FOA explicitly addressed potential religious objections to the Trafficking Victim Assistance Program's service and referral requirements. It states: "If an organization has a religious objection to providing any of the services or referrals required in the program, it may propose an approach to meeting its grant obligations consistent with ACF's faith-based policy. The alternative approach must be one that accomplishes the goal of ensuring that trafficking victims understand the full range of services available to them, including reproductive health services, and that there is a mechanism by which victims requesting such services can receive appropriate referrals. If an alternative approach is proposed, ORR will decide whether to accept the alternative approach, based upon a determination of whether the alternative approach will ensure timely referrals to all services and/or referrals for which the individual is eligible, is not burdensome to the client, and is operationally feasible for ACF."

Gibson, Dunn & Crutcher LLP

USCCB'S ANSWER TO AMENDED COMPLAINT – CASE NO. 3:16-CV-3539-LB

**Answer:** This paragraph contains a characterization of an ORR document; USCCB refers the Court to the document itself for a complete and accurate understanding of its contents. To the extent that a further response is required, denied.

66. **Allegation:** Despite Defendants' representations in the *ACLU of Massachusetts* litigation, in 2013, Defendants awarded USCCB a $2 million dollar grant in September 2015, and, upon information and belief, another $2 million dollar grant in September 2016. Upon information and belief, USCCB is the primary grantee to serve trafficking survivors in two regions of the country, which include Delaware, Washington, D.C., Maryland, Pennsylvania, Virginia, West Virginia, Arkansas, Louisiana, New Mexico, Oklahoma, and Texas. Two other organizations also received grants to provide services, primarily in other parts of the country.

**Answer:** USCCB denies the allegations in the first sentence of paragraph 66. USCCB is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 66, and on that basis denies the remaining allegations in the paragraph.

67. **Allegation:** Upon information and belief, the Cooperative Agreement between USCCB and Defendants requires USCCB to "[a]dhere to all requirements in the FOA," and states that there must be "a mechanism by which victims requesting [reproductive health] services can receive appropriate referrals" in a timely manner that is not burdensome to the client and is operationally feasible for Defendants.

**Answer:** This paragraph contains a characterization of a document; USCCB refers the Court to the document itself for a complete and accurate understanding of its contents. To the extent that a further response is required, denied.

68. **Allegation:** Upon information and belief, in the process of negotiating its contract with Defendants, USCCB sent an email to ACF staff stating: "we concur that we would not impose our religious objections on sub-recipients but rather would enter into agreements with subrecipients that share our religious objections and that would elect to refrain from facilitating or referring for those specific services." Another email confirms that USCCB made clear to all of its subrecipients its "intention to administer" the program "in alignment with Catholic teaching." USCCB would not subcontract with an entity that did not share its religious opposition to providing access to certain

forms of reproductive health care. If a subcontractor were unable to meet a client's needs due to a religious objection, USCCB would possibly transfer the client to another grantee.

> **Answer:** USCCB admits that it sent an email to ACF staff containing the language quoted in the first sentence of paragraph 68, and denies the remaining allegations in that sentence. USCCB admits that it sent an email to ACF staff containing the language quoted in the second sentence of paragraph 68, and denies the remaining allegations in that sentence. USCCB is without knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 68, and on that basis denies the remaining allegations in the paragraph.

**69. Allegation:** Upon information and belief, USCCB's subrecipients provide a brochure to trafficking survivors that says: "This grantee is affiliated with a program of the Catholic Church, which has moral and religious objections to direct sterilization, contraception, and abortion. You are free to discuss all health matters with your medical provider."

> **Answer:** USCCB admits that its subrecipients are to provide a brochure to trafficking survivors containing the language quoted in paragraph 69.

**70. Allegation:** Congress is aware that ORR is providing HSA and TVPRA funds to religiously affiliated entities. For example, on June 25, 2014, Bishop Mark Seitz testified before the House Judiciary Committee regarding USCCB's participation in ORR's program for the care of unaccompanied children. In his testimony, Bishop Seitz recommended on behalf of USCCB that "Congress appropriate $2.28 billion in Fiscal Year 2015 for care of unaccompanied children, consistent with the Administration's request." Bishop Seitz also stated that "[a]ny funding should be administered in a manner that respects the religious liberty and conscience rights of organizations providing this care." *Hearing on Unaccompanied Children: H. Comm. on the Judiciary*, 113th Cong. 40 (2014) (statement of Rev. Mark Seitz, USCCB). Similarly, on February 4, 2016, USCCB's Associate Director of Children's Services submitted testimony to the House Judiciary Subcommittee on Immigration and Border Security explaining that USCCB provides "short-term and long-term foster care to unaccompanied children in HHS/ORR custody," including "medical and mental health screening and care," though "cooperative agreements with HHS/ORR." Kristyn Peck, Associate Director of Children's Services (USCCB), *Testimony for the Record Before the H. Subcomm. on Immigration and Border Security of the H. Judiciary Comm.*, 114 Cong. 117 (Feb. 4, 2016).

Gibson, Dunn & Crutcher LLP

**Answer:**  USCCB is without knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of paragraph 70, and on that basis denies the allegations in that sentence.  The remainder of this paragraph contains a characterization of Congressional hearing testimony and statements; USCCB refers the Court to the testimony itself for a complete and accurate understanding of its contents. To the extent that a further response is required, denied.

