UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA, <br><br> Plaintiff, <br><br> v. <br><br> SYLVIA MATHEWS BURWELL, et al., <br><br> Defendants. | Case No. 16-cv-03539-LB <br><br> **ORDER DENYING THE DEFENDANTS' MOTION TO TRANSFER** <br><br> Re: ECF No. 62 |

# INTRODUCTION & BACKGROUND

The ACLU of Northern California challenges federal grants to religious organizations for the care of unaccompanied immigrant minors and trafficking victims.[1] The ACLU claims that the Office of Refugee Resettlement ("ORR") violates the Establishment Clause by its grants to religious groups that refuse to provide unaccompanied minors and trafficking victims with "information about, access to, or referrals for contraception and abortion" services.[2] To challenge these grants, the ACLU sued, in their official capacities, the Secretary of Health and Human

---

[1] *See generally* First Amended Compl. – ECF No. 57. Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* ¶¶ 4, 7, 56–69.

1  Services, the Acting Assistant Secretary of the Administration for Children and Families, and the
2  Director of ORR.[3] The United States Conference of Catholic Bishops ("USCCB") — an ORR
3  grantee that "issues subgrants to Catholic Charities" — intervened in the case.[4]

4  The government defendants now move to transfer the case to the District of Columbia.[5] The
5  ACLU opposes the motion.[6] The court denies the motion because the government has not
6  overcome the deference afforded to the ACLU's choice of forum.

## GOVERNING LAW

28 U.S.C. § 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Although Congress drafted § 1404(a) in accordance with the doctrine of *forum non conveniens*, it was intended to be a revision to rather than a codification of the common law. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981); *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955). Thus, a § 1404(a) transfer is available "upon a lesser showing of inconvenience" than that required for a *forum non conveniens* dismissal. *Norwood*, 349 U.S. at 32.

The burden is upon the moving party to show that transfer is appropriate. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979); *see also Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 497, 499 (C.D. Cal. 1981), *aff'd*, 726 F.2d 1381, 1399 (9th Cir. 1984). Nonetheless, the district court has broad discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)); *see Westinghouse Elec. Corp. v. Weigel*, 426 F.2d 1356, 1358 (9th Cir. 1970).

---

[3] *Id.* ¶¶ 18–20.

[4] *See id.* ¶¶ 4, 26–27, 37, 59–69; Order re Intervention – ECF No. 58.

[5] Motion to Transfer – ECF No. 62.

[6] Opposition – ECF No. 66.

ORDER — No. 16-cv-03539-LB         2

An action may be transferred to another court if: (1) that court is one where the action might have been brought; (2) the transfer serves the convenience of the parties; and (3) the transfer will promote the interests of justice. *E & J Gallo Winery v. F. & P. S.p.A.*, 899 F. Supp. 465, 466 (E.D. Cal. 1994) (citing 28 U.S.C. § 1404(a)). The Ninth Circuit has identified numerous additional factors a court may consider in determining whether a change of venue should be granted under § 1404(a):

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones*, 211 F.3d at 498–99. Courts may also consider "the administrative difficulties flowing from court congestion . . . [and] the 'local interest in having localized controversies decided at home.'" *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (quoting *Piper Aircraft*, 454 U.S. at 241 n. 6).

Generally, the court affords the plaintiff's choice of forum great weight. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). But when judging the weight to be given to plaintiff's choice of forum, consideration must be given to the respective parties' contact with the chosen forum. *Id*. "If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter," the plaintiff's choice "is entitled only minimal consideration." *Id*.

## ANALYSIS

The parties do not dispute that the case could have been brought in the District of Columbia.[7] And, indeed, because the defendants are government officials sued in their official capacities, and because a substantial part of the events (*i.e.* the decision-making process) took place in Washington, D.C., the ACLU could have sued in the District of Columbia. *See* 28 U.S.C. §§ 1391(e), 1404(a).

---

[7] *See* Motion at 5; Opposition at 4.

