ELIZABETH O. GILL (SBN 218311)
JENNIFER L. CHOU (SBN 304838)
MISHAN R. WROE (SBN 299296)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
OF NORTHERN CALIFORNIA, INC.
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437
Email:  *egill@aclunc.org*
Email:  *jchou@aclunc.org*
Email: *mwroe@aclu.org*

BRIGITTE AMIRI (*pro hac vice*)
MEAGAN BURROWS (*pro hac vice motion forthcoming*)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2633
Facsimile: (212) 549-2652
Email:  *bamiri@aclu.org*
Email: *mburrows@aclu.org*

*Attorneys for Plaintiffs*

[ADDITIONAL COUNSEL ON FOLLOWING PAGE]

**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA, JANE DOE, on behalf of herself and others similarly situated, | Civil No. 3:16-cv-3539-LB |
| Plaintiffs, | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR TRO AND PRELIMINARY INJUNCTION** |
| v. | |
| DON WRIGHT, Acting Secretary of Health and Human Services, *et al*., | Date: October 5, 2017 |
| Defendants, | Location:  Courtroom C |
| v. | Judge: Hon. Laurel Beeler |
| U.S. CONFERENCE OF CATHOLIC BISHOPS, | |
| Defendant-Intervenors. | |

---

*AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA V. WRIGHT ET AL*.,
PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR TRO/PRELIMINARY INJUNCTION
CIVIL NO. 3:16-CV-3539-LB

MELISSA GOODMAN (SBN 289464)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5299
Email: *mgoodman@aclusocal.org*

DANIEL MACH (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th Street NW
Washington, DC 20005
Telephone: (202) 675-2330
Email: *dmach@aclu.org*

*Attorneys for Plaintiffs*

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

      PLEASE TAKE NOTICE that on October 5, 2017, or as soon thereafter as it may be heard before the Honorable Laurel Beeler of the United States District Court for the Northern District of California, Plaintiffs will, and hereby do, move the Court Pursuant to Federal Rule of Civil Procedure 65 and Local Rule 65.  This motion is based on the Memorandum of Points and Authorities submitted herewith, all pleadings and filings filed in this action, and such oral arguments and evidence as may be presented at the hearing on the motion.

**TABLE OF CONTENTS**

**MEMORANDUM OF POINTS AND AUTHORITIES** ............................................................... 1

    **PRELIMINARY STATEMENT** ............................................................................................... 1

    **FACTUAL BACKGROUND** .................................................................................................... 2

    **ARGUMENT** ............................................................................................................................. 5

        I.   **Plaintiffs Are Likely to Succeed on the Merits of Their Claims.** ........................... 6

            A.   **Defendants' Conduct Violates Plaintiffs' Fifth Amendment Rights.** .......... 6

            B.   **Defendants' Policies and Conduct Violates Minors' Free Speech Rights.** .................................................................................................................. 8

            C.   **Plaintiffs Will Suffer Irreparable Injury.** ..................................................... 10

            D.   **The State of Balance Between Plaintiff's Harm and The Injury that Granting the Injunction Will Inflict on Defendants Strongly Favors Plaintiff.** ............................................................................................................ 12

            E.   **A TRO/Preliminary Injunction Serves the Public Interest.** ...................... 12

    **CONCLUSION** ........................................................................................................................ 13

# TABLE OF AUTHORITIES

**Cases**

*Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) .................................. 6

*Arc of California v. Douglas*, 757 F.3d 975 (9th Cir. 2014) .................................................. 6

*Arizona Dream Act Coalition v. Brewer*, 855 F.3d 957 (9th Cir. 2017) ........................... 13

*Bellotti v. Baird*, 443 U.S. 622 (1979) ........................................................................ 7, 8, 12

*Carey v. Klutznick*, 637 F.2d 834 (2d Cir. 1980) ................................................................. 13

*Causeway Medical Suite v. Ieyoub*, 109 F.3d 1096 (1997) ................................................... 8

*Doe v. Bolton*, 410 U.S. 179 (1973) ..................................................................................... 10

*Elrod v. Burns*, 427 U.S. 347 (1976) ................................................................................... 12

*Flores v. Reno*, CV-85-4544-RJK (Jan. 17, 1997) ................................................................. 2

*Gralike v. Cook*, 191 F.3d 911 (8th Cir. 1999), *aff'd*, 531 U.S. 510 (2001) ........................ 9

