CHAD A. READLER
Acting Assistant Attorney General
ALEXANDER K. HAAS (N.D. Cal. #220932)
Special Counsel to the Assistant Attorney General
PETER J. PHIPPS (DC Bar 502904)
Senior Trial Counsel
Civil Division, Federal Programs Branch
United States Department of Justice
P.O. Box 883 Ben Franklin Station
Washington, DC 20530
Tel: (202) 616-8482
Fax: (202) 616-8470
Email: peter.phipps@usdoj.gov
*Counsel for Defendants*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA,<br><br>Plaintiff,<br><br>vs.<br><br>DON WRIGHT, Acting Secretary of Health and Human Services, *et al.*,<br><br>Defendants. | Civil No. 3:16-cv-3539-LB<br><br>**FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

## INTRODUCTION

There is nothing temporary or preliminary about the relief plaintiff seeks in its motion for a temporary restraining order or preliminary injunction. Rather plaintiff seeks to secure an irreversible outcome by mandating that HHS transport an unaccompanied alien child, referred to as Jane Doe, who entered the United States illegally while pregnant and who is in a shelter in Texas, to an abortion facility to have an elective abortion this Friday. Apart from the fact that it is highly inappropriate to use a temporary restraining order or preliminary injunction to obtain permanent injunctive relief, plaintiff's motion should be denied for several reasons.

First, plaintiff does not have a likelihood of success on the merits of Ms. Doe's claims in the proposed Second Amended Complaint. The complaint cannot be amended as plaintiff requests because Ms. Doe, who is in Texas and who has already commenced a prior state court action in Texas (which has been removed to federal court), has no valid claim for venue in this District. Moreover, under the first-to-file rule, Ms. Doe cannot now proceed in this District, after first initiating an action in Texas. But even if Ms. Doe could avail herself of this forum, she could not satisfy the Rule 20 requirements for joinder of her claims to this far more narrow action, due to the distinct nature of the legal and factual issues. Without a likelihood that the pleadings will be amended to add Ms. Doe as a party, there is no basis for Ms. Doe to obtain a temporary restraining order or a preliminary injunction.

Nor does Ms. Doe have a likelihood of success on the merits of her putative claims. Her argument that Federal Defendants' failure to provide her with transportation to an abortion facility constitutes an undue burden ignores the fact that the abortion case law recognizes a legitimate and significant interest in fetal life and childbirth, and that it is constitutional for the government to refuse to facilitate abortion. That is especially so in this case, where Ms. Doe has not requested voluntary departure from the United States, and instead has chosen to remain in federal custody; Federal Defendants are willing to expedite her return to her home country upon her request for a voluntary departure, which may occur in a matter of days. In light of this specific factual context, it is therefore unlikely that plaintiff will be able to overturn embedded precedent to require Federal Defendants to facilitate Ms. Doe's abortion. Likewise, it is not
Federal Defendants' opposition to Plaintiff's motion for
temporary restraining order and preliminary injunction
CV 16-3539-LB

1

likely that Ms. Doe could succeed on her compelled speech claim because she does not allege that she was prohibited from voicing her opinion freely, or from refraining to speak. Based on these reasons, and their compound effect, it is unlikely that plaintiff will succeed on the merits of any of her claims.

Plaintiff's motion should also be denied because that outcome will not result in an irreparable injury for Ms. Doe. She still has a couple of months remaining pre-viability in which an abortion would be legally permissible, and therefore it would not be necessary for her to have an abortion this week for her to vindicate her putative right to an abortion. Even more, Ms. Doe has options for leaving federal custody either by requesting a voluntary departure to her home country, which the federal government is willing to expedite if requested, or by being placed in the custody of a sponsor, and thus it cannot be said that Federal Defendants are causing Ms. Doe to carry a pregnancy to term against her will. In contrast, granting immediate relief to Ms. Roe would disrupt the status quo and would irreversibly harm the government's interests without an opportunity for a full adjudication on the merits.

Finally, given the constitutionally legitimate interest that the Federal Defendants have in promoting childbirth, in refusing to facilitate an abortion, and in not providing incentives for pregnant minors to illegally cross the border to obtain elective abortions while in federal custody, as well as the irreversible nature of abortion, both the balance of hardships and the public interest favor denial of plaintiff's motion. But given the magnitude of the interests in play, any ruling by this Court on plaintiff's motion should account for the time needed for either party to seek emergency appellate review, which can be resolved in the period in which an abortion would still be legally permissible.

