1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                          NORTHERN DISTRICT OF CALIFORNIA

10                                  San Francisco Division

11   AMERICAN CIVIL LIBERTIES UNION            Case No. 16-cv-03539-LB
     OF NORTHERN CALIFORNIA,
12                                             **ORDER DENYING MOTIONS FOR
                    Plaintiff,                 LEAVE TO AMEND AND A
13                                             TEMPORARY RESTRAINING ORDER**
              v.
14
     SYLVIA MATHEWS BURWELL, et al.,
15
                    Defendants.
16

17                                   **INTRODUCTION**

18        The ACLU of Northern California filed a lawsuit — based on taxpayer standing —

19   challenging federal grants to religious organizations for the care of unaccompanied immigrant

20   minors and trafficking victims.[1] Its claim initially was that the Office of Refugee Resettlement

21   ("ORR") violates the Establishment Clause by its grants to religious groups that refuse to provide

22   unaccompanied minors and trafficking victims with "information about, access to, or referrals for

23   contraception and abortion" services.[2] To challenge the grants, it sued — in their official

24   capacities — the Secretary of Health and Human Services ("HHS"), the Acting Assistant

25

26   ─────────────────
     [1] *See generally* First Amended Compl. ("FAC") – ECF No. 57. Record citations refer to material in the
27   Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of
     documents.
28   [2] *Id.* at 2–3 (¶¶ 4, 7), 16–19 (¶¶ 56–69).

United States District Court
Northern District of California

1   Secretary of the HHS subdivision called the Administration for Children and Families ("ACF"),

2   and the Director of ORR, which is a subdivision of the ACF.[3]

3        The ACLU now moves to amend its complaint to add (1) Jane Doe as class representative for a

4   nationwide class of pregnant unaccompanied minors and (2) class claims challenging the

5   government's obstruction of access to abortion, compelled counseling, and compelled disclosure

6   of the abortion decision to crisis pregnancy centers, parents, and immigration sponsors.[4] The

7   claims are based on the government's new policies promulgated in March 2017 that prevent

8   shelters from taking any actions facilitating access to abortions — including transportation to

9   medical appointments — without signed approval from the Director of ORR.[5] The government

10  also allegedly forces counseling at anti-abortion crisis pregnancy centers and compels minors to

11  disclose their identities and abortion decisions to those centers, their parents, and their

12  immigration sponsors.[6] The proposed class claims — which seek only injunctive relief — allege

13  violations of the minors' Fifth Amendment right to privacy and liberty and First Amendment right

14  to be free from compelled speech (by being forced to discuss their decision to have an abortion

15  with a crisis pregnancy center).[7] The proposed amended complaint keeps the earlier Establishment

16  Clause challenge to the federal government's expenditure of funds but recasts it slightly as a claim

17  by all plaintiffs (as opposed to the earlier claim by the ACLU based on taxpayer standing).[8]

18       The named plaintiff Jane Doe is a pregnant minor in a federally funded shelter in Texas.[9] It is

19  not a religious shelter.[10] In addition to her claims on behalf of a similarly situated class, she brings

20  a *Bivens* claim against the Acting Assistant Secretary for the ACF and the Director of the ORR,

21

22  ───────────────

    [3] *Id.* at 6 (¶¶ 18–20).

23  [4] *See* Motion for Leave to Amend – ECF No. 82; Proposed Second Amended Compl. ("SAC") – ECF
    No. 82-2.

24  [5] Proposed Second Amended Complaint ("SAC") – ECF No. 82-2 at 12 (¶¶ 37–38).

25  [6] *E.g.*, *id.* at 13–14 (¶¶ 43–44).

26  [7] *Id.* at 27–28 (¶¶ 96–102).

    [8] *Id.* at 28–29 (¶¶ 107–114).

27  [9] *Id.* at 7 (¶ 22).

28  [10] White Decl. – ECF No. 92-1 at 2 (¶ 4).