**71. Allegation:**  A recent report by the Senate's Permanent Subcommittee on Investigations on ORR's role in protecting unaccompanied immigrant minors states: "HHS's [UC] program functions through grants and contracts with a number of private care providers and other third parties who perform daily tasks associated with [UC] placement. Those functions include running shelters for children who have not yet been placed with sponsors, identifying and screening potential sponsors, evaluating homes in which children will be placed, making release recommendations to HHS, and providing post-release services to children. HHS awarded 56 grants to over 30 care providers for the [UC] program in FY 2016, including . . . the U.S. Conference of Catholic Bishops." Staff of S. Permanent Subcomm. on Investigations of the S. Comm. on Homeland Security & Governmental Affairs, *Protecting Unaccompanied Alien Children from Trafficking and Other Abuses: The Role of the Office of Refugee Resettlement* (2016).

**Answer:**  This paragraph contains a characterization of a document; USCCB refers the Court to the document itself for a complete and accurate understanding of its contents.  To the extent that a further response is required, denied.

**72. Allegation:**  In 2011, Congress held hearings on Defendants' trafficking program, and whether USCCB should have been awarded a contract to provide care to trafficking victims even though it refuses to allow subrecipients to refer for abortion and contraceptives. *See, e.g.*, Verbatim Transcript, *Rep. Darrell Issa Holds a Hearing on HHS Grant Denial for U.S. Conference of Catholic Bishops*, Roll Call, Inc., Dec. 14, 2011, 2011 WL 6254061; *HHS and the Catholic Church: Examining the Politicization of Grants Hearing Before the Comm. on Oversight and Gov't Reform*, H.R., 112th Cong. 112-124 (2011).

**Answer:**  This paragraph contains a characterization of Congressional hearing testimony and statements; USCCB refers the Court to the testimony itself for a complete and accurate understanding of its contents.  To the extent that a further response is required, denied.

73. **Allegation:** The Attorney General's Annual Report to Congress and Assessment of U.S. Government Activities to Combat Trafficking in Persons for Fiscal Year 2015 includes a description of the trafficking grant provided to USCCB on September 30, 2015, including the fact that "USCCB expressed its plan to have subcontracts with certain services providers."

> **Answer:** This paragraph contains a characterization of a government document; USCCB refers the Court to the document itself for a complete and accurate understanding of its contents. To the extent that a further response is required, denied.

74. **Allegation:** In the Consolidated Appropriations Act, 2016, Pub. L No. 114-113, Congress appropriated nearly $1.6 billion for ORR's Refugee and Entrant Assistance Programs in FY2016, including "for carrying out" the government's obligations under the TVPA, Section 462 of the HSA, and Section 235 of the TVPRA.

> **Answer:** This paragraph consists of an assertion of law to which no response is required. To the extent a response is required, denied.

75. **Allegation:** Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations of paragraphs 1 through 74.

> **Answer:** USCCB restates and incorporates by reference, as if fully set forth herein, its answers to the allegations of paragraphs 1 through 74.

76. **Allegation:** Defendants have violated and continue to violate the Establishment Clause of the First Amendment by permitting USCCB and its subgrantees (such as Catholic Charities), His House, Youth for Tomorrow, and similar organizations to impose religiously based restrictions on the use of taxpayer funds.

> **Answer:** Denied.

77. **Allegation:** Defendants' actions alleged herein disburse taxpayer funds in a manner that is not neutral with respect to religion.

> **Answer:** Denied.

78. **Allegation:** Defendants' actions alleged herein have the predominant effect of advancing a particular set of religious beliefs.

> **Answer:** Denied.

Gibson, Dunn & Crutcher LLP

**79. Allegation:** Defendants' actions alleged herein endorse a particular set of religious beliefs.

   **Answer:** Denied.

**80. Allegation:** Defendants' actions alleged herein coerce Plaintiff and its members into supporting and subsidizing a particular set of religious beliefs.

   **Answer:** Denied.

**81. Allegation:** Defendants' actions alleged herein have the predominant purpose of advancing a particular set of religious beliefs.

   **Answer:** Denied.

Furthermore, USCCB denies each and every allegation of the Complaint not specifically addressed above.

## AFFIRMATIVE DEFENSES

**1.** Plaintiff has failed to state a claim upon which relief may be granted.

**2.** Defendants' conduct does not violate the Establishment Clause because such conduct constitutes a constitutionally permissible religious accommodation.

**3.** Defendants' conduct does not violate the Establishment Clause because such conduct is required by the Religious Freedom Restoration Act.

**4.** Plaintiff lacks standing.

## PRAYER FOR RELIEF

WHEREFORE, USCCB prays that the Court dismiss Plaintiff's suit with prejudice, render judgment that Plaintiff take nothing, assess costs against Plaintiff, and award USCCB all other relief to which it is entitled.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated: February 16, 2017

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Robert E. Dunn
    Robert E. Dunn

Robert E. Dunn
Daniel Nowicki
1881 Page Mill Road
Palo Alto, CA 94304
Tel: (650) 849-5300
Fax: (650) 849-5333
rdunn@gibsondunn.com
dnowicki@gibsondunn.com

Eugene Scalia
1050 Connecticut Avenue, N.W.
Washington, DC 11101
Tel: 202.955.8500
Fax: 202.467.0539
escalia@gibsondunn.com

Attorneys for Defendant-Intervenor United States
Conference of Catholic Bishops

Gibson, Dunn &
Crutcher LLP

USCCB'S ANSWER TO AMENDED COMPLAINT – CASE NO. 3:16-CV-3539-LB