1     The court next considers the remaining § 1404(a) factors. The court first considers the ACLU's choice of forum because the government's burden shifts based on the weight given to that choice. *See Chesapeake Climate Action Network v. Export-Import Bank*, No. C 13-03532 WHA, 2013 WL 6057824, at *2 (N.D. Cal. Nov. 15, 2013) ("As deference to a plaintiff's choice of forum decreases, a defendant's burden to upset the plaintiff's choice of forum also decreases."). The court then considers the convenience of the parties and witnesses, the location of the evidence, and the interests of justice.

### 1. The ACLU of Northern California's Choice of Forum

    Generally, "unless the balance of the § 1404(a) factors 'is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed.'" *Getz v. Boeing Co.*, 547 F. Supp. 2d 1080 (N.D. Cal. 2008) (quoting *Secs. Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985)); *see also Decker*, 805 F.2d at 843 ("[D]efendant must make a strong showing . . . to warrant upsetting the plaintiff's choice of forum."). "This is especially true when a plaintiff chooses to sue in its 'home turf.'" *Natural Wellness Ctrs. of Am. v. J.R. Andorin Inc.*, No. 11-04642 EDL, 2012 WL 216578, at *10 (N.D. Cal. Jan. 24, 2012).

    But sometimes a plaintiff's choice of forum is entitled to only minimal weight, "*even if* the plaintiff is a resident of the forum." *Chesapeake*, 2013 WL 6057824 at *2 (emphasis in original). "[T]he deference accorded to a plaintiff's chosen forum should be balanced against the extent of both the defendant's and plaintiff's contacts with the chosen forum, including those relating to plaintiff's claims." *Ctr. for Biological Diversity v. Export-Import Bank*, No. C 12-6325 SBA, 2013 WL 5273088, at *5 (N.D. Cal. Sept. 17, 2013) (citing *Pac. Car & Foundry v. Pence*, 403 F.2d 949 (9th Cir. 1968)). "If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal deference." *Pac. Car & Foundry*, 403 F.2d at 954.

The parties point to several instructive cases involving environmental challenges to government action.[8] *See Chesapeake*, 2013 WL 6057824; *Ctr. for Biological Diversity*, 2013 WL 5273088.

In *Center for Biological Diversity v. Export-Import Bank*, the plaintiffs' decision to litigate in the Northern District of California weighed against transfer. 2013 WL 5273088 at *5. There, three environmental organizations challenged an Export-Import Bank loan to finance a natural gas project in Australia's Great Barrier Reef. *Id.* at *1–*2. The defendants — the United States Export-Import Bank and its Chairman and President — moved to transfer the case to the District of Columbia, where the Bank (a federal agency) is headquartered, and where the environmental-review process took place. *Id.* at *1, *4. The defendants argued that the plaintiffs' "choice of forum [was] entitled to minimal deference because the operative facts giving rise to [the] action occurred in Washington, D.C., and because this District ha[d] no particular interest in or connection to [the] litigation." *Id.* *5.

But the defendants did not satisfy their burden. *Id.* Instead, the Northern District of California had a particular interest in the litigation because (1) the plaintiff organizations were incorporated in California, (2) "each ha[d] an office in th[e] district," and (3) each had "members that reside[d] in the district who [were] concerned about the potential impacts from the Project, including impacts on endangered and threatened species and the climate." *Id.* Some members had "specific plans to travel to Australia" and were "concerned that the Project [would] harm their recreational and aesthetic interests." *Id.* The plaintiffs' choice of forum was thus entitled to deference.

In contrast, in *Chesapeake*, this factor weighed in favor of transferring venue. 2013 WL 6057824 at *2. As in *Center for Biological Diversity*, the *Chesapeake* plaintiffs were non-profit environmental groups challenging the Export-Import Bank's decision to finance a development project. *Id.* at *1. The plaintiffs asserted that the Bank's decision, which would facilitate the export of Appalachian coal through facilities in Maryland and Virginia and "to clients in China, Japan,

---

[8] *See* Motion to Transfer at 7; Opposition at 4–5.