*H.L. v. Matheson*, 450 U.S. 398 (1981) ............................................................................... 11

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557 (1995) ............................................................................................................................................. 9

*Indiana Planned Parenthood Affiliates Association v. Pearson*, 716 F.2d 1127 (7th Cir. 1983) ....................................................................................................................................... 8

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) ........................................................... 13

*Newsom ex rel. Newsom v. Albemarle County School Board*, 354 F.3d 249 (4th Cir. 2003) ..................................................................................................................................... 13

*Planned Parenthood Association of City of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390 (6th Cir. 1987) ...................................................................................................... 13

*Planned Parenthood Minnesota, North Dakota, South Dakota v. Daugaard*, 799 F. Supp. 2d 1048 (D.S.D. 2011) ............................................................................................... 9, 10, 12

*Planned Parenthood of Central Missouri v. Danforth*, 428 U.S 52 (1976) ........................ 7

*Planned Parenthood of Indiana and Kentucky, Inc. v. Commissioner, Indiana State Department of Health*, No. 1:17-cv-01636SEBDML, 2017 WL 2797757 (S.D. Ind. June 28, 2017) ............................................................................................................................ 8, 12

*Planned Parenthood v. Casey,* 505 U.S. 833 (1992) ................................................ 6, 7, 10

*Riley v. National Federation of the Blind of N.C.*, 487 U.S. 781 (1988) ...................... 9, 10

*Roe v. Wade*, 410 U.S. 113 (1973) ................................................................................ 11

*Rosenberger v. Rector & Visitors of University of Virginia*, 515 U.S. 819 (1995) .......... 10

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47 (2006) ........... 9

*Sammartano v. First Judicial District Court,* 303 F.3d 959 (9th Cir. 2002) .................... 13

*Stuhlbarg International Sales Company v. John D. Brush & Company*, 240 F.3d 832 (9th Cir. 2001) ....................................................................................................................... 6

*United States v. Playboy Entertainment Group., Inc.*, 529 U.S. 803 (2000) .................... 10

*Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016) ......................................... 7

*Williams v. Zbaraz*, 442 U.S. 1309 (1979) .................................................................... 11

*Winter v. Natural Resource Defense Council, Inc.*, 555 U.S. 7 (2008) .............................. 5

*Wooley v. Maynard*, 430 U.S. 705 (1977) ........................................................................ 9

**Statutes**

45 C.F.R. § 411.92(a) *et seq* ............................................................................................ 2

6 U.S.C. § 279(b)(1)(B) ................................................................................................... 2

6 U.S.C. § 279(g)(2) ........................................................................................................ 2

8 U.S.C. § 1232(b)(1) ...................................................................................................... 2

8 U.S.C. § 1232(c)(2)(A) ................................................................................................. 2

**Other Authorities**

Minority Staff of the House Committee on Government Reform, False and Misleading Health Information Provided By Federally Funded Pregnancy Resource Centers, 109th Cong. 1 (2006), http:// www.chsourcebook.com/articles/waxman2.pdf ......................... 5

# MEMORANDUM OF POINTS AND AUTHORITIES
## PRELIMINARY STATEMENT

Jane Doe, on behalf of herself and others similarly situated, seeks emergency injunctive relief to prohibit the federal government from blocking Ms. Doe's ability to access abortion. Jane Doe is an unaccompanied immigrant minor who is currently in federal custody in a government-funded shelter in Texas. Ms. Doe is pregnant and has decided to have an abortion. She requested access to abortion, but her request was met with extreme resistance from the federal Defendants. This resistance is grounded in newly revised policies that apply nationwide that grant Defendants unfettered veto power over a minor's abortion decision, and erect other unconstitutional barriers in the path of minors seeking abortion access. *Defendants have exercised their veto power in Ms. Doe's situation, and are directly blocking her from accessing abortion, including by prohibiting her from leaving the shelter at which she is living*.