**ARGUMENT**

The same legal standard applies to requests for temporary restraining orders and to preliminary injunction motions, and that standard recognizes that injunctive relief is "an extraordinary and drastic remedy" that should not be granted "unless the movant, *by a clear showing*, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012); *see also Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839

FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
CV 16-3539-LB

2

(9th Cir. 2001). To satisfy that demanding standard, the movant must establish, at a minimum, that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). Plaintiff cannot satisfy that standard for several reasons, set forth below.

And here Plaintiff must satisfy an even more stringent standard because the injunctive relief sought would reverse the current status quo and compel Federal Defendants to take affirmative actions. Specifically, Plaintiff asks this Court to order Federal Defendants to transport Ms. Doe to an abortion provider and to be restrained "from interfering with or obstructing Ms. Doe's access to abortion." Pl.'s Proposed Order, ECF No. 91 ¶¶ 1-2. That relief would compel Federal Defendant to undertake several affirmative actions for Ms. Doe, who is in their legal custody, such as making Ms. Doe available for appointments and either providing Ms. Doe with transportation and escort to and from the necessary appointments for the procedure, or releasing Ms. Doe from federal custody into the care of someone not otherwise approved by the federal government to have custody of Ms. Doe. For that reason, Plaintiff does not seek to preserve the status quo, but rather to alter it. Such a request constitutes "a mandatory injunction," which "goes well beyond simply maintaining the status quo *pendente lite* [and] is particularly disfavored." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Specifically, a request for such mandatory injunctive relief should be denied "unless the facts and law *clearly* favor the moving party," *id*. (emphasis added), and should not be "granted unless extreme or very serious damage will result and are not issued in doubtful cases." *Am. Freedom Def. Initiative v. King Cty.*, 796 F.3d 1165, 1173 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 1022 (2016); *Animal Legal Def. Fund v. Dep't of Agric.*, No. 17-cv-949, 2017 WL 2352009, at *3 (N.D. Cal. May 31, 2017).

Plaintiff's burden is even greater, given that the requested mandatory injunctive relief would not be temporary or preliminary at all, but rather it would be irreversible. Specifically, if plaintiff's request for injunctive relief were granted, Ms. Doe would presumably undergo the abortion procedure scheduled for October 13, 2017, finally resolving her claims. But as the

FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
CV 16-3539-LB

3

Ninth Circuit has explained, issuing a "judgment on the merits in the guise of preliminary relief" is "highly inappropriate." *Senate of Cal. v. Mosbacher*, 968 F.2d 974, 978 (9th Cir. 1992). Put simply, because Ms. Doe's requested relief would provide permanent and final resolution, it cannot be awarded through a motion for a *temporary* restraining order or a *preliminary* injunction; instead such relief would have to come through a permanent injunction issued after a determination of plaintiff's case on the merits.

**I.      Plaintiff's Request for Mandatory Injunctive Relief Should Be Denied Because Plaintiff Cannot Clearly Show a Likelihood of Success on the Merits**

**A.      Plaintiff Is Not Likely to Succeed in Amending the Complaint**

Before obtaining any preliminary injunctive relief, plaintiff must first establish that the complaint can be amended to enable Ms. Doe to proceed as a party to this action. But that outcome is unlikely. As explained in the Federal Defendants' Memorandum in Opposition to Plaintiff's Second Request to Amend the Complaint, Ms. Doe cannot be added as a party for several reasons. She has no rightful claim to venue in this District because neither she nor the underlying factual allegations for the four proposed new claims have any connection to this District. Ms. Doe similarly fails to satisfy the basic requirements under Rule 20(a)(1) for permissive joinder, because she is not seeking joint or several relief related to the same transactions or occurrences as the prior compliant. Plaintiff's motion to amend is also not likely to succeed because it offends the first-to-file rule (Ms. Doe has already sued for similar relief in state court in Texas, which has been removed to federal court in Texas), and it does not comply with the notice and timing requirements set forth in both this Court's Case-Management and Pretrial Order, ECF No. 41, and Local Civil Rule 7-2(A). For these reasons, it is likely that plaintiff's motion to amend will not succeed, and if so then plaintiff could not obtain a temporary restraining order or a preliminary injunction (at least in this District). Ms. Doe should proceed instead in a court that would have venue over her claims.