United States District Court
Northern District of California

claiming that they are blocking her right to an abortion, obstructing that right (for example, by forcing her to visit a crisis pregnancy center, telling her mother about her pregnancy, and trying to force her to talk with her mother about her pregnancy and planned abortion), all in violation of the First and Fifth Amendments.[11] The government impeded Ms. Doe's initial efforts to obtain an abortion, but ultimately it allowed her to pursue a judicial bypass in lieu of obtaining parental consent for the abortion (as required by Texas law).[12] Thereafter, a Texas state court issued a court order allowing her to obtain an abortion without parental consent.[13] The government will not transport her or allow anyone to transport her for (1) the mandatory pre-counseling that Texas law requires before an abortion or (2) the abortion procedure itself.[14] Ms. Doe thus seeks compensatory and punitive damages and an injunction to allow the mandatory counseling and the abortion and to stop the forced counseling and compelled speech.[15]

The ACLU also moves for a temporary restraining order ("TRO") (1) directing the federal defendants to transport Ms. Doe — or if Ms. Doe prefers, to allow her guardian or attorney ad litem to transport her — to the abortion provider closest to her shelter to obtain (a) counseling (required by state law) on October 12, 2017, and (b) the abortion procedure on October 13, 2017; (2) temporarily restraining the federal defendants from interfering with or obstructing Ms. Doe's access to abortion; and (3) temporarily restraining the federal defendants from further forcing Ms. Doe to reveal her abortion decision to anyone, or revealing it to anyone themselves.[16] The government asks the court to deny the motion to amend the complaint on several grounds, including lack of venue and improper joinder, and it asks the court to deny the motion for a TRO.[17]

---

[11] SAC – ECF No. 82-2 at 28 (¶¶ 103–106).

[12] Id. at 7 (¶ 22).

[13] Id.

[14] Id.

[15] Id. at 28 (¶ 105).

[16] Motion for TRO – ECF No. 84.

[17] Opposition to Motion for Leave to Amend – ECF No. 92; Opposition to Motion for TRO – ECF No. 94.

United States District Court
Northern District of California

The court denies the motion for leave to file an amended complaint. The Doe plaintiff is not in this district. The wrongful acts for the new claims did not take place in this district. The new claims are not "closely related" to the venued Establishment Clause claim, and concerns of judicial economy and fairness do not support pendent venue. For similar reasons, permissive joinder is not appropriate under Rule 20(a). Finally, discovery is closed, the deadline to amend the pleadings has passed, and the proposed amended complaint transforms the case at a late date to add new claims and new theories of recovery. The case is better brought as a new lawsuit.

Because the court denies leave to amend, the court denies Ms. Doe's motion for a TRO without prejudice to her bringing it in a different lawsuit.

## OTHER RELEVANT CONTEXT

The ACLU filed its complaint in June 2016 and challenged the ORR's funding of religious organizations that care for "unaccompanied immigrant children."[18] *See* 8 U.S.C. § 1232(b)(1); *see also* 6 U.S.C. § 279(b). The care includes, among other things, routine medical care, family-planning services, and emergency health services.[19] In cases of sexually abused minors, ORR must provide "unimpeded access to emergency medical treatment, crisis intervention services, emergency contraception, and sexually transmitted infections prophylaxis."[20] 45 C.F.R. § 411.92(a). And if pregnancy results from sexual abuse, the victim must "receive[ ] timely and comprehensive information about all lawful pregnancy-related medical services . . . ."[21] *Id.* § 411.93(d).

ORR provides these services through a network of facilities and shelters.[22] It grants funds to private entities — including religious organizations — to care for the children.[23]

---

[18] Compl. – ECF No. 1 at 6–7 (¶¶ 20–22).

[19] *Id.* at 8 (¶ 27).

[20] *Id.* at 8 (¶ 28).

[21] *Id.*

[22] *Id.* at 7 (¶ 24).

[23] *Id.* at 2 (¶ 3).

United States District Court
Northern District of California

1    In February 2017, the ACLU amended its complaint to add a similar Establishment Clause

2    challenge to ORR's funding of religious organizations providing services to victims of human

3    trafficking.[24]

4        Thus, the lawsuit, as the ACLU framed it in the complaint and the first amended complaint

5    ("FAC"), was about the religious organizations. The charge was that ORR — in granting funds —

6    authorized grantees to impose religiously based restrictions on access to reproductive-health care

7    that the young women were entitled to receive by law.[25] United States Conference of Catholic

8    Bishops ("USCCB") is one such religious organization that receives ORR funding and "issues

9    subgrants to Catholic Charities."[26] (The court allowed permissive intervention to the USCCB.[27])

10   The ACLU sought an injunction ordering the defendants to issue grants "without the imposition of

11   religiously based restrictions."[28]

12       The proposed second amended complaint ("SAC") adds class claims and an individual claim

13   by Jane Doe that are predicated on the following change to government policy in March 2017:

14       Effective immediately, ORR is requiring grantees to notify ORR through their
         assigned Federal Field Staff immediately of any request or interest on any girl's
15       part in terminating her pregnancy. A response from ORR Director would be
         required before taking any next steps (i.e., scheduling appointments, pursuing a
16       judicial bypass, or any other facilitative step).