ORDER — No. 16-cv-03539-LB 5

South Korea, and elsewhere," would cause "significant adverse effects on human health and the environment." *Id.*

In giving little deference to the plaintiffs' choice of forum, the court noted that "none of the operative facts arose in this district" — the Bank's decisionmaking regarding the loan guarantee took place in Washington, D.C. — and distinguished *Center for Biological Diversity* on two grounds. *Id.* at *2. First, the *Center* plaintiffs "rel[ied] on their members who lived in this district and claimed harm to their recreational and aesthetic interests for organizational standing." *Id.* (internal quotations omitted). But in *Chesapeake*, the plaintiffs "rel[ied] on their members on the East Coast who face harm to their health, property, and aesthetic and recreational interests." *Id.* (internal quotations omitted). Second, "in *Center for Biological Diversity*, all of the plaintiff organizations were headquartered in this district," but in *Chesapeake*, "only two of the six plaintiffs" were headquartered here. *Id.* The plaintiffs' choice thus received little deference. *Id.*

The case here is more similar to *Center for Biological Diversity* than it is to *Chesapeake*. First, like *Center for Biological Diversity*, the ACLU of Northern California (the sole plaintiff) is based in this district: it "is a state affiliate of the national American Civil Liberties Union and is domiciled in the State of California, with its principal place of business in San Francisco."[9] Second, the ACLU brings the case on behalf of its members, "nearly all of" whom live here,[10] and thus relies on (at least predominantly) local-member association, not (as in *Chesapeake*) members suffering injury across the country. And third, the ACLU alleges that the impact of the Establishment Clause violation — federal funds financing religious organizations that refuse to provide contraceptive and abortion-related services — is occurring in this district. It asserts that USCCB "issues subgrants to Catholic Charities and other organizations around the country" that provide services to unaccompanied minors, including to Catholic Charities of Santa Clara County (located in San Jose).[11] Thus, like *Center for Biological Diversity*, (1) the ACLU (the sole

---

[9] FAC ¶ 17.

[10] Opposition at 4.

[11] FAC ¶¶ 4, 27.

ORDER — No. 16-cv-03539-LB 6

plaintiff) is domiciled in California, (2) it has its principal place of business in San Francisco, and (3) its members are located here and the impact is local. The ACLU's choice of forum is thus entitled to deference.

This conclusion does not change because the ACLU is an organization suing on behalf of its taxpaying members. The government argues that the ACLU's member-based taxpayer standing means that anyone — in any district — could bring this case and, "where there are hundreds of potential plaintiffs . . . all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened."[12] *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947).

But the cases the government relies on are contextually distinguishable. For example, *Koster* was a shareholder's derivative action, and the Court focused on the "complexities and unique features of" those suits to reach its conclusion. *See id.* at 522–26. It was because of those unique features — including the fiduciary relationship between named plaintiffs and corporations' shareholders; named plaintiffs' (sometimes) questionable ability or motive to litigate the case; and the court's administrative duties to protect absentee shareholders and to facilitate the action — that the Court gave little weight to the named plaintiff's decision to litigate at home. *Id.* And similar concerns apply in the other contexts raised by the government. *See Seely v. Cumberland*, No. 10-CV-2019-LHK, 2010 WL 5300923, at *3 (N.D. Cal. Dec. 20, 2010) (applying *Koster* to a *qui tam* plaintiff's patent mis-marking claim and transferring venue); *San Francisco Tech., Inc. v. Glad Prods. Co.*, No. 10-CV-00966 JF (PVT), 2010 WL 2943537, at *7 (N.D. Cal. July 26, 2010) (noting that, in addition to "substantial persuasive authority supporting Defendants' position that a plaintiff's choice of forum is entitled to less weight in a *qui tam* action," the Supreme Court's reasoning in *Koster* "is arguably applicable" in the *qui tam* context); *see also Johns v. Panera Bread Co.*, No. 08-1071 SC, 2008 WL 2811827, at *2 (N.D. Cal. July 21, 2008) ("Plaintiff's decision to seek to represent a nationwide class substantially undercuts this defence."); *Hoefer v. U.S. Dep't of Commerce*, No. C 00-091 VRW, 2000 WL 890862, at *2 (N.D. Cal. June 28, 2000)

---

[12] Motion at 7; Reply – ECF No. 67 at 2–3.