Because Texas law requires parental consent or a judicial waiver of that requirement before a minor may obtain an abortion, Ms. Doe, with the assistance of an attorney ad litem and a guardian ad litem, went to court and obtained judicial authorization to consent on her own to the care. Defendants are nevertheless refusing to transport, or allow anyone to transport, Ms. Doe to the health center to obtain counseling or the abortion procedure itself. Absent an immediate temporary restraining order, Ms. Doe will be pushed further into her pregnancy, which increases the risks associated with the procedure, and at some point will be forced to carry to term against her will. Ms. Doe is able to see the abortion provider for the state-mandated counseling (which must occur at least 24 hours prior to the abortion), and to obtain the abortion on October 5, 6, and/or 7. If she is unable to see the provider in this window, she will be pushed a week further into her pregnancy. Plaintiffs seek a TRO to prohibit Defendants from blocking or interfering with Ms. Doe's ability to keep these appointments or otherwise to access abortion. Moreover, Plaintiffs seek a preliminary injunction to prohibit Defendants from obstructing or

interfering with abortion access for a class of similarly situated pregnant unaccompanied immigrant minors.  Ms. Doe is not the only unaccompanied minor who has recently experienced obstruction to abortion access at the hands of Defendants and, absent this Court's intervention, she will not be the last.

## FACTUAL BACKGROUND

Unaccompanied immigrant minors come into federal custody in a variety of ways.[1] After their initial apprehension, ORR bears responsibility for the "care and custody of all unaccompanied [] children, including responsibility for their detention, where appropriate." 8 U.S.C. § 1232(b)(1). The federal government and all of its programs are required to ensure that the best interests of the unaccompanied immigrant minor are protected.  *See* 6 U.S.C. § 279(b)(1)(B); 8 U.S.C. § 1232(c)(2)(A).

Protecting the minors' best interests includes ensuring access to health care, including reproductive health care.  Indeed, the federal government is legally obligated to ensure that all programs that provide care to these young people comply with the minimum requirements detailed in the *Flores v. Reno* Settlement Agreement, CV-85-4544-RJK (Jan. 17, 1997) ("*Flores* agreement").  The *Flores* agreement requires the government to provide or arrange for, among other things, "appropriate routine medical . . . care," including specifically "family planning services[] and emergency health care services."[2]  Unaccompanied immigrant minors have an acute need for reproductive health care, in part because a high number of these young women are victims of sexual assault, immediately before, during and after their journey to the U.S.

---

[1] By statutory definition, unaccompanied immigrant minors are under 18 years old, have no legal immigration status, and either have no parent or legal guardian in the United States, or there is no parent or legal guardian in the United States able to provide care and physical custody. 6 U.S.C. § 279(g)(2).

[2] Additionally, an ORR regulation requires all ORR-funded care provider facilities to, among other things, provide unaccompanied immigrant minors who are victims of sexual assault while in federal custody with access to reproductive healthcare. 45 C.F.R. § 411.92(a) *et seq*.

Nevertheless, Defendants have implemented a newly revised policy that allows them to wield an unconstitutional veto power over unaccompanied immigrant minors' access to abortion. In March 2017, ORR announced that all federally funded shelters are prohibited from taking "any action that facilitates" abortion access for unaccompanied minors in their care without "direction and approval from the Director of ORR." Ex. 1, Decl. of Brigitte Amiri in Supp. of Pls' Mot. for TRO/PI ("Amiri Decl."), Ex. A. This includes arranging for options counseling, ensuring access to court to seek a judicial bypass in lieu of parental consent, and providing access to the abortion itself. *See, e.g.*, *id.*, Ex. B. For example, one email from then-Acting ORR Director summarized that: "Grantees should not conduct [abortion] procedures, or take any steps that facilitate future [abortion] procedures *such as scheduling appointments, transportation, or other arrangements* without signed written authorization from the ORR Director." *Id.*, Ex. B (emphasis added). In fact, it is the current ORR Director's position that "[g]rantees should not be supporting abortion services pre or post-release; only pregnancy services and life-affirming options counseling." *Id.*, Ex. C.

Defendants are currently implementing this unconstitutional policy to deny Jane Doe access to abortion. Jane Doe is 17 years old, and came to the United States from her home country without her parents. Ex. 2, Declaration of Jane Doe ("Doe Decl.") ¶¶ 2–3. She was apprehended and placed into federal custody. *Id.* ¶ 4. She is currently in a shelter in Texas. *Id.* She is pregnant, and requested an abortion. *Id.* ¶ 5. Instead of arranging for Ms. Doe's requested medical care, Defendants forced Ms. Doe to visit an anti-abortion crisis pregnancy center where she was forced to undergo an ultrasound for no medical purpose, made to reveal intimate details about herself, and was subjected to the center's attempts to dissuade her from having an abortion. *Id.* ¶ 12. Despite her ordeal, Ms. Doe continued to be resolute in her decision to have an abortion. With the assistance of court-appointed guardian and attorney ad litems, Ms. Doe sought to obtain a judicial bypass of the state's parental consent requirement. *Id.* ¶ 6. Ms. Doe had an appointment scheduled with a health center for counseling, but ORR refused to transport,