A court in this District recently denied a request for a temporary restraining order under similar circumstances. The plaintiff in *Perez v. San Miguel Homes for the Elderly, LLC*, No. 15-cv-05556-DMR, sought to amend a complaint to add claims which supplied the basis for a

FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
CV 16-3539-LB

4

subsequent motion for a temporary restraining order. In denying the motion for a temporary restraining order, the Court expressly rejected the procedural approach pursued by the plaintiff in that case (which plaintiff here follows). The Court reasoned that there could be no likelihood of success on the merits because "the claims that form the basis for the request for a TRO *must be part of the operative complaint*," and the near simultaneous filing of a motion to amend and motion for a temporary restraining order did not permit the proposed amended pleading to have become part of the record. *Id.* at 1 (emphasis added). That same result should follow here because, just as the plaintiff in *San Miguel Homes*, plaintiff here has moved for a temporary restraining order and/or preliminary injunction that, at the time of its filing, lacked a basis in the operative complaint.

### B. Plaintiff Has Failed to Demonstrate a Clear Likelihood of Success on the Merits of Its Fifth Amendment Undue Burden Claim

Plaintiff is not likely to succeed on the merits of its undue burden claim. Plaintiff suggests that Federal Defendants' refusal to facilitate an elective abortion procedure for an unaccompanied alien child (Jane Doe), who is in HHS's legal custody after entering the United States illegally, constitutes an undue burden in violation of the Fifth Amendment. But there is no precedent to support such an assertion, particularly given that Ms. Doe has not requested a voluntary departure from the United States, which would result in her release from federal custody, and leave her at liberty to pursue an elective abortion outside of federal custody.

To the contrary, the Supreme Court has repeatedly recognized a substantial and legitimate interest in promoting childbirth and protecting the life of an unborn child. *See, e.g.*, *Gonzales v. Carhart*, 550 U.S. 124, 145, 157, 163 (2007) (explaining that "the government has a legitimate and substantial interest in preserving and promoting fetal life"); *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 846 (1992) (O'Conner, J., joined by Kennedy, J. and Souter, J.) ("The government may use its voice and its regulatory authority to show its profound respect for the life within the woman."). That interest begins at the start of pregnancy. *See Gonzales*, 550 U.S. at 158; *Casey*, 505 U.S. at 846. In recognition of that interest, courts have routinely upheld laws and regulations that restrict or limit a woman's right

FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
CV 16-3539-LB

5

to abortion, so long as those provisions do not impose an "undue burden" on a woman's right to choose to terminate her pregnancy prior to viability. *See, e.g.*, *Casey*, 505 U.S. at 877; *Gonzales*, 550 U.S. at 157; *Lambert v. Wicklund*, 520 U.S. 292 (1997); *Texas Medical Providers Performing Abortion Services v. Lakey*, 667 F.3d 570 (5th Cir. 2012); *Barnes v. Moore*, 970 F.2d 12 (5th Cir. 1992); *Karlin v. Foust*, 188 F.3d 446, 471 (7th Cir. 1999). That interest is even more acute in the area of foreign affairs. *See DKT Memorial Fund Ltd. v. Agency for Int'l Development*, 887 F.2d 275 (D.C. Cir. 1989) (upholding the federal government's authority to ban federal funding of foreign groups that perform or promote abortions). And here, significant foreign interests are implicated if the government must oversee elective abortions for pregnant unaccompanied alien minors who have been apprehended illegally crossing the border and are still in federal care and custody.

For a statute or regulation to constitute an "undue burden," it must have "the effect of placing a substantial obstacle in the path of a woman's choice" to terminate her pregnancy. *Casey*, 505 U.S. at 877. The undue burden standard does not extend so far as to require governmental entities to facilitate abortions; rather, it is well established that, in light of the substantial governmental interest in protecting fetal life and childbirth, governments may refuse to facilitate an abortion without unduly burdening a woman's desire to terminate her pregnancy through abortion. *See, e.g., Harris v. McRae*, 448 U.S. 297, 315, 317-19 (1980) (holding that the Due Process Clause does not confer an entitlement to government assistance in obtaining an elective abortion procedure; decision not to fund abortion does not pose any "governmental obstacle"); *see also Maher v. Roe*, 432 U.S. 464, 471-74 (1977) (rejecting claim that unequal subsidization for child birth, as opposed to abortion, was unconstitutional); *Webster v. Reproductive Health Servs.*, 492 U.S. 490, 510 (1989) (holding that the government has no constitutional duty to subsidize an activity merely because the activity is constitutionally protected and specifically that Government has no affirmative duty to "commit any resources to facilitating abortions").