17       Per the policy, "Grantees are prohibited from taking any actions in these cases
         without direction and approval from ORR." Approval for such procedures would
18       be provided in the form of a signed authorization from the Director of ORR. To
         restate and reinforce the existing policy, grantees may not perform Heightened
19       Medical Procedures without written authorization from the ORR Director, except in
20       emergency medical situations (as described in Emergency Medical Services).
         Grantees should not conduct procedures, or take any steps that facilitate future
21       appointments without signed written authorization from the ORR Director. Note
         that the requirement for written authorization by the ORR Director applies whether
22       the procedure will be paid for with Federal funds or by other means.

23

24

25   _____

     [24] FAC – ECF No. 57 at 16–19 (¶¶ 56–69).

26   [25] Id. at 3 (¶ 7); see also Compl. – ECF No. 1 at 3 (¶ 7).

     [26] FAC – ECF No. 57 at 3 (¶ 7).

27   [27] Order Allowing Intervention – ECF No. 58 at 3.

28   [28] FAC – ECF No. 57 at 22 (Prayer, ¶ 2).

United States District Court
Northern District of California

> Please ensure close adherence and understanding of the policy. Approval for such procedures can only be authorized by the ORR Director in writing. Failure to adhere to this policy will be a significant issue of non-compliance.[29]

The proposed SAC adds the following class-action claims: (1) the government exerts a veto power over abortion in violation of the Fifth Amendment right to privacy and liberty; (2) compelled counseling violates the First Amendment right against compelled speech (in the form of the minors' disclosing their identities and abortion decisions); and (3) compelled disclosure of this information violates the Fifth Amendment right to informational privacy.[30] It retains the Establishment Clause challenge (slightly recast as a claim brought by all plaintiffs, meaning, the ACLU, Jane Doe, and Jane Doe on behalf of the class).[31] And it adds Jane Doe's *Bivens* claim for damages and injunctive relief.[32]

## ANALYSIS

### 1. Leave to Amend

The main issue is whether the court should grant leave to amend the complaint. The court does not grant leave to amend.

First, venue does not exist here for the new claims under 28 U.S.C. § 1391(e).

In an official-capacity lawsuit against a federal agency, venue is proper in any judicial district:

> in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e).

No defendant resides here. No events or omissions took place here. Jane Doe is in Texas. A "substantial part" of the defendants' allegedly wrongful activities relating to the new claims did not occur here: they occurred in Texas. There are no material acts bearing a "close nexus" to the new claims — so that they can be considered substantial for venue purposes — in the Northern

---

[29] Amiri Decl., Ex. B – ECF No. 84-3 at 5–6 (ORR Email, March 10, 2017).

[30] SAC – ECF No. 82-2 at 27–28 (¶¶ 96–102).

[31] *Id.* at 28–29 (¶¶ 107–114).

[32] *Id.* at 28 (¶¶103–106).

United States District Court
Northern District of California

1  District. *See Martensen v. Koch*, 942 F. Supp. 2d 983, 997 (N.D. Cal. Apr. 30, 2013), *on*

2  *reconsideration in part*, No. 12-CV-5257-JSC, 2013 WL 4734000 (N.D. Cal. Sept. 3, 2013).

3       The ACLU contends that the ORR policies apply to all grantees, and two grantee shelters are

4  in the Northern District: Southwest Key Pleasant Hill of Contra Costa County, California, and

5  Catholic Charities of Santa Clara County, CA.[33] Documents show that these shelters have housed

6  pregnant unaccompanied children in the past, and they presumably will in the future.[34] But Jane

7  Doe — the class representative — has no nexus to this district. She suffered no harm here, and no

8  named plaintiff has in this district for the class claims. It is the plaintiffs' burden to establish

9  venue, and they have not. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th

10  Cir. 1979); *Kaia Foods, Inc. v. Bellafiore*, 70 F. Supp. 3d 1178, 1183 (N.D. Cal. 2014).

11       The next issue is whether the court in its discretion should exercise pendent venue. The court

12  does not find pendent venue.