(affording little deference to "a plaintiff's choice of forum in a[n] action brought on behalf of a nationwide class" where "[t]he members of the purported class are numerous and are located throughout the nation").

Each of these contexts — derivative suits, class actions, and *qui tam* cases — involve individual plaintiffs suing on behalf of (or in the place of) other potential plaintiffs located in forums across the country. But here, this division of the ACLU is a Northern California-based organization suing on behalf of its members, "nearly all of" whom are located here, too.[13] The absentee plaintiffs — the ACLU's members — thus have the same home forum. That the ACLU relies on its members' federal taxpayer status does not change this outcome: even though taxpayers in other forums could conceivably bring the case too, the ACLU of Northern California brings it only on behalf of its members located predominantly in this district. This may be different from a situation where, for example, the national ACLU sued on behalf of its members located throughout the nation. In that context, the ACLU would indeed be suing on behalf of many potential plaintiffs throughout the country, "all of whom could with equal show of right go into their many home courts." *Koster*, 330 U.S. at 524. But that is not the situation here, and the ACLU of Northern California's choice of forum is entitled to deference.

### 2. Other Factors

Because the ACLU's choice of forum is entitled to deference, the government must make a "strong showing" that the conveniences and the interests of justice favor transfer. *See Ctr. for Biological Diversity v. Lubchenco*, No. C-09-4087 EDL, 2009 WL 4545169, at *4 (N.D. Cal. Nov. 30, 2009); *cf. Chesapeake*, 2013 WL 6057824 at *2 ("As deference to a plaintiff's choice of forum decreases, a defendant's burden to upset the plaintiff's choice of forum also decreases.").

---

[13] *See* Opposition at 4.

**2.1 Convenience of the Parties**

The parties do not directly address their own conveniences. The ACLU is based in this district, but the defendants (and USCCB) are based in Washington, D.C.[14] Without more information regarding their respective burdens of litigating here versus the District of Columbia, the court cannot tell if this factor weighs in favor of transfer. But, presumably, the parties "will face increased litigation expenses and inconvenience if the case proceeds in their nonpreferred forum," and because "transfer is not appropriate if it simply shifts the inconvenience from one party to another," this factor is neutral in the transfer analysis. *See Ctr. for Biological Diversity v. Export-Import Bank*, No. C 12-6325 SBA, 2013 WL 5273088, at *6 (N.D. Cal. Sept. 17, 2013).

**2.2 Convenience of the Witnesses and Location of the Evidence**

"The convenience of witnesses is often the most important factor in deciding whether to transfer an action." *Getz*, 547 F. Supp. 2d at 1083 (citing *Bunker v. Union Pac. R.R. Co.*, No. C 05-04059 JSW, 2006 WL 193856, at *2 (N.D. Cal. Jan. 23, 2006)). But courts "discount[] any inconvenience to the parties' employees, whom the parties can compel to testify." *Id.* at 1084 (citing *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1556 (N.D. Cal. 1998)). And, the location of the witnesses and other evidence is no longer weighed so heavily "given the modern advances in communication and transportation." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998); *see also Chesapeake*, 2013 WL 6057824 at *3 ("[T]echnological advances in document storage and retrieval mitigate the burdens of transporting documents, if any, from the District of Columbia to this district.").

Here, the government argues that the parties' witnesses are all located in Washington, D.C.[15] For example, in its supplemental initial disclosures, the ACLU identified nine potential witnesses, each based in Washington.[16] The government similarly identified ten Washington-based witnesses

---

[14] *See* FAC ¶¶ 17–20.

[15] Motion at 5–6.

[16] *See* ACLU's Supp. Initial Disclosures – ECF No. 62-1 at 12–13.