or allow Ms. Doe to be transported by anyone, to the health center. *Id.* ¶¶ 9–11. Defendants also made clear that Ms. Doe would be prohibited from obtaining the abortion itself. Since that time, Defendants have continued to prevent Ms. Doe from accessing abortion, and have told her mother about her pregnancy. *Id.* ¶ 14.

Jane Doe is not alone. Defendants have interfered with other minors' access to abortion. For example, in March 2017, an unaccompanied minor at a federally funded shelter in Texas decided to have an abortion. After obtaining a judicial bypass and receiving the state-mandated counseling, she decided to have a medication abortion. This regimen begins with a dose of mifepristone, which stops the pregnancy from growing, followed by a dose of misoprostol, which expels the pregnancy, within 48 hours later. After the minor took the mifepristone, ORR intervened, and forced her to go to an "emergency room of a local hospital in order to determine the health status of [her] and her unborn child." Amiri Decl., Ex. A. Then Acting Director of ORR, Ken Tota, directed ORR as follows: "[i]f steps can be taken to preserve the life of . . . her unborn child, those steps should be taken." *Id.* Eventually, ORR allowed the minor to complete the medication abortion and take the second dose of pills.

Indeed, high level officials at ORR in Washington, D.C., have taken the extraordinary step of becoming personally involved with individual minors' pregnancy and abortion decisions. For example, Defendant ORR Director, Scott Lloyd, has *personally* contacted unaccompanied immigrant minors who were pregnant and seeking abortion, and discussed with them their decision to have an abortion. *Id.*, Exs. D, E. This raises serious concerns that Defendant Lloyd is using his position of power to coerce young women to carry their pregnancies to term.

Ms. Doe's experience is a direct result of policies put in place by ORR. In addition to the policy allowing them to prohibit young women in their care from accessing abortion, ORR has also adopted a policy requiring young women who indicate that they are considering abortion to meet with anti-abortion staff at an HHS approved site. These sites, contained on a nationwide list of "Trusted Providers in HHS Cities," are predominately comprised of anti-abortion crisis

pregnancy centers ("CPCs"). *Id*., Ex. F.  CPCs are categorically opposed to abortion, and generally do not provide information about pregnancy options in a neutral way.  In fact, many do not provide accurate information about pregnancy and/or abortion. Many are also religiously affiliated, and proselytize to women.[3]  ORR requires pregnant unaccompanied immigrant minors who are considering abortion to visit a CPC.  In addition to Jane Doe, ORR requires other minors seeking abortions to be "counseled" by these CPCs, including some at the explicit direction of Defendant ORR Director Scott Lloyd.  *See* Ex. G; *see also* Ex. E.

As a matter of practice, ORR is also unconstitutionally forcing unaccompanied immigrant minors to tell parents and/or immigration sponsors of their abortion decision, or ORR is telling minors' parents and/or sponsors about the minors' abortion decision, against the express wishes of the minor.  For example, Defendants told Ms. Doe's mother about Ms. Doe's pregnancy, over Ms. Doe's objections. Defendants are also trying to force Ms. Doe to tell her mother that she is pregnant and is considering an abortion.  In the case of another minor, Defendant Lloyd, in an email, directed that "the grantee or the federal field staff must notify her parents of the termination," even after the minor had obtained a judicial bypass to prevent her parents learning of her decision to terminate her pregnancy.  *Id*., Exs. H, I.  Ms. Doe is concerned about her privacy, and does not want any other family members to know of her abortion decision.