The crux of plaintiff's challenge is therefore to HHS's refusal to facilitate Ms. Doe's elective abortion while she is in federal custody, but there is no precedent that doing so would

FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
CV 16-3539-LB

6

constitute an undue burden. To the contrary, *McRae¸ Maher*, *Webster*, and numerous other cases make clear that the federal government's refusal to assist a woman in obtaining an abortion is constitutional. Without a case overriding that line of precedent, much less one that would require the government to provide Ms. Doe with transportation and escort to and from the necessary appointments for the procedure, or to release Ms. Doe from federal custody into the care of someone not otherwise approved by HHS to have custody of Ms. Doe, plaintiff does not have a likelihood of success on the merits for her undue burden claim. In addition, the holding of *Roe v. Wade* has not been extended in the way plaintiff requests in this emergency motion: plaintiff cites no case in which a pregnant minor from a foreign country, simply by crossing the border illegally, has a right under the U.S. Constitution to demand the federal government authorize and facilitate her elective abortion while is still in federal custody after border apprehension – especially when her continued custodial status is due mainly to her decision not to file for voluntary departure.

Plaintiff searches in vain for such a case. For instance, plaintiff relies on cases addressing state laws permitting a judicial bypass mechanism for minors seeking an abortion without their parents' consent, *see, e.g., Bellotti v. Baird*, 443 U.S. 622 (1979), as support for its contention that the federal government must not only defer to the minor's choice to terminate her pregnancy, but also assist her in obtaining an abortion. But plaintiff overextends those cases, which hold merely that state laws *prohibiting* the right to abortion absent parental consent may, in some circumstances, impose an "undue burden" on the right to choose, unless there is a judicial bypass procedure. *See, e.g., Planned Parenthood v. Lawall*, 307 F. 3d 783, 786-87 (9th Cir. 2002). But critically, those cases do not suggest that the government must affirmatively facilitate a minor's preference to terminate her pregnancy. Nor is case law regarding prisoner access to abortion applicable here. *See, e.g., Roe v. Crawford*, 514 F.3d 789 (8th Cir. 2008); *Monmouth Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326 (3d Cir. 1987). Those cases are readily distinguishable as a prisoner's ability to obtain an abortion is entirely prohibited solely by virtue of incarceration. Yet the same is not true here, where Ms. Doe, unlike a prisoner, has the ability choose to exit federal custody by voluntarily departing the

FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
CV 16-3539-LB

7

United States or by finding a sponsor who could take custody of her.[1] In either circumstance, Ms. Doe would no longer be within federal custody. Thus after having made the election to remain in federal custody, Ms. Doe is unlikely to succeed in also compelling HHS to authorize her elective abortion and transport her to an abortion provider.

Finally, plaintiff is not likely to succeed on the claim that the Fifth Amendment prohibits HHS or its agents from informing the minor's parents about her abortion decision. In analyzing parental consent laws, courts have recognized that requiring parental consent, in certain circumstances, might impose an "undue burden" on a woman's right to choose, such that there must be a judicial bypass procedure, and that those bypass procedures must protect a woman's anonymity. *See, e.g., Lawall*, 307 F.3d at 787. But the fact that a minor may seek permission to obtain an abortion under a state's judicial bypass mechanism, and that those procedures must protect confidentiality, says nothing about whether the federal government, when it has custody of a minor who has illegally entered the United States, may inform her parents about the minor's pregnancy or her abortion decision – completely independent from a state bypass procedure. Sharing such information in no way affects her ability to seek an abortion in this country, and therefore cannot be construed to impose an "undue burden."

### C. Plaintiff Has Failed to Demonstrate a Clear Likelihood of Success on the Merits of Its Compelled Speech Claim

Plaintiff also raises a claim that the Government has violated Ms. Doe's First Amendment rights by allegedly taking her to a pregnancy counseling session and obstetric examination that included an ultrasound. ECF No. 82-2 at ¶ 100. Plaintiff asserts that by doing so, Federal Defendants "violate unaccompanied immigrant minors' right against compelled speech." But Doe does not allege that she was required to say anything in particular during any

---

[1] Ms. Doe is in federal custody only because she entered the United States illegally and has not requested to return to her home country, nor has she found a suitable sponsor. *See* Office of Refugee Resettlement, *ORR Guide: Children Entering the United States Unaccompanied*, (Sept. 8, 2017) § 2.2, *available at* http://www.acf.hhs.gov/orr/resource/childrenentering-the-united-states-unaccompanied (ORR makes an ongoing assessment to determine whether there is a suitable sponsor for all children in its care); *see also* 8 U.S.C. § 1232(c)(3)(A).

FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
CV 16-3539-LB

8

counseling session or medical examination. *Cf.* Decl. of Jane Doe, ¶¶ 12-13, ECF No. 84-11 (alleging that she was forced to look at a sonogram and that federal defendants "have been talking to me about my pregnancy"). Nor is there any allegation that Ms. Doe could not voice her own opinion freely, or refrain from doing so, and there is no averment that Ms. Doe faced any negative consequences or repercussions in doing so. This is simply not an instance in which the Government forced or compelled Ms. Doe to espouse or agree with any particular viewpoint. To the extent Ms. Doe was compelled to acknowledge an understanding of the legal rights and requirements surrounding abortion procedures in Texas, the constitutionality of such requirements has been upheld. *Texas Med. Providers Providing Abortion Servs. v. Lakey*, 667 F.3d 570, 574-80 (5th Cir. 2012). Furthermore, there is nothing to suggest that Ms. Doe will be compelled in the future to provide any speech against her will, and thus there is nothing to enjoin. For these reasons, Plaintiff has failed to demonstrate a likelihood of success on the merits of this claim.

## II. Plaintiff Has Not Established That Irreparable Harm, Let Alone Extreme or Serious Damage, Will Result Absent the Sought Mandatory Injunctive Relief

Plaintiff identifies her irreparable injury as being "forced to carry the pregnancy to term against her will," Mot. at 11, ECF No. 84, but that provides no basis for the specific emergency injunctive relief plaintiff seeks. At issue is not whether plaintiff will have to carry the pregnancy to full term, but rather whether plaintiff can have an abortion *later this week.* Plaintiff has a couple of months, not a few days, before the viability threshold, and she need not compel the Federal Defendants to provide her access to an abortion this week in order to vindicate her putative right to that procedure. Because Ms. Doe's fetus is still many weeks away from viability, Ms. Doe will not be irreparably injured if she does not have an abortion on Friday.

Nor is there any action by Federal Defendants requiring Ms. Doe to maintain her pregnancy to full term. Ms. Doe is at liberty to leave federal custody either by voluntary departing or by finding a sponsor. And if Ms. Doe requests a voluntary departure, Federal Defendants are willing to work with her to make that happen as expeditiously as possible.

FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
CV 16-3539-LB

9

### III. The Balance of Hardships and Public Interest Favor Denying Plaintiff's Motion

Neither a balance of the hardships nor the public interest supports granting plaintiff's motion. The Federal Defendants have a legitimate and significant interest in ensuring that they do not affirmatively facilitate an abortion, and that interest would be completely extinguished in Ms. Doe's instance if plaintiff's motion is granted and Ms. Doe has an abortion on Friday. In contrast, Ms. Doe is not presently precluded from obtaining an abortion: she could do so after voluntarily departing from federal custody, or if she were to secure a permanent injunction after prevailing on the merits of her claim (in an appropriate forum). Moreover, there is a public interest in not incentivizing illegal immigration by compelling the federal government to facilitate an unaccompanied alien child's request for an elective abortion.

### IV. Any Ruling by This Court Should Provide Sufficient Time for Appellate Review.

The Federal Defendants understand and appreciate the depth of issues presented in plaintiff's motion, and recognize that the grant of plaintiff's motion will have potentially irreversible consequences. Accordingly, the Federal Defendants request that any disposition by the Court permit the unsuccessful party sufficient time to vindicate its position through emergency appeal. In particular, the Federal Defendants request that, if the Court is inclined to grant Ms. Doe's request for relief, it do so through the grant of a preliminary injunction rather than the grant of a temporary restraining order, so as to remove any doubt as to the appealability of the Court's order.

FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
CV 16-3539-LB

10

## CONCLUSION

For the foregoing reasons, Plaintiff cannot satisfy the stringent standards necessary for a temporary restraining order or a preliminary injunction, and Plaintiff's motion should be denied.

October 9, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

ALEXANDER K. HAAS (N.D. Cal. #220932)
Special Counsel to the Assistant Attorney General

/s/ *Peter J. Phipps*
PETER J. PHIPPS (DC Bar 502904)
Senior Trial Counsel
Civil Division, Federal Programs Branch
United States Department of Justice
P.O. Box 883 Ben Franklin Station
Washington, DC 20530
Telephone: (202) 616-8482
Fax: (202) 616-8470
Email: peter.phipps@usdoj.gov
*Counsel for Defendants*

FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
CV 16-3539-LB

11