13       Venue is proper for the ACLU's Establishment Clause claim based on its taxpayer standing. If

14  venue is proper as to one claim, a court may exercise pendent venue over the claims that do not

15  have venue if the claims are "closely related" to the venued claim. *See, e.g.*, *United Tactical Sys.*

16  *LLC v. Real Action Paintball, Inc.*, 108 F. Supp. 3d 733, 753 (N.D. Cal. 2015).

17       The ACLU argues that the new claims are closely related to the venued claim.[35] But the

18  parties, proof, and theories of liability are different, the common facts do not result in "closely

19  related" claims, and concerns about judicial economy and fairness do not favor adjudicating all

20  claims in one lawsuit.

21       The ACLU's best counter-argument is that the new policies inform the Establishment Clause

22  analysis too. The original challenge to the previous administration's policies for religious grantees

23  changes — from a proof perspective — if the previous administration's work-around to those

24  grantees no longer exists, and instead, a revised ORR policy precludes any grantee from taking

[33] Reply – ECF No. 98 at 4–5.

[34] *Id.* at 5 (citing Amiri Decl. in Supp. of Class Certif. Motion, Ex. C-3 – ECF No. 83-6 at 6, Bates No. PRICE_PROD_00009730).

[35] Reply – ECF No. 98 at 5.

any facilitative steps — without written approval from the ORR Director — for a minor who wants to end her pregnancy. But that common evidence does not change the court's conclusion that the new claims are not closely related to the existing Establishment Clause claim.

Another consideration is that the court's discretionary pendent-venue analysis considers principles of judicial economy, convenience, avoidance of piecemeal litigation, and fairness to the litigants. *See Martensen*, 942 F. Supp. 2d at 998. Venue for the earlier complaints was built entirely on the ACLU's taxpayer standing. And while the ACLU's ties here were sufficient for the court to deny the government's motion to transfer the case to the District of Columbia, the analysis changes with the new claims.[36] In a case where operative facts have not occurred in the forum, a plaintiff's choice of forum can be given only minimal deference.[37] That consideration in a transfer analysis is similar to the fairness inquiry for pendent venue. Here, it supports not exercising pendent venue over the new claims. The plaintiffs also advance judicial economy and avoiding piecemeal litigation, but when the claims are different, there is limited efficiency to adjudicating all claims here, even if there may be some overlap in evidence and witnesses.

The cases that the ACLU cites in support of pendent venue do not change this outcome. In *United Tactical*, for example, the court found pendent venue over abuse-of-process and malicious prosecution claims (based on events in Illinois) because a conspiracy claim was properly venued here, and the claims were closely related. 108 F. Supp. 3d at 738–39, 755. And in *Martensen v. Koch*, the court found pendent venue over a section 1983 claim involving the same defendant and many of the same events as the venued false-imprisonment claim. 942 F. Supp. 2d. at 998. Again, the claims were closely related. *Id.*

By contrast, here, the new claims are not closely related to the Establishment Clause challenge to ORR's funding to religious grantees and instead transform the case to a class-action First and Fifth Amendment challenge to ORR's new policy instructing all grantee shelters to restrict minors' access to abortion and related health-care services. This is not a case involving a single

---

[36] Order – ECF No. 76 at 4–12.

[37] *Id.* at 4.

United States District Court
Northern District of California

1    wrong, common issues of proof, and similar witnesses such that pendent venue advances the

2    interests of judicial economy and fairness.

3          Also, the pendent-venue cases in this district involve venued claims under 28 U.S.C. §

4    1391(b). *See Martensen*, 942 F. Supp. 2d at 998. By contrast, the case here involves a venued

5    claim against the government under § 1391(e). § 1391(e) "is designed to permit an action which is

6    essentially against the United States to be brought locally rather than in the District of Columbia

7    as would normally be required if Washington, D.C., is the official residence of the agency sued."