ORDER — No. 16-cv-03539-LB        9

(five of whom were also identified by the ACLU).[17] USCCB's witnesses are also located in Washington.[18] And many of the documents on which the parties intend to rely are located in Washington, either with HHS or USCCB.[19]

The witnesses and the documentary evidence thus appear located primarily in Washington, D.C. But each witness is an employee of either HHS or USCCB that can be compelled to testify. The ACLU's "counsel is willing to conduct deposition at witnesses' convenience in the District of Colombia,"[20] and the case is likely to be resolved without trial at summary judgment.[21] In light of these circumstances and the ease of storing and retrieving electronic documents (the government even hyperlinks to several of the documents in its initial disclosures[22]), the location of the witnesses and documents weighs only slightly in favor of transfer.

### 2.3 The Interests of Justice

The court next considers the interests of justice. "A district court hearing a motion to transfer must also consider public-interest factors such as relative degrees of court congestion, local interest in deciding local controversies, potential conflicts of laws, and other interests of justice." *Chesapeake*, 2013 WL 6057824 at *3.

First, "[a]s to court congestion, courts in this district consider the 'median time from filing to disposition or trial.'" *Id.* (quoting *Ctr. for Food Safety v. Vilsack*, No. C 11-00831 JSW, 2011 WL 996343, at *8 (N.D. Cal. Mar. 17, 2011)); *see also Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984) ("The real issue is not whether a dismissal [for *forum non conveniens*] will reduce a court's congestion, but whether a trial may be speedier in another court because of its less

---

[17] Defendants' Supp. Initial Disclosures – ECF No. 62-1 at 3–4.

[18] USCCB's Initial Disclosures – ECF No. 62-1 at 18–19.

[19] *See* Motion 6; Defendants' Supp. Initial Disclosures at 4–7; USCCB's Initial Disclosures at 19–20.

[20] Opposition at 6.

[21] *See* Joint Case Management Statement – ECF No. 35 at 7 ("If necessary this case would be a bench trial, but the parties presently do not think that there is a high likelihood that there will be material facts in genuine dispute, and therefore believe that this case will most likely be resolved through summary judgment.").

[22] *See* Defendants' Initial Disclosures at 5–7.

ORDER — No. 16-cv-03539-LB     10

crowded docket."). Here, as of September 30, 2016, judges in this district had on average 572 pending cases whereas judges in the District of Colombia had 250 pending cases.[23] Regarding the median time from filing to disposition in civil cases, the average time in this district was 7.4 months, and the average time in the District of Columbia was 7.8 months.[24] The average time from filing to trial in this district was 30.4 months, and in the District of Columbia was 41.8 months.[25] Despite the greater caseload, then, cases are, on average, resolved more quickly in this district. "It is hard to account for this anomaly," and so "this factor will not be given weight." *Chesapeake*, 2013 WL 6057824.

Second, regarding local interest, the government argues that the ACLU "has not selected a forum with any particular interest to the parties or the subject matter" and that the District of Columbia has "the greatest connection to the allegations and claims."[26] Indeed, the District of Columbia has an interest in this case: it is where the decisionmaking process took place and where the defendants are located. *See Ctr. for Biological Diversity v. Export-Import Bank*, No. C 12-6325 SBA, 2013 WL 5273088, at *7 (N.D. Cal. Sept. 17, 2013). But, as described above, this district has an interest, too: the case is brought by the ACLU's local division, on behalf of its Northern California-based members, and the ACLU alleges that the impact is in part occurring through funding to a Santa Clara-based organization. This factor weighs at most only slightly in favor of transfer.

\* \* \*

In sum, the government has not made the strong showing necessary to overcome the ACLU's choice of forum. The government has thus failed to satisfy its burden and the court denies the motion to transfer.

---

[23] *See* Motion at 8; *see also* United States District Courts — National Judicial Caseload Profile, at 2, 66, *available at* http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2016.pdf.

[24] *Id.*

[25] *Id.*

[26] Motion at 7 (internal quotations omitted).

ORDER — No. 16-cv-03539-LB    11

## CONCLUSION

The court denies the government's motion to transfer venue to the District of Columbia.

**IT IS SO ORDERED.**

Dated: April 28, 2017

_____
LAUREL BEELER
United States Magistrate Judge