## ARGUMENT

To obtain a preliminary injunction, a plaintiff must establish (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Courts

---

[3] *See* Minority Staff of the H. Comm. on Gov't Reform, False and Misleading Health Information Provided By Federally Funded Pregnancy Resource Centers, 109th Cong. 1 (2006), *available at* http:// www.chsourcebook.com/articles/waxman2.pdf.

evaluate these factors on a "sliding scale." *Arc of Cal. v. Douglas*, 757 F.3d 975, 983 (9th Cir. 2014) (internal quotations and citation omitted). Thus a "stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Regardless, "the moving party [must] demonstrate a fair chance of success on the merits or questions serious enough to require litigation." *Arc of Cal.*, 757 F.3d at 993–94 (internal quotations and citation omitted). Standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical" and can be analyzed together. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

**I.     Plaintiffs Are Likely to Succeed on the Merits of Their Claims.**

    **A. Defendants' Conduct Violates Plaintiffs' Fifth Amendment Rights.**

In 1992, the Supreme Court in *Planned Parenthood v. Casey* reaffirmed what it characterized as the "central holding" of *Roe v. Wade,* namely that the government may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability. 505 U.S. 833, 871 (1992). In *Casey,* the Supreme Court adopted the "undue burden" standard for assessing state laws or regulations that restrict abortion. The Court explained:

> A finding of an undue burden is a shorthand for the conclusion that a state regulation has the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus. A statute with this purpose is invalid because the means chosen by the State to further the interest in potential life must be calculated to inform the woman's free choice, not hinder it. And a statute which, while furthering the interest in potential life or some other valid state interest, has the effect of placing a substantial obstacle in the path of a woman's choice cannot be considered a permissible means of serving its legitimate ends.

*Id*. at 877.  Subsequent Supreme Court decisions reaffirm this principle, most recently in the Court's decision in *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016), *as revised* (June 27, 2016).

There is no question that Defendants are violating Jane Doe's Fifth Amendment rights by preventing Ms. Doe from obtaining an abortion.  Indeed, Defendants are refusing to transport her, or allow anyone to transport her, to the health care facility to obtain an abortion.  Defendants are essentially holding her hostage to prevent her from exercising her fundamental constitutional right to abortion.  The constitutional violation could not be more blatant or straightforward: Defendants cannot ban abortion for Ms. Doe, or any unaccompanied minor.

The fact that Ms. Doe is a minor in no way mitigates the constitutional violation here.  As the Supreme Court has explained, "[c]onstitutional rights do not mature and come into being magically only when one attains the state-defined age of majority.  Minors, as well as adults, are protected by the Constitution and possess constitutional rights." *Planned Parenthood of Cent. Missouri v. Danforth*, 428 U.S 52, 74 (1976) (quoted with approval in *Bellotti v. Baird*, 443 U.S. 622, 634, n.12 (1979).  Thus, even in the context of a minors' parents, the Court has held that "the unique nature and consequences of the abortion decision make it inappropriate to give a third party an absolute, and possibly arbitrary, veto over the decision of the physician and his patient to terminate the patient's pregnancy." *Bellotti v. Baird*, 443 U.S. 622, 643 (1979) (internal quotations and citation omitted); *see also Casey*, 505 U.S. at 899.  Accordingly, although the Court has upheld laws requiring parental consent, it has only done so if there is an alternative confidential mechanism for the minor to obtain authorization for the procedure, such as the judicial bypass process in Texas.  *Id*.  And, indeed, Ms. Doe obtained authorization from a Texas court to consent on her own to the abortion.  But under ORR's new policy, ORR has

nonetheless vetoed Ms. Doe's abortion decision. Defendants' actions, and policy, are a blatant violation of the Fifth Amendment.

Moreover, Defendants are also violating the Fifth Amendment by forcing minors to tell their parents or sponsors about their abortion decision, or telling the parents or sponsors themselves. In the context of analyzing the constitutionality of parental consent laws, the Supreme Court has been clear that the minor must have the ability to seek a judicial bypass anonymously, without consultation or notification to her parents. *Bellotti*, 443 U.S at 647. As one court put it, if *Bellotti* means anything, "it surely means that States seeking to regulate minors' access to abortion must offer a credible bypass procedure, *independent of parents or legal guardians*." *Causeway Med. Suite v. Ieyoub*, 109 F.3d 1096, 1112 (1997); *see also Bellotti*, 443 U.S. at 647 (holding that if a state requires parental involvement in a minor's abortion decision the state must provide an procedure through which "every minor must have the opportunity—if she so desires—to go directly to court without first consulting or notifying her parents"). Indeed, "[c]onfidentiality during and after the [judicial bypass] proceeding" is paramount, *Indiana Planned Parenthood Affiliates Ass'n v. Pearson*, 716 F.2d 1127 (7th Cir. 1983), for the myriad reasons that minors decide not to tell their parents of their abortion decision, including fear of "abuse at the hands of one or more of their parents," *Planned Parenthood of Ind. and Ky., Inc. v. Comm'r, Indiana State Dep't of Health*, No. 1:17-cv-01636SEBDML, 2017 WL 2797757, at *13 (S.D. Ind. June 28, 2017). For all of these reasons, Plaintiffs are likely to succeed on the merits of their Fifth Amendment claim.