8    *Gilbert v. DaGrossa*, 756 F.2d 1455, 1460 (9th Cir. 1985) (citing *Stafford v. Briggs*, 444 U.S. 527,

9    539–40 (1980). Pendent venue for new and different claims against the government — based only

10   on the venued ACLU claim — arguably is not appropriate procedurally in the way that it might be

11   for related claims in the § 1391(b) cases. And only district courts, and not the Ninth Circuit, have

12   addressed the pendent-venue doctrine. *See Martensen*, 942 F. Supp. 2d at 998 ("While the Ninth

13   Circuit does not appear to have addressed the issue, courts in this District have applied the pendent

14   venue doctrine. . . .").

15         Second, permissive joinder is not appropriate either. Persons may join in one action as

16   plaintiffs if:

17         (A) They assert any right to relief jointly, severally, or in the alternative with
           respect to or arising out of the same transaction, occurrence, or series of
18         transactions or occurrences; and

19         (B) any question of law or fact common to all plaintiffs will arise in the action.

20   Fed. R. Civ. P. 20(a).

21         The ACLU's argument is similar to its argument for pendent venue: the case involves actions

22   by the same defendants permitting or authorizing shelters to violate a minor's right to access

23   abortion care and related health services.[38] And it contends that that the case involves just two

24   plaintiffs with substantially similar legal claims that arise from the same factual allegations made

25   against the same defendants.[39] For the reasons that inform the pendent-venue analysis, the court

26

27   [38] Reply – ECF No. 98 at 7–8.

28   [39] *Id.* at 9.

United States District Court
Northern District of California

disagrees. The new claims form a substantially different case that does not have common questions of law and fact with the Establishment clause claim. And while courts construe Rule 20 liberally to "promote trial convenience and expedite the final determination of disputes," *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977), when the new and old claims are based on different facts and different legal theories, joinder does not promote trial convenience or judicial economy.

In sum, the proposed SAC transforms the case by adding new class claims, advancing new theories of liability and recovery, naming individual defendants (in their individual capacity), and adding a representative plaintiff who suffered harm only in Texas. *See Briggs v. United States*, No. 07-CV-5760-WHA, 2009 WL 113387, at *5 (N.D. Cal. Jan. 16, 2009) ("courts generally hold that the named plaintiffs must satisfy the applicable venue requirements but that *unnamed* plaintiffs need not satisfy those requirements") (citing *Dukes v. Wal-Mart Stores, Inc.*, No. 01-CV-1902806-MJJ, 2001 WL 1902806, at *3 (N.D. Cal. Dec. 3, 2001). The Ninth Circuit disfavors amendment when it alters the course of the litigation at a late hour. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

The court recognizes that leave to amend generally is liberally granted. It does not doubt the ACLU's diligence: these are late-arising claims that it could not have discovered earlier. For this reason, the parties confine their analysis — as they should — to Federal Rule of Civil Procedure 15(a), and not Rule 16(b). Moreover, the court would have no problem allowing an amendment to conform the complaint to the evidence regarding the Establishment Clause claim, even though the deadline to amend the pleadings was in February 2017[40] and fact discovery ended on October 10, 2017.[41] But at this late date, the court does not grant leave to file an amended complaint to add the new claims.

In reaching this conclusion, the court does not rely on the government's first-to-file argument. The doctrine is discretionary and involves the doctrine of federal comity. *Alltrade, Inc. v. Uniweld*

---

[40] Order – ECF No. 41 at 2.

[41] Stipulation – ECF No. 78 at 3.

1    *Prod., Inc.*, 946 F.2d 622, 623, 628 (9th Cir. 1991); *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678

2    F.2d 93, 94 (9th Cir. 1982); *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994). The

3    one-hour difference in filing times in different venues is negligible. *See Selection Mgmt. Sys., Inc.*

4    *v. Torus Speciality Ins. Co.*, No. 15-CV-05445-YGR, 2016 WL 304781, at *3 (N.D. Cal. Jan. 26,

5    2016). The court does not apply the doctrine.

6        The *Flores* settlement also does not bar the relief. The government contends only that the

7    settlement agreement provides that Jane Doe can seek relief under the agreement.[42] The ACLU

8    counters persuasively that Jane Doe does not seek to enforce the *Flores* consent decree and instead

9    makes claims under the First and Fifth Amendments.[43]

10

11   **2.   The TRO**

12       The court's decision moots the motion for a TRO.

13       A temporary restraining order preserves the status quo and prevents irreparable harm until a

14   hearing can be held on a preliminary-injunction application. *Granny Goose Foods, Inc. v. Bhd. of*

15   *Teamsters & Auto Truck Drivers*, 415 U.S. 423, 429 (1974). A temporary restraining order is an

16   "extraordinary remedy" that the court should award only when a plaintiff makes a clear showing

17   that it is entitled to such relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A

18   temporary restraining order may be issued without providing the opposing party an opportunity to

19   be heard only if "specific facts in an affidavit or a verified complaint clearly show that immediate

20   and irreparable injury, loss, or damage will result to the movant before the adverse party can be

21   heard in opposition." Fed. R. Civ. P. 65(b)(1)(A).