### B. Defendants' Policies and Conduct Violates Minors' Free Speech Rights.

By compelling a young woman to disclose her decision to have an abortion and discuss the circumstances surrounding that decision—one of the most intimate and personal decisions a

person can make—to a third party who is opposed to her decision, Defendants' policy violates the First Amendment prohibition on government-compelled speech. *Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Daugaard*, 799 F. Supp. 2d 1048, 1054–58 (D.S.D. 2011) (preliminarily enjoining under the First Amendment a law requiring patients seeking abortion to first be counseled by a crisis pregnancy center).

The First Amendment protects both "[t]he right to speak and the right to refrain from speaking." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). Moreover, the Supreme Court has repeatedly emphasized that "this general rule, that the speaker has the right to tailor the speech, applies not only to expressions of value, opinion, or endorsement, but equally to statements of fact the speaker would rather avoid." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 573 (1995) (citing cases); *accord Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 62 (2006) ("compelled statements of fact . . . like compelled statements of opinion, are subject to First Amendment scrutiny"); *Riley v. Nat'l Fed'n of the Blind of N.C.*, 487 U.S. 781, 797–98 (1988) (law that compels "statements of 'fact'" subject to same First Amendment scrutiny as law compelling statements of belief). These cases make clear that, subject to limited exceptions not applicable here, laws that compel speech are subject to strict scrutiny. *See Riley*, 487 U.S. at 798; *Wooley*, 430 U.S. at 715–16; *Gralike v. Cook*, 191 F.3d 911, 919–21 (8th Cir. 1999), *aff'd*, 531 U.S. 510 (2001). As such, a law that compels this kind of private speech can only be upheld if it is narrowly tailored to achieve a compelling state interest.

There can be no doubt that Defendants' policy and practice of forcing minors to be counseled by a CPC compels speech. Indeed, under Defendants' policy, minors seeking an abortion must discuss her decision and the circumstances surrounding that decision with an anti-

abortion crisis pregnancy center about one of "the most intimate and personal choices a person may make in a lifetime, [a] choice[] [that is] central to personal dignity and autonomy," *Casey*, 505 U.S. at 851.  The burden on speech is even more extreme because it is viewpoint-based. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).  ORR is forcing only minors considering abortion, and not other pregnancy related care, to speak to an ideologically hostile organization.  Compelling speech in such a manner is unconstitutional unless the Act (1) serves a compelling state interest, and (2) is narrowly drawn to achieve that end.  *See, e.g.*, *Riley*, 487 U.S. at 800; *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000).  Defendants' policy fails both prongs of this demanding standard.

Defendants' policy does not further any compelling interest.  Even assuming, *arguendo*, that it did, Defendants' policy is not "narrowly tailored."  Most obviously, Defendants' policy is neither "necessary" nor the least restrictive means, *i.e.*, the means that least infringes on the woman's First Amendment rights, to further the government's purported interest in fetal life or the woman's health by ensuring informed and voluntary decision making. The most obvious alternative to Defendants' policy is both the most sensible and the one universally relied upon across the country and across virtually all medical circumstances: relying on the patient's chosen medical providers to ensure that her decision is informed and voluntary.  *Planned Parenthood of Minnesota*, 799 F. Supp. 2d at 1057; *see also Casey*, 505 U.S. at 884 ("the doctor-patient relation here is entitled to the same solicitude it receives in other contexts"); *see also Doe v. Bolton*, 410 U.S. 179, 199–200 (1973).  Thus, the Defendants alleged interest can be met without compelling minors to speak to a CPC.  Accordingly, Plaintiffs are likely to succeed on their First Amendment claim.

**C.     Plaintiffs Will Suffer Irreparable Injury.**

Plaintiff Jane Doe will suffer immediate and irreparable harm if this Court does not require Defendants to provide her with immediate access to medical services to terminate her pregnancy. The right to choose to terminate a pregnancy is, by its nature, of limited duration. A woman who is blocked or seriously delayed in her effort to obtain abortion cannot later exercise her choice even if the impediment to doing so is later removed.