22       The standards for a temporary restraining order and a preliminary injunction are the same.

23   *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A

24   movant must demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable

25   harm that would result if an injunction were not issued, (3) the balance of equities tips in favor of

26

27   ───────────────────
     [42] Opposition – ECF No. 92 at 10.

28   [43] Reply – ECF No. 98 at 1.

*United States District Court*
*Northern District of California*

the plaintiff, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 22–24. The irreparable injury must be both likely and immediate. *Id.* at 20–21. "[A] plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Serv. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

Before *Winter*, the Ninth Circuit employed a "sliding scale" test that allowed a plaintiff to prove either "(1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) [ ] serious questions going to the merits were raised and the balance of hardships tips sharply in its favor." *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 731 (9th Cir. 1999) (citation omitted). In this continuum, "the greater the relative hardship to [a movant], the less probability of success must be shown." *Id.* After *Winter*, the Ninth Circuit held that although the Supreme Court invalidated the sliding scale approach, the "serious questions" prong of the sliding scale survived so long as the movant satisfied the other elements for preliminary relief. *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011). Thus, a preliminary injunction may be appropriate when a movant raises "serious questions going to the merits" and the "balance of hardships tips sharply in the plaintiff's favor," provided that the other elements for relief also are satisfied. *Id.* at 1134–35.

Here, the court denied leave to amend the complaint (based on venue, permissive joinder, and timing). Jane Doe is not a plaintiff, and the court thus denies the motion for a TRO without prejudice to Ms. Doe's asserting it in a different lawsuit.

If the court had granted leave to amend, however, the analysis would be different, and the court would grant the TRO and (1) order the government to transport Ms. Doe — or allow her guardian or attorney ad litem to transport her — to the abortion provider closest to her shelter to obtain (a) counseling (required by state law) on October 12, 2017, and (b) the abortion procedure on October 13, 2017; and (2) temporarily restrain the government from interfering with or obstructing Ms. Doe's access to abortion. (The court would defer until a preliminary-injunction hearing the third issue: whether to restrain the federal defendants from further forcing Ms. Doe to reveal her abortion decision to anyone, or revealing it to anyone themselves.) The government's legitimate interest cannot justify actively preventing a woman from getting an abortion. *Planned*

*Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 877 (1992) ("the means chosen by the State to further the interest in potential life must be calculated to inform the woman's free choice, not hinder it"). Its argument that Ms. Doe — unlike a prisoner — can exit custody, depart the United States, and thereafter pursue an elective abortion[44] — is speculative and unpersuasive. The government concedes, as it must, that prisoners are entitled to abortions.[45] Similarly, those detained by Immigration and Customs Enforcement have a legal right to an abortion. 28 C.F.R. § 551.23. The government may not want to facilitate abortion,[46] but it cannot block it. It is doing that here. Standing aside — and not any facilitative step — is all that is required of the government and its grantees because her guardian or attorney ad litem can transport Ms. Doe.[47] There is no justification for restricting Ms. Doe's access. "There is a basic difference between direct state interference with a protected activity and state encouragement of an alternative activity consonant with legislative policy." *Maher v. Roe*, 432 U.S. 464, 475 (1977).

### CONCLUSION

The court denies the motion for leave to amend and denies the motion for a TRO without prejudice to Jane Doe's asserting it in a different lawsuit. This disposes of ECF Nos. 82 and 84. The court denies the motion for class certification at ECF No. 83 as moot. The court grants the motion at ECF No. 96 for leave to file an amicus brief.

**IT IS SO ORDERED.**

Dated: October 11, 2017

_____

LAUREL BEELER
United States Magistrate Judge

---

[44] Opposition – ECF No. 94 at 6.

[45] *Id.* at 9.

[46] *Id.* at 11.

[47] Reply – ECF No. 97 at 10.