That denial of a woman's right to choose to terminate her pregnancy constitutes irreparable injury was made clear in *Roe v. Wade*, 410 U.S. 113, 153 (1973):

> The detriment that the State would impose upon the pregnant woman by denying this choice altogether is apparent. Specific and direct harm medically diagnosable even in early pregnancy may be involved. Maternity, or additional offspring, may force upon the woman a distressful life and future. Psychological harm may be imminent. Mental and physical health may be taxed by child care. There is also the distress, for all concerned, associated with the unwanted child, and there is the problem of bringing a child into a family already unable, psychologically and otherwise, to care for it.

Here, Plaintiff Jane Doe, and others similarly situated, faces irreparable harm if she is not granted the relief that she seeks, and she is forced to carry the pregnancy to term against her will.

Short of being outright denied access to abortion, any delay caused by Defendants' actions also irreparably harms Plaintiff. Ms. Doe's request for an abortion has already been delayed by Defendants' conduct. Plaintiff is being exposed to increased medical risks by the delay caused by Defendants; although abortion is very safe, each week the pregnancy progresses, the risks to the woman increase. *See Williams v. Zbaraz*, 442 U.S. 1309, 1314–15 (1979) (Stevens, J., sitting as Circuit Justice) (increased risk of "maternal morbidity and mortality" supports claim of irreparable injury). "[T]ime is likely to be of the essence in an abortion decision." *H.L. v. Matheson*, 450 U.S. 398, 412 (1981).

Plaintiff Jane Doe, and others similarly situated, will also be irreparably harmed if she is forced to tell her family that she is seeking or has obtained abortion. They will be harmed if Defendants tell their families or their immigration sponsors of their abortion decision. There are myriad reasons why some minors do not want to tell their parents, or immigration sponsors, including fear of abuse and rejection. *See, e.g.*, *Planned Parenthood of Ind. & Ky.*, 2017 WL 2797757, at *13. As the Court in *Bellotti* recognized, there are some parents who would go so far as to obstruct a minor from having an abortion if they knew about their daughter's abortion decision. 443 U.S. at 647–48.

The Plaintiff Class will be irreparably harmed by being forced to be "counseled" by a CPC, in violation of the First Amendment free speech rights. "[A] woman who chooses to undergo an abortion [and who is forced into counseling at a CPC] will experience a high degree of degradation because she will be forced to disclose to her decision to someone who is fundamentally opposed to it." *Planned Parenthood of Minnesota*, 799 F. Supp. 2d at 1063. In addition, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

### D. The State of Balance Between Plaintiff's Harm and the Injury that Granting the Injunction Will Inflict on Defendants Strongly Favors Plaintiff.

As discussed, *supra*, Plaintiff Jane Doe, and others similarly situated, will suffer irreparable harm in the absence of relief from this Court. In contrast, the injunction would impose no measurable harm on Defendants. Defendants have no legal right to prevent young women from accessing abortion care; to force them to go anti-abortion counseling, or to inform the minors' parents of the pregnancy or desired abortion against the minors' wishes.

### E. A TRO/Preliminary Injunction Serves the Public Interest.

The public interest benefits from protecting the constitutional rights of its citizens. The Ninth Circuit has repeatedly held that "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Sammartano v. First Judicial District Court*, 303 F.3d 959, 974 (9th Cir. 2002)); *see also Arizona Dream Act Coal. v. Brewer*, 855 F.3d 957, 978 (9th Cir. 2017); *Newsom ex rel. Newsom v. Albemarle Cty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003) ("Surely, upholding constitutional rights serves the public interest."); *Planned Parenthood Ass'n of City of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390, 1400 (6th Cir. 1987) ("the public is certainly interested in the prevention of enforcement of ordinances which may be unconstitutional"); *Carey v. Klutznick*, 637 F.2d 834, 839 (2d Cir. 1980) ("the public interest … requires obedience to the Constitution"). In the instant case, there is no conceivable way the public interest will be adversely affected by Plaintiff Jane Doe's ability to terminate her pregnancy, the most private and intimate of decisions. Thus, there is no harm done to the public interest.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' motion for a TRO/preliminary injunction.

DATED: October 5, 2017
ACLU FOUNDATION OF NORTHERN CALIFORNIA, INC.

By: /s/ Brigitte Amiri
    Brigitte Amiri
    Attorneys for Plaintiff